# TAB A

**[REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
HOLD IN ABEYANCE ITS OBLIGATION TO RESPOND TO THE
COMPLAINT OR IN THE ALTERNATIVE FOR AN EXTENSION OF TIME]**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PITTSFIELD GENERATING COMPANY, L.P., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEVON CANADA CORPORATION, ) <br> ) <br> Defendant. ) | Civil Action No: <br> 04-30128-MAP |

### REPLY IN SUPPORT OF
### DEFENDANT'S MOTION TO HOLD IN ABEYANCE ITS OBLIGATION TO
### RESPOND TO THE COMPLAINT OR IN THE ALTERNATIVE
### FOR AN EXTENSION OF TIME

Devon Canada Corporation ("Devon") submits this reply to address the new issues raised, and to point out certain factual omissions and inaccuracies, in plaintiff Pittsfield Generating Company, L.P.'s ("PGC's") Opposition to Defendant's Motion to Hold In Abeyance Its Obligation to Respond to the Complaint, or in the Alternative, for an Extension of Time to Respond to the Complaint (Aug. 13, 2004) ("Pl. Opp.").

PGC tries to justify its refusal to honor what it admits is the "common coin of civility in federal litigation" by suggesting that PGC is faced with expedited proceedings in Alberta while Devon allegedly seeks to proceed in the instant case at a slower "statelier pace." Pl. Opp. at 4. This is simply untrue. And, in its haste to portray Devon as engaged in some form of procedural "hard ball," PGC neglects to mention certain critical facts.

*First*, PGC does not advise this Court that Devon offered, through its counsel in Canada, the normal courtesy of an extension of time in the Alberta case to file a responsive pleading

30770399.1

1

(Statement of Defence) if PGC would agree to a similar accommodation for Devon in the Massachusetts case. However, PGC refused to make such accommodations reciprocal, and it was PGC's inappropriate effort to have it both ways that ultimately caused the matter to be presented to a judge in Alberta.

*Second*, PGC does not advise this Court that, while PGC in fact received the extension of time to file a responsive pleading (Statement of Defence) that it sought in Alberta, it was only upon certain conditions provided in an order from the Alberta court, and only upon an undertaking by PGC to observe those conditions. Nor does PGC advise this Court that it has in fact made and filed the written undertaking that the extension in Alberta was conditioned upon. Thus, in order to receive the extension in Alberta, PGC expressly undertook that "*it will not take any steps in the Massachusetts Proceeding, without first obtaining the leave of this Court,* pending the decision by this Court in respect of the applications now set for September 1, 2004 . . . ." Undertaking ¶ 1 (emphasis added) (Exhibit 1 hereto). While PGC was not prevented from responding to certain motions in the instant case, Devon's motion for an extension of time was not one of them. *Id.* ¶ 2. PGC therefore has taken one of the very "steps" that it promised the Alberta court it would not take.

*Third*, PGC asserts that Devon should not be complaining because it supposedly "self-selected" August 17, 2004 as the due date for its response to the PGC's complaint by allegedly "refus[ing] to waive service" pursuant to the request for waiver that PGC sent under Fed. R. Civ. P. 4(d). Pl. Opp. at 2, 3. PGC cites nothing to support its claim that Devon "refused" to waive service of process. In fact, under Fed. R. Civ. P. 4(d)(2)(F), Devon had 60 days – from and after

30770399.1

2

no earlier than July 14, 2004[1] – in which to decide whether to accept process without formal service. It was during that 60-day period of consideration that PGC caused a process server to show up at Devon's place of business on July 28, 2004, in Calgary and purport to effect service under the Hague Convention. Far from being "self-selected" by Devon, August 17 was a potential deadline imposed on Devon by PGC.

