## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                )
PITTSFIELD GENERATING COMPANY, L.P.,            )
                                                )
                                Plaintiff,       )
                                                )        Civil Action No:
                v.                               )        04-30128-MAP
                                                )
DEVON CANADA CORPORATION,                        )
                                                )
                                Defendant.       )
                                                )
_____)

## DEFENDANT DEVON CANADA CORPORATION'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR
## LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

        Pursuant to Fed. R. Civ. P 12(b)(2), Devon Canada Corporation ("Devon") respectfully

requests that the Court dismiss the Complaint for lack of personal jurisdiction, or in the

alternative, on the ground of forum non conveniens.

### STATEMENT OF FACTS

        Plaintiff Pittsfield Generating Company, L.P. ("PGC" or "Plaintiff")[1] filed this Complaint

against Devon Canada Corporation ("Devon") in this Court on July 8, 2004.  On July 28, 2004, a

copy of the Summons and Complaint was delivered to Devon's office in Calgary, Alberta,

Canada.

        The Complaint seeks a declaration of PGC's rights and obligations under a Natural Gas

Purchase and Sale Agreement (the "Gas Purchase Agreement") entered into by Devon's

predecessor, Home Oil Company Limited ("Home"), as seller, and PGC, as buyer, on August 23,

---

[1]        Although Plaintiff has operated previously under another name – Altresco Pittsfield, L.P. – all references
herein to "PGC" will include all predecessors of Plaintiff and other names that Plaintiff has used.

1995.  Affidavit of Henry Assen ¶ 11 (July 12, 2004) (attached hereto as Ex. 2).[2]  Pursuant to the

Gas Purchase Agreement, Devon sells and delivers daily nominations of natural gas in Alberta to

PGC.  Complaint ¶ 13.  The natural gas purchased by PGC from Devon is to serve a gas-fired

combined-cycle cogeneration facility that produces electricity and steam.  Ex. 2 ¶ 16.  Under

Power Sale Agreements ("PSAs"), PGC sells electrical power produced from its plant.

Complaint ¶ 8.  At the time the parties entered into the Gas Purchase Agreement, they also

entered into a Renegotiation/Arbitration Agency Agreement, id. ¶ 19, which provides a

procedural mechanism by which price renegotiation, index replacement and arbitration may

occur in relation to the Gas Purchase Agreement. see id. ¶ 20.[3]

## I.    Negotiation And Execution Of The Gas Purchase Agreement

The record indicates that Home negotiated the form of the Gas Purchase Agreement from

its office in Alberta, Canada.  Ex. 1 ¶ 7.  PGC retained Alberta solicitors from the law firm of

Bennett Jones Verchere to act as legal counsel in the negotiation of the Gas Purchase Agreement.

Id. ¶ 8.  Bennett Jones Verchere delivered an unexecuted copy of Gas Purchase Agreement to

Home's Alberta office.   Id.  Upon receipt, Home duly executed the Gas Purchase Agreement in

its Alberta office and delivered the executed agreement to Bennett Jones Verchere in escrow, on

the express condition that the agreement would not be released from escrow until a duly

executed copy was delivered to Home in Alberta.  Id.

---

[2]     Henry Assen previously submitted sworn affidavits in *Devon Canada Corporation v. PE-Pittsfield, LLC, et al.*, Action No. 0401-10854, which is pending in the Court of Queen's Bench of Alberta, Judicial District of Calgary.  Three of these affidavits, and their corresponding exhibits, are attached hereto as Exs. 2, 3, & 4 and are reaffirmed in the Declaration of Henry Assen (Sept. 16, 2004) (attached hereto as Ex. 1).

[3]     The Gas Purchase Agreement and the Renegotiation/Arbitration Agency Agreement ("Agency Agreement") are jointly referred to as the "GPA" in the Affidavits of Henry Assen (Exs. 2, 3 & 4 hereto).  The Agency Agreement was not subject to the escrow arrangement that governed the execution and delivery of the Gas Purchase Agreement. Ex. 1 ¶ 9.  The Agency Agreement essentially serves as an addendum to Article 8 of the Gas Purchase Agreement.  It contains a Massachusetts choice of law provision.  Ex. I to Ex. 2 (Article 1.02(g) of the Agency Agreement).  The purpose of the Agency Agreement is to clarify the negotiating process between the parties when calculating the gas price under Article 8 of the Gas Purchase Agreement.

II.    **Devon's Lack Of Contacts With Massachusetts**

Devon is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada.  Complaint ¶ 3.  Devon does not maintain an office in Massachusetts.  Ex. 1 ¶ 6.  Devon does not have a registered agent in Massachusetts.  Id.  The record reflects that the contract in dispute was neither negotiated nor made in Massachusetts, and is not performed in Massachusetts.  Id. ¶ 10.  The record does not reflect any travel to Massachusetts by a Devon corporate representative during the duration of this contract.  Id. ¶ 6.

III.    **The Gas Purchase Agreement**

The Gas Purchase Agreement provides for the sale by Devon to PGC of certain quantities of natural gas which are delivered at a specified delivery point in Alberta, namely, the point of interconnection between the NOVA and the TCPL pipeline systems at the Alberta-Saskatchewan border near Empress, Alberta.  Ex. 2 ¶ 15.  Pursuant to Clause 7.1 of the Gas Purchase Agreement, title to and all risk associated with the subject gas passes from Devon to PGC near Empress in the Province of Alberta.  PGC therefore has been carrying on business in Alberta.  Affidavit of Henry Assen ¶ 12 (Aug. 10, 2004) (attached hereto as Ex. 4); Ex. H to Ex. 2 (Article 7.1 of Gas Purchase Agreement).