*Fourth*, PGC's continual reference to the fact that the Massachusetts action was filed four days before the Alberta action is misleading and ultimately of no import here. PGC's own complaint in this case makes it clear that what caused the present controversy to materialize was PGC's own secret, unilateral course of conduct to engineer termination of the power sale agreements and thus, in Devon's view, repudiate the Gas Purchase Agreement. As this controversy has unfolded, Devon, is and always has been, the truly aggrieved plaintiff, faced with a potential breach of contract by PGC. And while PGC claims, without support, that the Alberta action was filed "in response to" the Massachusetts action, Pl. Opp. at 2, PGC neglects to mention that it already has taken a deposition of a Devon employee in the Alberta action that refutes this assertion. Henry Assen, Devon's Vice President of Marketing, testified that Devon was contemplating litigation against PGC for breach of contract before Devon ever became aware of the filing of the Massachusetts action. Cross-Examination of Henry H. Assen at 5, 33 (Aug. 12, 2004) (excerpts attached hereto as Ex. 2).[2] PGC's attempt to win a "race to the courthouse" with a pre-emptive suit does not give PGC any priority of action.

At bottom, PGC presents nothing that would warrant denial of Devon's motion. PGC

---

[1] The waiver form failed to provide a date on which the Notice of Lawsuit and Request for Waiver of Service of Summons was sent, as required by Fed. R. Civ. P. 4(d)(2)(E). Devon, therefore, has calculated this response date from the date of the accompanying correspondence.

[2] David A. Brown, one of the lawyers representing PGC in the instant case, attended the Assen cross-examination. See Ex. 2 hereto at 2.

30770399.1

contends that Devon has not justified its "extraordinary" request for a "stay." Pl. Opp. at 3. Devon does not seek a "stay" and there is nothing out of the ordinary about what Devon requests. Devon has merely pointed out the obvious fact that it would make sense, from the standpoint of judicial economy and the expenditure of the parties' resources, for this Court to hold Devon's obligation to respond to PGC's complaint in abeyance pending the outcome of the jurisdictional and related motions that will be heard in Alberta on September 1. PGC cannot seriously contend that, in considering the jurisdictional, *forum non conveniens* and related motions that Devon intends to file here, this Court would not find relevant the Alberta court's determination whether it will assert jurisdiction over PGC in the Canadian action.

Nor does PGC explain why it would not be entirely appropriate for this Court, in the alternative, to grant Devon a 30-day extension of time in which to respond to the complaint. Indeed, when PGC transmitted the waiver-of-service request to Devon on July 14, it set in motion a process that could have resulted in Devon responding to the complaint no earlier than October 12, *see* Fed. R. Civ. P. 4(d)(3) -- which would have been 27 days later than the extended due date that Devon now seeks. PGC does not describe any prejudice that it will suffer – either in Alberta or in Massachusetts – if the Court grants Devon a 30-day extension. PGC's objections to this request therefore should be rejected.

In light of the PGC's opposition, Devon agrees that a hearing on the motion would be appropriate, and respectfully suggests that a telephone conference would be the most expeditious way to proceed.

For the foregoing reasons and for the reasons stated in Devon's motion, the motion should be granted.

Dated: Boston, Massachusetts
August 15, 2004

Respectfully submitted,

*[signature]*

William L. Prickett (BBO #555341)
Anita B. Bapooji (BBO #644657)
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: 617-248-7000
Facsimile: 617-248-7100

Counsel for Defendant
Devon Canada Corporation

John M. Simpson
Michelle C. Pardo
Fulbright & Jaworski, LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-662-0200
Facsimile: 202-662-4643

Of Counsel
Devon Canada Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Reply in Support of Defendant's Motion To Hold In Abeyance Its Obligation To Respond To The Complaint Or In The Alternative For An Extension Of Time was served on the 15th day of August, 2004, via facsimile transmission and first class mail, postage prepaid, on the following:

>Robert J. Muldoon
>David A. Brown
>Sherin and Lodgen LLP
>101 Federal Street
>Boston, MA 02110

_____
Anita B. Bapooji

# EXHIBIT 1

Action No. 0401-10854

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

DEVON CANADA CORPORATION

Plaintiff

-and-

PE-PITTSFIELD, LLC and PURENERGY I, LLC, both carrying on business
under the firm name and style of PITTSFIELD GENERATING COMPANY, LP
and the said PITTSFIELD GENERATING COMPANY, LP, ALTRESCO, INC.
(sometimes known as ALTRESCO INCORPORATED) carrying on business
under the firm name and style of PITTSFIELD GENERATING COMPANY, LP
(formerly known as ALTRESCO PITTSFIELD, LP) and the said PITTSFIELD
GENERATING COMPANY, LP (formerly known as ALTRESCO PITTSFIELD, LP)