The Gas Purchase Agreement is governed by, and is to be construed in accordance with, the laws in force in the Province of Alberta, Canada.  Ex. H to Ex. 2 (Article 20.3 of Gas Purchase Agreement).  By the terms of the Gas Purchase Agreement, Home was required to apply for a long-term Alberta removal permit from the agency which is today known as the Alberta Energy and Utilities Board ("AEUB").  Ex. 4 ¶ 9.  AEUB regulatory policy at the time required that gas removed from the Province of Alberta be identified as going to a specific market.  Id. ¶ 9.  Similarly, the Gas Purchase Agreement required PGC to apply for a long-term export license from the National Energy Board ("NEB") in Canada to allow the export from Canada of the subject natural gas.  Id. ¶ 8; Ex. H to Ex. 2 (Article 2.4 of the Gas Purchase Agreement).  PGC retained the Alberta law firm of Bennett Jones Verchere to represent it in the

application before the NEB for an export license.  Ex. 4 ¶ 8.  Both the AEUB and the NEB

maintain extensive document libraries at their offices in Calgary that include materials filed in

support of the applications for regulatory approvals required by the Gas Purchase Agreement,

including items such as information requests and responses thereto, hearing exhibits, hearing

transcripts, etc., which may be relevant in this matter.  Id. ¶ 10.

IV.     **The Termination Agreements**

On June 2, 2004, PGC entered into certain contracts – the Termination Agreements – that

would have the effect of terminating the PSAs.  Ex. 1 ¶ 12.  However, PGC did not disclose that

fact to Devon until June 7, 2004 – by letter to Devon dated five days *after* execution of those

agreements.  Id.  Once it had received the June 7 letter, Devon corresponded with PGC in an

attempt to obtain copies of the Termination Agreements.  Id.; Ex. B to Affidavit of Henry Assen

¶ 10 (Aug. 3, 2004) (attached hereto as Ex. 3).  PGC responded to Devon by letter dated June 28,

2004, refusing to provide copies of the Termination Agreements until they became publicly

available.  Ex. 3 ¶ 10.

By letter dated July 6, 2004, Devon reiterated its request for a copy of the Termination

Agreements.  Id. ¶ 11; Ex. D to Ex. 3.  On July 8, 2004, the Termination Agreements were made

publicly available by the Massachusetts Department of Telecommunications and Energy

("DTE").  Ex. 3 ¶ 11.  On the same date, PGC commenced the Massachusetts action.  Complaint

(filed July 8, 2004).  PGC did nothing on July 8 to notify Devon that the Termination

Agreements were now public or that PGC had sued Devon.  Although Devon managed to

discover, independently, the existence of the Massachusetts lawsuit and obtained copies of the

Termination Agreements on July 8 (from a source other than PGC), copies of the Termination

Agreements did not arrive from PGC in Alberta until July 12, 2004.  Excerpts from Cross

Examination of Henry Assen at 39 (Aug. 12, 2004) (attached hereto as Ex. 5).  PGC simply

mailed those documents to Alberta, see Ex. F to Ex. 3, with the evident intent that they would

arrive in Alberta after the July 8 actions.  On July 8, Devon also learned that PGC had actually

submitted a proposal to the DTE for termination of the PSAs on April 13, 2004.  Ex. 1 ¶ 12.

Devon had been unaware of this proposal until July 8.  Id.

      The Termination Agreements will terminate the PSAs effective as of a future date which,

subject to the satisfaction of certain conditions, is anticipated to be on or after October 1, 2004.

Ex. 2 ¶ 19.

## V.     The Alberta Action

      On July 12, 2004, Devon filed an action against PGC and certain of its affiliated entities

in the Court of Queen's Bench of Alberta, Judicial District of Calgary, No. 0401-10854

(hereinafter "Alberta Action").  Devon's "Statement of Claim" (complaint) seeks, *inter alia*,  a

declaration, order, or judgment that PGC's termination of the PSAs constitutes a repudiation of

the Gas Purchase Agreement, and therefore, Devon is no longer obligated to continue to deliver

gas under the Gas Purchase Agreement.  See Statement of Claim ¶ 6 (attached hereto as Ex. 6)

Devon also requests punitive and exemplary damages as a result of PGC's repudiation of the Gas

Purchase Agreement and other relief based on Alberta partnership law.  Id.

      PGC was served with a copy of the Alberta Statement of Claim on or about July 14,

2004.  Ex. 3 ¶ 14.  The parties were before the Alberta court on August 5, 2004, upon the request

of PGC, to enable PGC to obtain an extension of time in which to file a "Statement of Defence"

(Answer).  See Ex. A to Defendant's Motion For Extension of Time (filed Aug. 10, 2004)

(hereinafter "Alberta Order").  PGC received an extension of time in which to file its Statement

of Defence, provided it made a formal, written undertaking with the Alberta Court to not take

any steps in the Massachusetts matter without obtaining leave of the Alberta court. Id.  It was

required that the undertaking be filed with the Alberta court, and it was in fact filed on August

13, 2004.  See Ex. 1 to Reply to Defendant's Motion For Extension of Time (filed Aug. 15,

2004) .