## UNDERTAKING

With reference to the Order granted by Associate Chief Justice A.B. Sulatycky on August 5, 2004, and noting that Pittsfield Generating Company, LP is the Plaintiff in an action commenced against Devon Canada Corporation in the United States District Court, District of Massachusetts on July 8, 2004 (the "Massachusetts Proceeding"), Pittsfield Generating Company, LP hereby undertakes to this Court:

1. That it will not take any steps in the Massachusetts Proceeding, without first obtaining the leave of this Court, pending the decision by this Court in respect of the applications now set for September 1, 2004; and

2. Notwithstanding anything outlined above, nothing in this undertaking shall in any way prevent Pittsfield Generating Company, LP from responding to any motion brought in the

Page -2-

Massachusetts Proceeding by Devon Canada Corporation dealing with forum, jurisdiction or service of process, and it is not intended that this undertaking would in any way affect the process or rules applicable to the Massachusetts Proceeding which might operate independent of any steps taken by Pittsfield Generating Company, LP.:

        PITTSFIELD GENERATING COMPANY, LP
        by PE-PITTSFIELD, LLC as its sole general
        partner

per: _____
        Donald W. Scholl

Action No. 0401-10854

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

DEVON CANADA CORPORATION

Plaintiff

-and-

PE-PITTSFIELD, LLC and PURENERGY I, LLC, both carrying on business under the firm name and style of PITTSFIELD GENERATING COMPANY, LP and the said PITTSFIELD GENERATING COMPANY, LP, ALTRESCO, INC. (sometimes known as ALTRESCO INCORPORATED) carrying on business under the firm name and style of PITTSFIELD GENERATING COMPANY, LP (formerly known as ALTRESCO PITTSFIELD, LP) and the said PITTSFIELD GENERATING COMPANY, LP (formerly known as ALTRESCO PITTSFIELD, LP)

Defendants

UNDERTAKING

MAY JENSEN SHAWA SOLOMON LLP
#800 The Lancaster Building
304 - 8th Avenue SW
Calgary, Alberta  T2P 1C2

Attention: Carsten Jensen
Phone: (403) 571-1526
Fax: (403) 571-1528

File No. 10190 001

E:\Carsten\Pittsfield(10190.001)\Pleadings\Undertaking.wpd

CLERK OF THE COURT
AUG 1 2 2004
CALGARY, ALBERTA

TOTAL P.05

# EXHIBIT 2

```
0001
  1                                              No. 0401-10854
  2            IN THE COURT OF QUEEN'S BENCH OF ALBERTA
  3                    JUDICIAL DISTRICT OF CALGARY
  4    BETWEEN:
  5                      DEVON CANADA CORPORATION
  6                                              Plaintiff
  7                              - and -
  8         PE-PITTSFIELD, LLC and PURENERGY I, LLC,
          both carrying on business under the firm name
  9         and style of PITTSFIELD GENERATING COMPANY, LP,
          and the said PITTSFIELD GENERATING COMPANY, LP,
 10    ALTRESCO, INC. (sometimes known as ALTRESCO INCORPORATED)
          carrying on business under the firm name and style of
 11        PITTSFIELD GENERATING COMPANY, LP (formerly known as
            ALTRESCO PITTSFIELD, LP) and the said PITTSFIELD
 12        GENERATING COMPANY, LP (formerly known as ALTRESCO
                             PITTSFIELD, LP)
 13
                                                 Defendants
 14
 15    ---------------------------------------------------------
 16    Cross-Examination on Affidavit of HENRY H. ASSEN, sworn on
 17    the 12th day of July, A.D., 2004, the 3rd day of August,
 18    A.D. 2004, the 10th day of August, A.D. 2004, taken before
 19    Ernest Kuemmel, CSR(A) RPR, Examiner, pursuant to Rules 203,
 20    728, 204(1) of the Court of Queen's Bench of Alberta, at the
 21    offices of May Jensen Shawa Solomon LLP, Calgary, Alberta,
 22    on the 12th day of August, A.D. 2004.
 23    ---------------------------------------------------------
 24    S. Carscallen, Q.C.                    For the Plaintiff
       C.A. Crang, Ms.
 25        (Carscallen Lockwood LLP
            1500, 407 - 2nd Street SW
 26         Calgary, AB (403) 262-3775)
 27    C.G. Jensen, Esq.                      For the Defendant
       E. Aspinall, Ms.                       PE Pittsfield, LLC
```

```
0002
   1              (May Jensen Shawa Solomon LLP
                  800, 304 - 8th Avenue SW
   2              Calgary, AB (403) 571-1520)

   3       B.C. Duguid, Esq.                       For the Defendant
                  (Blake, Cassels & Graydon LLP    Altresco, LP
   4              3500, 855 - 2nd Street SW
                  Calgary, AB (403) 260-9600)
   5
           D.A. Brown, Esq.
   6              (Sherin & Lodgen LLP
                  101 Federal Street, Boston, MA
   7              (617) 646-2000)

   8       Deanna Youngblood, CSR(A)               Court Reporter

   9       ----------------------------------------------------------

  10              (PROCEEDINGS COMMENCED AT 10:00 A.M.).

  11       HENRY A. ASSEN, sworn, examined by Mr. Jensen:

  12       MR. JENSEN:                    Before we start, then,

  13       Mr. Carscallen, we just had a discussion off the record.

  14              Mr. Brown is here as U.S. counsel for some of

  15       the defendants, and we had a discussion about that.  I

  16       understand you have no objection to him attending the

  17       cross-examination this morning.

  18              You've asked us to put on the record our

  19       agreement that you, or other Alberta counsel, could attend

  20       at the United States proceedings, examinations, that may

  21       take place there on an reciprocal basis.

  22              That's acceptable to us.  You've asked us to

  23       put that on the record, so ....

  24       MR. CARSCALLEN:                 Thank you.  That's agreed.

  25       Q.  MR. JENSEN:                 Sir, would you state your name

  26       for the record, please?

  27       A.  Henry Assen.
```