      In the Alberta Action, the PGC defendants challenged service of process and jurisdiction

and argued forum non conveniens.  In connection with that application, the parties conducted

"cross examinations" (depositions) of witnesses who had submitted affidavits on the issues raised by the Alberta defendants' application.  The Alberta court heard argument on these issues on September 1-2, 2004, and ruled on September 13, 2004 that it has jurisdiction over the Alberta action, and that "Alberta is the most convenient forum to meet the ends of justice when adjudicating this dispute."  See Reasons for Judgment of the Honourable Justice Bryan E. Mahoney ¶ 22 (Sept. 13, 2004) (attached hereto as Ex. 14).  The Alberta court also determined that Devon complied with the rules for service *ex juris*.  Id.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER DEVON

PGC bears the burden of establishing that personal jurisdiction exists over Devon in this forum.  See Am. Express Int'l v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989); LTX Corp. v. Daewoo Corp., 979 F. Supp. 51, 54 (D. Mass. 1997), aff'd, 141 F.3d 1149 (1st Cir. 1998).  In doing so, PGC cannot simply rely on its pleadings; it must provide affirmative evidence establishing jurisdiction.  Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979).  Specifically, PGC must demonstrate that (1) the Massachusetts long-arm statute authorizes jurisdiction over Devon and (2) the exercise of such jurisdiction comports with the due process requirements of the United States Constitution.  LTX, 979 F. Supp. at 54.

### A.    Massachusetts' Long-Arm Statute Does Not Confer Jurisdiction Here

PGC must establish that at least one prong of the Massachusetts long-arm statute applies.  Only two of the prongs potentially apply to the instant matter: jurisdiction arising from the defendant's (1) transacting any business; or (2) contracting to supply services or things in the Commonwealth.  Mass. Ann. Laws. ch. 223A, § 3(a), (b) (2004).  Devon does neither.

### 1.    Devon has not "transacted business" in Massachusetts

The "transacting business" test is designed to identify the defendant's deliberate contacts with the forum so as to determine whether it should have reasonably foreseen the need to invoke the benefits and protections of the forum's laws.  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132

F.3d 111, 112-13 (1st Cir. 1997).  However, the mere fact that a Massachusetts company executes a contract with a foreign company does not automatically mean that the foreign company "transacted business" here.  A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 43 (D. Mass. 1990).  Courts have not asserted personal jurisdiction even where the defendant conducted some administration of the contract in Massachusetts, see N.H. Ins. Guar. Ass'n v. Markem Corp., 676 N.E.2d 809, 812 (Mass. 1997), which is a greater showing of transacting business than can be made in the present case.  Likewise, the exercise of jurisdiction is less favored if the defendant did not initiate or solicit the business transaction in Massachusetts,  see Lyle Richards, 132 F.3d at 112-13, or if the defendant did not execute the contract in Massachusetts, see A.I. Credit Corp. v. Barmack, Inc., 1993 Mass. App. Div. 92, 93 (Mass. Dist. Ct. 1993) (allegation that contract execution took place in Massachusetts  could have established business transaction).  Not only must PGC show that that Devon "transacted business" in Massachusetts, but also that its cause of action "arose from" those activities.  Mass. Ann. Laws. ch. 223A, § 3.

Irma S. Mann Strategic Marketing, Inc. v. Innovatex Research & Development, Inc., 1993 Mass. App. Div. 233 (Mass. Dist. Ct. 1993), is instructive.  There the court found that a defendant's activities were too limited to satisfy the "transacting business" prong of the long-arm statute.  Specifically, the plaintiff's agents themselves had traveled to Canada to negotiate the contract at issue.  Id. at 236.  Upon completion of the contract, the plaintiff mailed it to Canada where the defendant executed it.  Id.  The conduct allegedly amounting to a breach also occurred in Canada.  Id.  Thus, even though the parties communicated by mail and telephone during the contract term, the court determined that the defendant did not transact business in Massachusetts. Id.

Here, Devon did not "transact business" in Massachusetts within the meaning of the long-arm statute.  That PGC executed a contract with Devon does not automatically mean that Devon "transacted business" here.  Devon executed the Gas Purchase Agreement in Alberta, not

Massachusetts, Ex. 1 ¶ 7, and PGC was represented by Alberta counsel during the formation of that contract. Id. ¶ 8. Significantly, Devon and PGC performed, and continue to perform, their obligations under the Gas Purchase Agreement in Alberta by Devon delivering and PGC accepting the gas at a specified delivery point in Alberta. Ex. 2 ¶ 15. Thus, Devon has not transacted business in Massachusetts.

### 2. Devon did not contract to supply services or things

Nor can PGC establish that the second prong is satisfied. Massachusetts courts have made clear that the "contracting to supply services or things" prong of the long-arm statute does not apply to a foreign seller whose only obligation is to deliver goods to a common carrier outside the forum for transport to the forum. See, e.g., Intech, Inc. v. Triple "CO" Marine Salvage, Inc., 2003 Mass. App. Div. 13, 14 (Mass. Dist. Ct. 2003) (no jurisdiction under § 3(b) "[w]here a foreign seller's only obligation is to deliver goods to a shipper outside the Commonwealth for transport to the Commonwealth"); Droukas v. Divers Training Acad., Inc., 376 N.E.2d 548, 553 (Mass. 1978) (no jurisdiction under § 3(b) where contract provided for shipment of engines to plaintiff by means of an independent carrier, and delivery of engines to carrier occurred in Florida). Similar to the "transacting business" prong, the cause of action must arise out of the defendant's contracting to supply services or things in the forum. See Singer v. Piaggio & C. (s.p.a.), 420 F.2d 679, 681 (1st Cir. 1970) (cause of action did not arise out of the defendant's activity because the scooter that injured the plaintiff was never in Massachusetts, even though defendant supplied other scooters under a franchise agreement to a Massachusetts company).