0005

```
 1     Canada Corporation?
 2     A.   I'm the vice president of marketing.  I handle all the
 3     marketing activities for Devon Canada Corporation.
 4     Q.   How long have you held that position?
 5     A.   Since, I'm going to say, April 1997.
 6     Q.   And, sir, we understand that Devon Canada Corporation
 7     is a wholly-owned subsidiary of a U.S. parent, Devon Energy
 8     Corporation, based in Oklahoma City; is that correct?
 9     A.   That's correct.
10     Q.   And, sir, I'm going to ask you to refer to what I will
11     call, then, the gas purchase and sale agreement, being
12     Exhibit H to your affidavit of July 12th, 2004.
13                    Could you put that in front of you, please.
14     A.   Yes.
15     Q.   And, sir, on page 2 of that agreement, Article 1.1(m),
16     you'll see there's a reference to a delivery point?
17     A.   Yes.
18     Q.   And, sir, do you understand that that is the delivery
19     point at which Devon Canada Corporation supplies gas
20     pursuant to the provisions of the gas purchase and sale
21     agreement?
22     A.   That's what the contract specifies.
23     Q.   And that is, in fact, what had been happening under the
24     contract?
25     A.   To my knowledge, yes.
26     Q.   And, sir, similarly, on page 2 of that agreement,
27     Article 1.1(m) -- pardon me, 1.1(p), you'll see a reference
```

0033

1   A.   I think that would be covered by client/solicitor
2   privilege.
3   Q.   Well, I haven't heard your lawyer make an objection to
4   it, so perhaps ...
5   A.   I found out from Cathy Crang.
6   Q.   All right.
7           And, sir, is it the case, then, that the
8   Alberta action was commenced as a response to the action
9   filed in Massachusetts?
10  A.   The Alberta action was under consideration for a period
11  of time, and we did file the action shortly after the PE
12  Pittsfield action.
13  Q.   As a response to that action?
14  A.   It is an action in its own regard.  I'm not sure it's a
15  response.
16  Q.   In terms of the timing of that action, was that brought
17  forward as a result of the action being commenced in
18  Massachusetts?
19  A.   Well, the fact that Pittsfield was terminating the
20  power sales agreements would have accelerated our actions,
21  absolutely.
22  Q.   I'm not sure that answers my question.
23          My question was, whether the action in
24  Massachusetts accelerated the process here in Alberta of
25  commencing an action --
26  A.   It was one of the considerations in our filing of that
27  action.