Here, Devon did not "contract to supply services or things" in Massachusetts. The Gas Purchase Agreement is performed in Alberta. See Ex. 4 ¶ 12. Delivery of gas occurs in Alberta, not Massachusetts. This distinction is important, as it clearly removes Devon from the reach of the long-arm statute.

**B.    Asserting Personal Jurisdiction Would Not Comport With Due Process**

Even if PGC can satisfy at least one prong of the long-arm statute, which it cannot, it still must satisfy due process requirements. See LTX, 979 F. Supp. at 57. Plaintiff must show that the defendant purposefully established "minimum contacts" in Massachusetts such that it should reasonably have anticipated being haled into court here. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). In addition, assertion of personal jurisdiction must comport with "fair play" and "substantial justice." Id. This means that jurisdiction must be reasonable, "taking into account such factors as the burden on the defendant of litigating in the plaintiff's chosen forum, the forum State's interest in adjudicating the dispute, and the plaintiff's interest in obtaining relief." Tatro v. Manor Care, Inc., 625 N.E.2d 549, 554 (Mass. 1994); see also Nowak v. Tak How Invs., 94 F.3d 708, 717 (1st Cir. 1996).

For breach-of-contract claims, determining jurisdiction requires an evaluation of "all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." Ganis Corp. of Cal. v. Jackson, 822 F.2d 194, 197-98 (1st Cir. 1987). Thus, it is generally not enough that the defendant entered into a single commercial contract with a resident plaintiff. Shipley Co. v. Clark , 728 F. Supp. 818, 822 (D. Mass. 1990). Rather, there must be such contacts in addition to the contract itself – a so called "contracts plus" analysis – to justify jurisdiction. Id. Examples of such plus factors include: (1) a choice of law provision stating that the forum's law governs the transaction, Ganis Corp. of Cal. v. Jackson, 635 F. Supp. 311, 315 (D. Mass. 1986), aff'd, 822 F.2d 194 (1st Cir. 1987); (2) performance of most of its contract obligations in Massachusetts, Lyle Richards, 132 F.3d at 113; and (3) sending payments to the forum state, Ganis, 822 F.2d at 198 (stating that location of payments is a "material contact in jurisdictional analysis").

Here, neither sufficient minimum contacts nor the so-called "plus" factors are present such that it would be reasonable to litigate this case in Massachusetts. First, Devon is a company

registered to carry on business in Alberta and has a principal place of business in Alberta.

Complaint ¶ 3.  Second, Devon's head office is located in Calgary, and it does not maintain an

office in Massachusetts.  Ex. 1 ¶ 5.  Third, Devon does not have a registered agent in

Massachusetts.  Id.  Fourth, Devon executed the Gas Purchase Agreement in Alberta.  Id. ¶ 8.

Fifth, the Gas Purchase Agreement is performed in Alberta, not in Massachusetts.  Ex. 2 ¶ 15;

Ex. 4 ¶ 12.  Sixth, the record does not reflect any Devon corporate agent traveling to

Massachusetts during the duration of the Gas Purchase Agreement.  Ex. 1 ¶ 6.  Given these

factors, assertion of jurisdiction would not comport with fair play and substantial justice.

Accordingly, PGC's failure to establish minimum contacts or satisfy due process requires

dismissal.

## II.    DISMISSAL IS PROPER ON THE BASIS OF FORUM NON CONVENIENS

Even if this Court has personal jurisdiction over Devon, this case should be dismissed

under the doctrine of forum non conveniens.  Forum non conveniens is based on the principle

"that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by

the letter of a general venue statute."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947).[4]  The

doctrine of forum non conveniens "permits courts to dismiss a suit where an alternative forum is

available in another nation which is fair to the parties and substantially more convenient for them

or the courts."  LTX, 979 F. Supp. at 59.

In considering a forum non conveniens motion, courts evaluate the following two factors:

(1) whether an adequate alternative forum is available and (2) the likelihood of serious unfairness

to the parties if the case is not litigated in the alternative forum.  Id.  This doctrine is flexible,

however, and courts should take account of any consideration related to convenience and

---

[4]    Because the claims in this case will be governed by foreign law and because the more appropriate and available forum is outside the United States, this case does not fall within the scope of 28 U.S.C. § 1404(a). Nonetheless, this fact should not preclude the application of the forum non conveniens principles enunciated in Stewart Org. v. Ricoh Corp., 487 U.S. 22 (1988), and similar cases.  Royal & Bed Spring Co. v. Famossul Industria e Comercio de Moveis Ltd., 906 F.2d 45, 51 (1st Cir. 1990).

fairness.  Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991).  Forum non

conveniens determinations rest within the sound discretion of the trial court.  Piper Aircraft Co.

v. Reyno, 454 U.S. 235, 257 (1981).  Here, both forum non conveniens factors counsel dismissal.

### A.    Alberta Is An Available And Adequate Alternative Forum

For a particular forum to serve as an alternative, it must be both "available" and

"adequate."  Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992).  An alternative

forum is "available" if the defendant is amenable to service of process there.  LTX, 979 F. Supp.

at 59; see also Mercier, 981 F.2d at 1349 (finding Turkey an available forum; contract at issue

was made and performed in Turkey, defendant conducted substantial business in Turkey, and

was amenable to process in Turkey).  An alternative forum is "adequate" if it permits litigation

of the subject matter in dispute.  See Piper, 454 U.S. at 255 n.22; Thomson Info. Servs. Inc. v.

British Telecomm., 940 F. Supp. 20, 23 (D. Mass. 1996).  Adequacy of the alternative forum

does not depend on whether it "offers the full panoply of remedies available in the plaintiff's

chosen forum."  Id. (finding England an adequate forum even though a claim arose under

Massachusetts law that did not arise under English law).  Rather, the alternative forum must be

"so clearly inadequate or unsatisfactory that it is no remedy at all."  Id.  Moreover, that the

substantive law in the alternative forum is less favorable to the plaintiff is not a factor in the

forum non conveniens inquiry.  Piper, 454 U.S. at 247.

Here, there is no question that Alberta is an "available"  and "adequate" forum to litigate

this dispute.  Devon is headquartered in Alberta and conducts business there, making it amenable

to service of process in Alberta.  Declaration of Frank R. Foran (August 17, 2004) (attached

hereto as Ex. 7).  PGC has numerous contacts with Alberta and can avail itself of the jurisdiction

and processes of the courts in Alberta.  Ex. 7 ¶¶ 9, 10.  Significantly, the Alberta court,

considering the jurisdiction and *forum conveniens* issues, already has determined that Alberta is

an adequate and available — and is the more convenient — forum in which to litigate this

dispute.  Ex. 14 ¶¶ 22, 23.

PGC has carried on business in Alberta since at least the commencement of the flow of gas under the Gas Purchase Agreement and continues to do so by accepting delivery of gas in Alberta. Ex. 4 ¶ 12. Alberta permits litigation of the subject matter in dispute and will provide the declaratory relief that Plaintiff seeks if such claims prove to be meritorious. Ex. 7 ¶¶ 11-14; see also Victoriatea.com, Inc. v. Cott Bev. Canada, 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003) (recognizing that Canada is an adequate forum for adjudication of contract and tort claims).

Moreover, PGC cannot dispute that its own contacts with Massachusetts are tenuous at best. A significant amount of PGC's corporate functions and control, as well as the location of witnesses and documentary evidence related to this matter, are not directed from or located in Massachusetts, making Massachusetts no better suited for litigating this dispute. PGC and its related entities are incorporated in Delaware, New York, and Colorado, and maintain principal offices in Syracuse, New York, and Bethesda, Maryland. Affidavit of Donald Scholl ¶¶ 10-12 (Aug. 16, 2004) (attached hereto as Ex. 13); Affidavit of George A. Lehner ¶ 5 (Aug. 16, 2004) (attached hereto as Ex. 12). The general partner of PGC, namely PE-Pittsfield, L.L.C., is operated and controlled out of Syracuse, New York. Excerpts of Cross Examination of Donald Scholl at 15-16 (Aug. 16, 2004) (attached hereto as Ex. 11). The limited partner of PGC, Altresco, Inc., is incorporated in Colorado and maintains a head office and controls the business from Bethesda, Maryland. Excerpts of Cross Examination of George A. Lehner at 16, 19 (Aug. 16, 2004 (attached hereto as Ex. 10). Approval of payments for the gas purchase was authorized from Stamford, Connecticut. Id. at 50.

Moreover, documentary evidence that may be relevant to this action is located in New York, Maryland, and Massachusetts. Ex. 11 at 36; Ex. 10 at 20. PGC also has represented that its potential witnesses in this action are located in New York, Connecticut, Massachusetts, Virginia, Washington, D.C., and Maryland. Ex. 10 ¶¶ 11-14; Ex. 11 ¶¶ 21-33. These factors strongly indicate that PGC and its related entities have no real and substantial connection to

Massachusetts and, therefore, PGC would not be prejudiced if required to litigate this matter in Alberta.

     **B.**     **The Balance Of Private And Public Interests Favors The Canadian Forum**

     Since Alberta is an available and adequate forum, the Court should then determine, by balancing private and public interest factors, whether adjudication of the action in Plaintiff's chosen forum would result in serious unfairness to the parties. See Mercier, 981 F.2d at 1354. Where, as here, the private and public interests strongly favor the proposed alternative forum, the Court should dismiss the action. Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 15 (1st Cir. 2000).

     **1.**     **Private interests strongly favor dismissal**

     The following private interest factors are relevant here: relative ease of access to sources of proof, availability of compulsory process, the cost of securing attendance of witnesses, and other practical problems that make trial of the case easy, expeditious, and inexpensive. Gulf Oil, 330 U.S. at 508; LTX, 979 F. Supp. at 59-60. These factors weigh in favor of dismissal of this case.

     In Howe, the First Circuit concluded that private interests favored dismissal where the bulk of the evidence was located in Canada. See 946 F.2d at 951. The court reached this conclusion because the conduct at issue largely took place in Canada. Id.; see also Thomson, 940 F. Supp. at 25 & n.3 (finding that location of documentary evidence favored English forum since defendant maintained its records there, even though plaintiff may have maintained copies of some of the documents in Boston).

     Here, the bulk of the pertinent evidence is located in Alberta. The Gas Purchase Agreement required Canadian provincial and federal governmental permits, issued in proceedings that PGC participated in through Alberta counsel. Ex. 4 ¶¶ 8, 9; see also Ex. H to Ex. 3 (Articles 2.3, 2.4, & 2.5 of Gas Purchase Agreement). PGC used Bennett Jones Verchere and was the actual applicant to the NEB. Ex. 1 ¶ 11. Location of documentary evidence regarding the approval of Devon's contractual relationship with PGC by the regulatory

authorities is located in Alberta.  Id.  The record indicates that Devon negotiated and executed

the Gas Purchase Agreement in Alberta.  Id. ¶¶ 7, 8.  The parties perform the Gas Purchase

Agreement in Alberta at its delivery point for the gas in Alberta.  Ex. 2 ¶ 15.  Key expert

witnesses — who can explain the regulatory, public policy, and commercial contexts of the Gas

Purchase Agreement — would be located in Alberta.  Because the Gas Purchase Agreement was

made in Alberta and pertains to an ongoing Alberta transaction, it is clear that most of the

relevant documents and witnesses are in Canada and, specifically, Alberta.[5]

In J.F. Pritchard & Co. v. Dow Chem. of Canada, Ltd., 462 F.2d 998 (8th Cir. 1972), an

American construction company sued a Canadian chemical company for breach of contract.

Although the contract had been negotiated in the United States, and the design, engineering, and

managerial work on the contract was to be performed in the United States, the court, affirming

the dismissal on forum non conveniens grounds, observed:

> [Plaintiff] chose to make its Canadian subsidiary the sole performing party to the
> contract; it is located in Canada; [plaintiff] performed the contract there; and
> Canadian law was chosen by [plaintiff] to apply to all interpretations of it.  Thus
> there is more than a Canadian nexus here.   The whole case is Canadian.
> [Plaintiff] made its bed in Canada; now he must lie in it if he wishes to proceed.

Id. at 1002.  PGC similarly "made its bed in Alberta" with the Gas Purchase Agreement, and the

private interests weigh in favor of Alberta as the most appropriate forum.

Moreover, any interest concerning the inconvenience to PGC from traveling to Alberta to

litigate this dispute is unavailing.  PGC has been conducting business in Alberta as a gas

purchaser since at least the commencement of delivery of gas under the Gas Purchase

Agreement.  PGC's representatives have traveled to Calgary before in connection with the Gas

---

[5]        Nor can PGC argue that its potentially relevant documents and witnesses are located solely, or even
primarily, in Massachusetts.  PGC's own corporate representatives testified in the Alberta action that potentially
relevant documents are located in New York, Maryland, and Massachusetts, Ex. 10 at 20, Ex. 11 at 36, and
witnesses are located in New York, Connecticut, Massachusetts, Virginia, Washington, D.C., and Maryland.  Ex. 10
¶¶ 11-14; Ex. 11 ¶¶ 21-33.  Moreover, as the Alberta court recently acknowledged, the parol evidence rule suggests
that "what the witnesses have to say about a contract does not assist the court interpreting it" and "those witnesses
will be as  much from Alberta as from outside of Alberta."  Ex. 14 ¶ 22(j).

Purchase Agreement.  Ex. 10 at 11-12.  PGC retained counsel in Calgary in connection with the

formation of the Gas Purchase Agreement, and the regulatory proceedings related thereto.  Ex. 1

¶¶ 8, 11.  PGC therefore is no stranger to Alberta; traveling there would not inconvenience it.

See Iragorri, 203 F.3d at 13 ("A plaintiff's familiarity with the alternative forum, her comfort

level there, and her fluency in the language used in its courts may be weighed in deciding a

forum non convenience motion.").  Moreover, PGC cannot argue that it is unfamiliar with the

Alberta legal system.  PGC, under its prior name, Altresco Pittsfield L.P., was a defendant and

counterclaim plaintiff in a dispute before the Alberta court with Canadian gas producers,

involving the alleged unilateral termination of a gas purchase agreement related to the same

Pittsfield, Massachusetts cogeneration facility involved in the present case.  See Vector Energy

Inc. v. Canadian Pioneer Energy Inc., A.J. No. 440, File No. 9301-19690 (Alberta Court of

Queen's Bench, Judicial District of Calgary) (May 7, 1996) (attached hereto as Ex. 9); Statement

of Defence and Counterclaim of Altresco Pittsfield L.P., Altresco, Inc. and Pittsfield Partners

(June 2, 1995) (attached hereto as Ex. 8).

### 2.    Public interests strongly favor dismissal

The following public interest factors are relevant here: the administrative difficulties

resulting from court congestion in the plaintiff's chosen forum, the interest in having localized

controversies decided at home, and the interest in conducting trials in a forum that is at home

with the governing law or in the application of foreign law.  Gulf Oil, 330 U.S. at 508-09;

Mercier, 981 F.2d at 1354; LTX, 979 F. Supp. at 60.

### a.    Application of Alberta law

The most striking factor in the analysis of the public interest factors in this case is the fact

that Alberta law will govern the claims that PGC asserts in its Complaint.  There is a strong

public interest in having the trial of a diversity case in a forum that is "at home" with the law that

governs the action.  Gulf Oil, 330 U.S. at 508-09; Ex. 14 ¶ 22(d) ("Its is accepted law both in

Canada and the United States that Canadian law is best left to Canadian courts and vice versa in

the United States.").  Accordingly, courts consistently have dismissed cases due to significant practical problems inherent in applying foreign law.

In Howe, the First Circuit specifically dealt with issues arising under Canadian law and held that the balance of public interests favored suit in Canada because the plaintiff's claims implicated duties of the defendants under Canadian law.  946 F.2d at 953.  The court stated that "at least some significant portion of the adjudication" involved "tasks most easily and appropriately handled by a Canadian court: interpreting primarily Canadian law and applying it to matters principally of concern to Canada and Canadians."  Id.

As in Howe, "[m]any forum non conveniens decisions have held that the need to apply foreign law favors dismissal."  Piper Aircraft, 454 U.S. at 260 n.29; see, e.g., Royal & Bed Spring Co. v. Famossul Industria e Comercio de Moveis Ltd., 906 F.2d 45, 52-53 (1st Cir. 1990) (affirming dismissal where Brazilian law would apply to contract issues); Pritchard, 462 F.2d at 1000 (Canada was a more convenient forum where "the contract call[ed] for the application of Canadian law"); Victoriatea.com, 239 F. Supp. 2d at 387 (where an agreement may be construed under Canadian law, it "should be tried in a forum familiar" with that law, i.e., Canada); LTX, 979 F. Supp. at 60 (Korea was a more convenient forum where it appeared likely that Korean law would govern the contract issues); Thomas Info., 940 F. Supp. at 26 (England was the proper forum where application of Massachusetts's choice of law principles dictated application of English laws: "[t]here can be no doubt that an English court is better equipped to apply that body of law than is [the District of Massachusetts]"); Nowsco Well Serv., Ltd. v. Home Ins. Co., 799 F. Supp. 602, 614 (S.D. W. Va. 1991) ("Unquestionably, the court and counsel in this matter are unfamiliar with Canadian law.  The practical problems incident to researching and applying law which is so foreign to the court and the lawyers before it will be quite significant."), aff'd, 974 F.2d 1331 (4th Cir. 1992); Murty v. Aga Khan, 92 F.R.D. 478, 481 (E.D.N.Y. 1981) (court favored trial of diversity case in a forum familiar with the governing law, "rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself").

Here, the rights and obligations under the Gas Purchase Agreement are subject to Alberta law. The application of Alberta law weighs strongly in favor of dismissing the instant case and allowing the Alberta litigation to proceed. The Gas Purchase Agreement, which is the core of the dispute, contains a choice of law provision: Article 20.3 of the Gas Purchase Agreement states, "This Agreement shall be governed by and construed in accordance with the laws in force in the Province of Alberta." Ex. H to Ex. 3 (Article 20.3 of the Gas Purchase Agreement).

Moreover, the issues involved in this litigation potentially implicate provincial and federal regulatory agencies in Canada that regulate contracts for Alberta gas and the export of gas from Canada, as well as an interpretation under Alberta's *Partnership Act*. Ex. 14 ¶ 22(d), (c). Litigating this case in Massachusetts potentially would require the Court to consider and apply foreign regulatory law and policy, further hampering judicial efficiency and increasing costs to the parties.

<b>b.    <u>Local interest in controversy</u></b>

In addition to the application of foreign law, there is a strong local interest of Alberta in this matter. Courts routinely have recognized a local interest in having local controversies tried at home. <u>Gulf Oil</u>, 330 U.S. at 509; <u>Royal Bed</u>, 906 F.2d at 52.

As the Alberta court already has determined in the parallel Alberta action, all essential aspects relating to the formation and performance of the Gas Purchase Agreement — specifically the delivery of natural gas — occurred in Alberta. Ex. 4 ¶ 22(a) (considering PGC's representatives travel to Calgary; the finalization of the Gas Purchase Agreement in Calgary; PGC's involvement with the Canadian regulatory authorities; and PGCs taking delivery of gas in Alberta for nine years, and concluding that Alberta is the most convenient forum); Ex. 2 ¶ 15. Alberta has the stronger interest in deciding this local controversy: PGC purchased the gas and Devon delivered it there.

Moreover, the application of the law of Alberta to these matters is principally of concern to Alberta. Additionally, a parallel action involving the Gas Purchase Agreement and both of the

parties in the present case already is proceeding in Alberta.  Ex. 6; 14.[6]  As a comparison of

PGC's Complaint here with Devon's Statement of Claim in Alberta shows, while all of the

parties in the Massachusetts case are present in Alberta, defendants are named in Alberta who are

not plaintiffs here.  <u>Compare</u> Ex. 6 <u>with</u> Complaint.  Further, while the issues raised by PGC here

are raised in or subsumed within the Alberta action, Devon has made additional claims for relief

in Alberta that have not been made here.  <u>Id.</u>  The balance favors Alberta, as the Alberta court

already has determined.  Ex. 14 ¶ 22, 23.

c.  <u>Relative docket congestion</u>

It appears that the courts in Alberta are significantly less congested than the civil docket

of this Court, and that a trial date in Alberta would be set more expeditiously.  Ex. 7 ¶¶ 15-21.

For example, as of July 31, 2004, in the Alberta Court of Queen's Bench, trial dates were

available as of October 2, 2004 for either a short or long civil trial.  <u>Id.</u> ¶ 18.  Moreover, by the

time a trial date is set in Alberta, the parties have usually or nearly completed all pleadings,

---

[6]       That PGC filed the Massachusetts case four days earlier than Devon's Alberta action is of no consequence. Application of Canadian law weighs in favor of litigation in Canada even though PGC filed the Massachusetts action first.  "First-to-file" is not a factor in the common law forum non conveniens analysis.  <u>See</u> <u>Guidi v. Inter-Cont'l Hotels Corp.</u>, 224 F.3d 142, 148 (2d Cir. 2000) (holding that existence of a related litigation is not a factor in the forum non conveniens analysis).  Nevertheless, the first-to-file factor cuts in favor of a Canadian forum for several reasons.  First, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 21 (1983) (analyzing priority in filing in deciding whether a federal district court properly stayed a diversity action pending resolution of a concurrent state court suit); <u>accord</u> <u>C-Cure Chem. Co. v. Secure Adhesives Corp.</u>, 571 F. Supp. 808, 822 (W.D.N.Y. 1983) (stating that the status of a pending Canadian litigation was farther along, which weighed "strongly" in favor of dismissing the instant case).  Second, the first-to-file factor gives way if there are other overriding convenience factors.  <u>See, e.g.</u>, <u>Wellons v. Numerica Savs. Bank, FSB</u>, 749 F. Supp. 336, 337 (D. Mass. 1990) (not following first-to-file factor when cause of action arose in alternative forum whose laws would "undoubtedly govern" the case).  Third, courts generally stay or dismiss cases, although filed first, if a pending litigation affords more comprehensive relief to the parties.  <u>See</u> <u>In re Int'l Admin. Servs., Inc.</u>, 211 B.R. 88, 96 n.5 (Bankr. M.D. Fla. 1997).

document discoveries, oral examinations for discoveries, undertakings, exchange of expert reports, and interlocutory proceedings.  Id. ¶ 16.  Alberta courts employ summary disposition procedures that can be utilized with respect to claims for declaratory relief.  Id. ¶ 20.  Therefore, the private and public interests in obtaining an expeditious resolution of the parties' dispute favor Alberta as a forum.

<b>3.    Litigating this case in Alberta will not be seriously unfair to PGC</b>

Finally, Plaintiff cannot argue that it would be seriously unfair to be required to litigate this case in Alberta.  While PGC's choice of forum is a factor in the forum non conveniens analysis, it is not determinative and is less compelling when the factors militate in favor of an alternative jurisdiction.  Piper Aircraft, 454 U.S. at 253 n.23 (citizen's forum choice "should not be given dispositive weight"); Murty, 92 F.R.D. 478 at 480-81.  PGC used Alberta counsel when negotiating and entering into the Gas Purchase Agreement, and for assistance in obtaining the appropriate regulatory license from the NEB allowing for the export of natural gas from Canada.  Ex. 1 ¶¶ 8, 11.  PGC's previous litigation in Alberta makes it familiar with the Alberta legal system and Alberta counsel.  See Ex. 9.  Moreover, PGC could reasonably have expected to be litigating a dispute in Alberta, as it agreed that any dispute under the Gas Purchase Agreement would be subject to the laws of Alberta.  PGC's familiarity with the alternative forum is further evidenced by the fact that Alberta is an English-speaking province, and that corporate representatives have traveled to Alberta on several occasions with respect to this Agreement.  Ex. 1 ¶ 6; Ex. 5 at 16; see Iragorri, 203 F.3d at 13 (plaintiff's familiarity with the alternative forum, as well as her fluency in the language used in its courts, was a factor in affirming decision that Columbia was more convenient forum).

Alberta is a more suitable forum for the additional reason that there is no dispute that a declaration by an Alberta court of the parties' rights under the Gas Purchase Agreement would be enforceable against the parties in Alberta – where the gas is delivered.  However, U.S. declaratory judgments are not per se enforceable in Canada, and a declaration by this Court

would therefore require additional court proceedings (here or in Alberta) for enforcement.  <u>See</u>

Ex. 14 ¶ 22(f) (finding that a declaratory judgment from Massachusetts would be unenforceable

in Canada and relitigation would be required to obtain an enforceable judgment).

Considerations of convenience, judicial efficiency, and fairness all strongly favor Alberta

as the appropriate, alternative forum.  The Alberta court's findings aptly summarize these points:

> This is not a case where Defendants ought to be protected against being pursued
> by the Plaintiff in a jurisdiction having little or no connection with the transaction
> or the parties.  There is a real nexus or a real and substantial connection between
> the subject matter of the Alberta Action and the province of Alberta.  Devon, an
> Alberta corporation, seeks an interpretation and a declaration of its rights under
> the main contract, the Gas Purchase and Sale Agreement, which contract was
> made and largely performed in Alberta.  The parties agreed that the governing law
> of the contact would be that of Alberta.  Further, considerations of Canada and
> Alberta energy export regulations and policy as well as Alberta partnership law
> make this jurisdiction the one with the appropriate authority to decide all matters
> in one proceeding.

Ex. 14 ¶ 23.  Accordingly, the Court should dismiss this action.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant Devon Canada Corporation

respectfully requests that this Court dismiss the Complaint for lack of personal jurisdiction, or, in

the alternative, dismiss this action for forum non conveniens, and/or grant such further relief as

the Court deems appropriate.

Dated: September, 17, 2004.                              Respectfully submitted,

                                                         /s/ Anita B. Bapooji
                                                         William L. Prickett (BBO #555341)
                                                         Anita B. Bapooji (BBO #644657)
                                                         Testa, Hurwitz & Thibeault, LLP
                                                         125 High Street
                                                         Boston, MA 02110
                                                         Telephone: 617-248-7000
                                                         Facsimile: 617-248-7100

                                                         Counsel for Defendant
                                                         Devon Canada Corporation

John M. Simpson
Michelle C. Pardo
Fulbright & Jaworski, LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-662-0200
Facsimile: 202-662-4643

Of Counsel for Defendant
Devon Canada Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendant Devon Canada Corporation's Motion to Stay in Deference to a Pending Foreign Proceeding was served, via hand delivery on the 17th day of September, 2004 on the following:

> Robert J. Muldoon
> David A. Brown
> Sherin and Lodgen LLP
> 101 Federal Street
> Boston, MA 02110


> /s/ Anita B. Bapooji
> Anita B. Bapooji