**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| PITTSFIELD GENERATING COMPANY, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: |
| v. | ) | 04-30128-MAP |
| | ) | |
| DEVON CANADA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

**DEFENDANT DEVON CANADA CORPORATION'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY**
**IN DEFERENCE TO A PENDING FOREIGN PROCEEDING**

Pursuant to this Court's inherent authority to stay an action in deference to a pending foreign proceeding, Devon Canada Corporation ("Devon") respectfully requests that the Court exercise its discretion by granting a stay of these proceedings pending the ultimate resolution of a parallel action in Calgary, Alberta, Canada. On September 13, 2003, the court in the parallel Alberta proceeding determined that it had jurisdiction over the case and that Alberta was the most convenient forum to litigate the dispute. Accordingly, as shown below, the instant action should be stayed, which would obviate the necessity of addressing the jurisdiction and related matters that are before this Court by virtue of Devon's contemporaneously filed Rule 12 and forum non conveniens motion.

**STATEMENT OF FACTS**

Plaintiff Pittsfield Generating Company, L.P. ("PGC" or "Plaintiff")[1] filed this Complaint against Devon in this Court on July 8, 2004. On July 28, 2004, a copy of the Summons and

_____

[1] Although Plaintiff has operated previously under another name – Altresco Pittsfield, L.P. – all references herein to "PGC" include all predecessors of Plaintiff and other names that Plaintiff has used.

- 1 -

Complaint was delivered to Devon's office in Calgary, Alberta, Canada.  The Complaint seeks a declaration of PGC's rights and obligations under a Natural Gas Purchase and Sale Agreement (the "Gas Purchase Agreement") entered into by Devon's predecessor, Home Oil Company Limited ("Home"), as seller, and PGC, as buyer, on August 23, 1995.  Affidavit of Henry Assen ¶ 11 (July 12, 2004) (Ex. 2).[2]

Pursuant to the Gas Purchase Agreement, Devon sells and delivers daily nominations of natural gas in Alberta to PGC.  Complaint ¶ 13.  The natural gas purchased by PGC from Devon is to serve a gas-fired combined-cycle cogeneration facility that produces electricity and steam.  Ex. 2 ¶ 16.  Under Power Sale Agreements ("PSAs"), PGC sells electrical power produced from its plant.  Complaint ¶ 8.  At the time the parties entered into the Gas Purchase Agreement, they also entered into a Renegotiation/Arbitration Agency Agreement, id. ¶ 19, which provides a procedural mechanism by which price renegotiation, index replacement, and arbitration may occur in relation to the Gas Purchase Agreement, see id. ¶ 20.

## I.    The Gas Purchase Agreement

The Gas Purchase Agreement provides for the sale by Devon to PGC of certain quantities of natural gas which are delivered at a specified delivery point in Alberta, namely, the point of interconnection between the NOVA and the TCPL pipeline systems at the Alberta-Saskatchewan border near Empress, Alberta.  Ex. 2 ¶ 15.  Pursuant to Clause 7.1 of the Gas Purchase Agreement, title to and all risk associated with the subject gas passes from Devon to PGC near Empress in the Province of Alberta.  PGC therefore has been carrying on business in Alberta. Affidavit of Henry Assen ¶ 12 (Aug. 10, 2004) (Ex. 4); Ex. H to Ex. 2 (Article 7.1 of Gas

---

[2]    Unless noted otherwise, all citations to exhibits herein refer to those exhibits attached to Defendant Devon Canada Corporation's Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens, filed simultaneously herewith.

Purchase Agreement).

The Gas Purchase Agreement is governed by, and is to be construed in accordance with, the laws in force in the Province of Alberta, Canada.  Ex. H to Ex. 2 (Article 20.3 of Gas Purchase Agreement).  By the terms of the Gas Purchase Agreement, Home was required to apply for a long-term Alberta removal permit from the agency which is today known as the Alberta Energy and Utilities Board ("AEUB").  Ex. 4 ¶ 9.  AEUB regulatory policy at the time required that gas removed from the Province of Alberta be identified as going to a specific market.  Id.  Similarly, the Gas Purchase Agreement required PGC to apply for a long-term export license from the National Energy Board ("NEB") in Canada to allow the export from Canada of the subject natural gas.  Id. ¶ 8; Ex. H to Ex. 2 (Article 2.4 of the Gas Purchase Agreement).  PGC retained the Alberta law firm of Bennett Jones Verchere to represent it in the application before the NEB for an export license.  Ex. 4 ¶ 8.  Both the AEUB and the NEB maintain extensive document libraries at their offices in Calgary that include materials filed in support of the applications for regulatory approvals required by the Gas Purchase Agreement, including items such as information requests and responses thereto, hearing exhibits, and hearing transcripts, which may be relevant in this matter.  Id. ¶ 10.

## II.    The Termination Agreements

On June 2, 2004, PGC entered into certain contracts (the Termination Agreements) that purport to terminate the PSAs effective as of a future date which, subject to the satisfaction of certain conditions, is anticipated to be on or after October 1, 2004.  Ex. 2 ¶ 19.  However, PGC did not disclose that fact to Devon until June 7, 2004 – by letter to Devon dated five days after execution of those agreements.  Declaration of Henry Assen (Sept. 16, 2004) ¶ 12 (Ex. 1).  Once it had received the June 7 letter, Devon corresponded with PGC in an attempt to obtain copies of

the Termination Agreements.  Id.; Ex. B to Affidavit of Henry Assen (Aug. 3, 2004) (Ex. 3).

PGC responded to Devon by letter dated June 28, 2004, refusing to provide copies of the

Termination Agreements until they became public.  Ex. 3 ¶ 10.

By letter dated July 6, 2004, Devon reiterated its request for a copy of the Termination

Agreements.  Ex. 3 ¶ 11; Ex. D to Ex. 3.  On July 8, 2004, the Termination Agreements were

made publicly available by the Massachusetts Department of Telecommunications and Energy

("DTE").  Ex. 1 ¶ 12.  On the same date, PGC commenced the Massachusetts action.  Complaint

(filed July 8, 2004).  PGC did nothing on July 8 to notify Devon that the Termination

Agreements were now public or that PGC had sued Devon.  Although Devon managed to

discover, independently, the existence of the Massachusetts lawsuit and obtained copies of the

Termination Agreements on July 8 (from a source other than PGC), copies of the Termination

Agreements did not arrive from PGC in Alberta until July 12, 2004.  Excerpts from Cross

Examination of Henry Assen at 39 (Aug. 12, 2004) (Ex. 5).  PGC simply mailed those

documents to Alberta, see Ex. F to Ex. 3, with the evident intent that they would arrive in Alberta

after the July 8 actions.  On July 8, Devon also learned that PGC had actually submitted a

proposal to the DTE for termination of the PSAs on April 13, 2004.  Ex. 1 ¶ 12.  Devon had been

unaware of this proposal until July 8.  Id.

### III.    The Alberta Action

On July 12, 2004, Devon filed an action against PGC and certain of its affiliated entities

in the Court of Queen's Bench of Alberta, Judicial District of Calgary, No. 0401-10854.  See

Statement of Claim ¶ 16 (Ex. 6).  Devon's "Statement of Claim" (complaint) alleges that PGC's

unilateral termination of the PSAs is conduct which evinces an intention not to be bound by the

Gas Purchase Agreement such that the Gas Purchase Agreement is repudiated by PGC, effective

as of the termination of the PSAs, and Devon has accepted that repudiation.  Id. ¶ 16.  Devon seeks, *inter alia*, a declaration, order, or judgment that PGC's termination of the PSAs constitutes a repudiation of the Gas Purchase Agreement, and therefore, Devon is no longer obligated to continue to deliver gas under the Gas Purchase Agreement.  Id. at 6.  Devon also requests punitive and exemplary damages as a result of PGC's repudiation of the Gas Purchase Agreement and other relief based on Alberta partnership law.  Id.  PGC was served with a copy of the Alberta Statement of Claim on or about July 14, 2004.  Ex. 3 ¶ 14.

In the Alberta action, PGC and its affiliated defendants challenged service of process and the court's jurisdiction, and argued that Alberta is a forum non conveniens.  In connection with the application, the parties to the Alberta action conducted cross-examinations (depositions) of some of the witnesses who had given affidavits on the issues raised by the application.  The Alberta court heard argument on the jurisdictional issues on September 1-2, 2004, and on September 13, 2004, the Alberta court determined that it had jurisdiction over PGC and the other defendants in Alberta, and that Alberta was the most convenient and appropriate place to adjudicate this case.  See Reasons for Judgment of the Honourable Justice Bryan E. Mahoney (Sept. 13, 2004) (attached hereto as Ex. A).[3]  The court reasoned that because the Gas Purchase Agreement was negotiated, executed, and largely performed in Alberta, that was a factor weighing in favor of an Alberta forum.  Id. ¶ 22(a).  The court found that the need to apply Canadian law likewise favored an Alberta forum – the Gas Purchase Agreement called for the application of Alberta law, and it implicated Canadian regulatory issues since it was structured against a backdrop of public and regulatory policies in Canada and Alberta.  Id. ¶ 22(c), (d).

---

[3]        In Alberta, the Court of Queen's Bench will issue reasons for the court's ruling which will be followed by a conforming order prepared by counsel for the prevailing party.  As of the filing of the instant motion, the order had not yet been entered in Alberta.  Devon will provide this Court with a copy of the final Alberta order once it has been entered.

Most notably, the Alberta court determined that it had "exclusive jurisdiction over the actions of the parties in Alberta" and, as such, only an Alberta court could require Devon to deliver the gas to its gas buyers or permit Devon to cease delivery.  Id. ¶ 22(e).  The court recognized that a Massachusetts declaratory judgment would be unenforceable in Canada.  In summary, the Alberta court stated,

> This is not a case where the Defendants ought to be protected against being pursued by the Plaintiff in a jurisdiction having little or no connection with the transaction or the parties.  There is a nexus or a real and substantial connection between the subject matter of the Alberta Action and the province of Alberta.  Devon, an Alberta corporation, seeks an interpretation and a declaration of its rights under the main contract, the Gas Purchase and Sale Agreement, which contract was made and largely performed in Alberta.  The parties agreed that the governing law of that contract would be that of Alberta.  Further, considerations of Canada and Alberta energy export regulations and policy as well as Alberta partnership law make this jurisdiction the one with the appropriate authority to decide all matters in one proceeding.

Id. ¶ 23.  For these reasons, the Alberta court held that Alberta was the forum conveniens, allowing the Alberta case to proceed.

## ARGUMENT

"Federal courts have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction."  Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d 248, 251 (D. Mass. 1999); cf. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) (holding that every court has the inherent power to stay proceedings to control its docket); Bigio v. Coca-Cola Co., 239 F.3d 440, 454 (2d Cir. 2001) (stating that the decision to dismiss or stay a case in deference to a foreign proceeding lies within the discretion of the district court).  This inherent power is rooted in concerns regarding international comity.  International comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."  Societe

Nationale Industrielle Aerospatiale v. United States Dist. Court for the S.D. of Iowa, 482 U.S.
522, 544 n.27 (1987).

The principle of international comity is one of broad application and may take the form
of "a discretionary act of deference by a national court to decline to exercise jurisdiction in a
case properly adjudicated in a foreign state." Maxwell Communications Corp. PLC by Homan
v. Societe Generale, 93 F.3d 1036, 1046 (2d Cir. 1996). In other words, international comity
"counsels forbearance when a sovereign which has a legitimate claim to jurisdiction concludes
that a second sovereign also has a legitimate claim to jurisdiction under principles of
international law." United States v. Nippon Paper Indus. Co., 109 F.3d 1, 8 (1st Cir. 1997).
Particularly, with respect to a pending case in Canada, one court explained the degree of
deference a federal court owes a Canadian proceeding:

> Canada [is] a country that shares the same common law root as our jurisprudence.
> . . . [Thus], [t]he rationale for comity dismissals is not based simply on lack of
> familiarity with the particular foreign law, but rather is in deference to the foreign
> country's legal, judicial, legislative and administrative system of handling
> disputes over which it has jurisdiction, in a spirit of international cooperation . . . .
> Certainly, if this Court cannot extend comity to Canada, the comity principle has
> little vitality in our jurisprudence.

Brinco Mining Ltd. v. Fed. Ins. Co., 552 F. Supp. 1233, 1240 (D.D.C. 1982) (internal quotations
omitted) (dismissing U.S. case in deference to pending Canadian case).

This Court has considered the following factors to be relevant in determining whether to
grant a stay because of litigation pending in another country:

> (1) similarity of parties and issues involved in the foreign litigation; (2) the
> promotion of judicial efficiency; (3) adequacy of relief available in the alternative
> forum; (4) issues of fairness to and convenience of the parties, counsel, and
> witnesses; (5) the possibility of prejudice to any of the parties; and (6) the
> temporal sequence of the filing of the actions.

Goldhammer, 59 F. Supp. 2d at 252-53; accord United Bank for Africa PLC v. Coker, 2003 U.S.
Dist. LEXIS 20880, at *8 (S.D.N.Y. 2003) (applying similar factors in dismissing a U.S. case in

favor of a Nigerian case on international comity grounds).  These factors reflect an overarching concern for federal courts to "demonstrate[] a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources." Goldhammer, 59 F. Supp. 2d at 253.  Here, the balance of these factors weighs in favor of staying this action pending the outcome of the Alberta case.

## I.    SIMILARITY OF PARTIES AND ISSUES

For purposes of the stay that Devon seeks here (and with certain exceptions that are not material), the Alberta and Massachusetts actions essentially mirror each other.  The parties in the two actions are the same with two exceptions.  First, Devon is a plaintiff in the Alberta suit and a defendant here.  However, that "the parties trade places on either side of the 'v.' . . . [is] a distinction without much difference."  Id. at 253; accord Martin v. Graybar Elec. Co., 266 F.2d 202, 204 (7th Cir. 1959) ("Two simultaneous pending lawsuits . . . between the same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but conducive to the orderly administration of justice.").  The analysis can just as easily rest on whether PGC's claims here would be similar to any counterclaims it may raise in the Alberta suit.  See Goldhammer, 59 F. Supp. 2d at 253 ("The titles 'plaintiff' and 'defendant' have little significance where there are compulsory counterclaims in each suit.").

Second, the Alberta suit names three additional parties: PE-Pittsfield, LLC, PurEnergy I, LLC, and Altresco, Inc.  See Ex. 6.  The parties need not be identical, however, in order for an action to be stayed.  Goldhammer, 59 F. Supp. 2d at 253.  In any event, courts have found parties to be similar if they share similar interests.  See id. (finding similar parties where U.S. action named an additional party as plaintiff and that party held a two-thirds interest in the party named as plaintiff in a parallel English suit); see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing,

<u>Inc.</u>, 962 F.2d 698, 700 (7th Cir. 1992) (finding similar parties where the party in a federal suit owned a one-fourth interest in a company named as a party in a parallel state suit). The three additional parties in Alberta share interests similar to those of PGC: PE-Pittsfield, LLC is a general partner of PGC; Altresco, Inc. likewise was a general partner of Altresco Pittsfield, L.P. (now a limited partner of PGC), which was named as a party to the Gas Purchase Agreement; and PurEnergy I, LLC is the "sole member" of PGC. Ex. 2 ¶¶ 9, 11; Excerpts of Cross Examination of George A. Lehner at 17 (Aug. 16, 2004) (Ex. 10).

In addition to the similarity of parties, the factual and legal issues in the two actions overlap. Indeed, with the exception of paragraph A of the Complaint which Devon does not in any event contest, the respective requests for declaratory relief in the two cases mirror each other. Both cases require a determination of the principle issue of whether PGC's plan to terminate the PSAs will constitute a repudiation of the Gas Purchase Agreement, thereby allowing Devon to elect to treat the contract as terminated. <u>Compare</u> Complaint <u>with</u> Ex. 6 (Statement of Claim). Further, as the Alberta court recognized, both cases request similar declaratory relief. <u>See</u> Ex. A hereto ¶ 7. Since the two actions involve overlapping issues, this Court should stay the present case. <u>See</u> <u>Goldhammer</u>, 59 F. Supp. 2d at 253-54 (staying Massachusetts action that involved the determination of the same issues as a parallel English action, even though the stated causes of actions in the two suits differed).

## II.    <u>PROMOTION OF JUDICIAL EFFICIENCY</u>

Simultaneous adjudications regarding similar facts and issues not only consume a great amount of scarce judicial resources, but also risk inconsistent judgments. <u>Id.</u> at 254. Thus, the promotion of judicial efficiency is a "key factor" in determining whether to grant a stay because of a parallel litigation in a foreign forum. <u>Id.</u> The following efficiency factors set forth by the

Eleventh Circuit are instructive here: (1) whether the actions share similar parties and issues; (2) whether the foreign forum is likely to render a prompt disposition; (3) whether a stay will avoid piecemeal litigation; and (4) whether the federal forum is inconvenient.  Turner Entm't Co. v. Degeto Film GmbH, 25 F.3d 1512, 1522 (11th Cir. 1994) (staying U.S. proceeding in light of parallel German proceeding); see also Columbia Ins. Co. v. Brewer, 1997 U.S. Dist. LEXIS 24120, at *13 (D.S.C. 1997) (applying the same factors).

Here, the four efficiency factors weigh in favor of staying this case.  First, as stated above, both proceedings involve similar parties and issues.  Second, and most notably, the Alberta court will likely render a prompt disposition.  Indeed, the Alberta case has moved much further along than the Massachusetts action: the parties conducted cross-examinations (depositions) in connection with the jurisdictional proceeding in the Alberta court, and the Alberta court determined that it had jurisdiction over the case and that Alberta was the forum conveniens.  See Ex. A hereto ¶ 23; see also Columbia Ins., 1997 U.S. Dist. LEXIS 24120, at *17-18 (finding that judicial efficiency favored a Canadian forum where the Canadian proceeding was further advanced and it appeared that the Canadian court would render a decision prior to any resolution by the U.S. court).

Third, staying this action to allow the Alberta suit to proceed will avoid piecemeal litigation.  The Alberta action is more comprehensive than the Massachusetts action; the former contains Devon's request for damages in addition to declaratory relief whereas the latter seeks only declaratory relief.  In addition, the Alberta court found that the Alberta action raised an additional issue not raised in the Massachusetts case – namely, whether Devon has any obligation to continue to deliver gas under the Gas Purchase Agreement to a different group of buyers than those with whom it originally contracted to serve.  Ex. A hereto ¶ 22(b).  "The

Massachusetts [a]ction . . . therefore create[s] the unwanted effect of multiple proceedings." Id. More significantly, a declaration, order, or judgment by the Alberta court would be immediately enforceable against the parties in Alberta (where the gas is delivered). However, as the Alberta court discussed, a U.S. declaratory judgment is not enforceable per se in Canada. See id. ¶ 22(f). Therefore, a declaration by this Court would require additional proceedings to enforce – either here or in Alberta – "thereby creating multiple proceedings and risking inconsistent results." Id. ¶ 22(f). Thus, the Alberta case will resolve all matters in a single action and eliminate the risk of inconsistent interpretations of the same agreement.

Finally, litigating this case in Massachusetts would be inconvenient because the bulk of the pertinent evidence is located in Alberta (such as the documentary evidence regarding the regulatory approval of Devon's contractual relationship with PGC), Ex. 1 ¶ 11, and key expert witnesses who can explain the regulatory, public policy, and commercial contexts of the Gas Purchase Agreement, reside in Alberta.[4] Ex. 4 ¶ 10.

## III.  ADEQUACY OF RELIEF AVAILABLE IN THE ALTERNATIVE FORUM

A foreign forum will provide adequate relief so long as the plaintiff can raise its claims there. See Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs., Inc., 949 F. Supp. 1123, 1129 (S.D.N.Y. 1997) (finding that plaintiff can raise its claims in Hong Kong, a sister common law jurisdiction). In other words, this Court's task is to ensure that the plaintiff will have access to *adequate* relief, not to determine which forum will provide the plaintiff with the *greatest* relief. Id. Indeed, in determining the adequacy of the alternative forum in a forum non conveniens analysis, the Supreme Court stated that an alternative forum is "adequate" so long as it permits litigation of the subject matter in dispute. Piper Aircraft Co. v. Reyno, 454 U.S. 235,

257 (1981). Adequacy of the alternative forum does not depend on whether it "offers the full panoply or remedies available in the plaintiff's forum." Thomson Info. Servs. Inc. v. British Telecomm., 940 F. Supp. 20, 23 (D. Mass. 1996). Rather, the alternative forum is inadequate only if it provides no remedy at all. Id. Moreover, staying rather than dismissing a U.S. action, in any event, leaves open the opportunity for the plaintiff to pursue any relief not available in the alternative forum. Goldhammer, 59 F. Supp. 2d at 254.

Here, there is no question that PGC can raise its claims for declaratory relief in Alberta. Alberta, a sister common law jurisdiction, permits litigation of the subject matter in dispute and could provide the declaratory relief that PGC seeks if such claims prove to be meritorious. Declaration of Frank R. Foran (August 17, 2004) ¶ 11-14 (Ex. 7); see also Victoriatea.com, Inc. v. Cott Beverages Canada, 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003) (recognizing Canada as an adequate forum for adjudication of contract and tort claims); Brinco Mining Ltd. v. Fed. Ins. Co., 552 F. Supp. 1233, 1240 (D.D.C. 1982) (stating that Canada is a sister common law jurisdiction). In any event, a stay of the present action leaves open the opportunity for any relief that ultimately may not be available to PGC in Alberta.

## IV.    CONVENIENCE OF THE PARTIES, COUNSEL, AND WITNESSES

It is more convenient for the parties, counsel, and witnesses to litigate a dispute in a foreign jurisdiction if the primary witnesses and the requisite documentation can all be found there. Brinco Mining, 552 F. Supp. at 1242. Here, there can be little dispute that the Alberta proceeding is more convenient. First, the bulk of the pertinent evidence is located in Alberta. The Gas Purchase Agreement required Canadian provincial and federal governmental permits,

---

[4]    The convenience factors favoring the Alberta forum are explained in greater detail in Part II.B.1 of Defendant Devon Canada Corporation's Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens, filed simultaneously herewith.

issued in proceedings that PGC participated in through Alberta counsel.  Ex. 4 ¶¶ 8, 9; <u>see also</u> Ex. H to Ex. 3 (Articles 2.3, 2.4 & 2.5 of the Gas Purchase Agreement).  PGC used Bennett Jones Verchere, an Alberta law firm, and PGC was the actual applicant to the NEB.  Ex. 1 ¶ 11.  The documentary evidence regarding the approval of Devon's contractual relationship with PGC by the regulatory authorities is located in Alberta.  <u>Id.</u>  Second, key expert witnesses – who can explain the regulatory, public policy, and commercial contexts of the Gas Purchase Agreement – are located in Alberta.  Ex. 4 ¶ 11.  Because the Gas Purchase Agreement was made in Alberta and pertains to an ongoing Alberta transaction, it is clear that most of the relevant documents and witnesses are in Alberta.

In addition, the location of PGC's witnesses and documentary evidence related to this matter are not directed from or located in Massachusetts, making Massachusetts no more convenient to litigate this dispute.  PGC and its related entities are incorporated in Delaware, New York, and Colorado, and maintain principal offices in Syracuse, New York, and Bethesda, Maryland.  Affidavit of Donald Scholl ¶¶ 10-12 (Aug. 16, 2004) (Ex. 13); Affidavit of George A. Lehner ¶ 5 (Aug. 16, 2004) (Ex. 12).  The general partner of PGC, namely PE-Pittsfield , L.L.C., is operated and controlled out of Syracuse, New York.  Excerpts of Cross Examination of Donald Scholl at 15-16 (Aug. 16, 2004) (Ex. 11).  The limited partner of PGC, Altresco, Inc., is incorporated in Colorado and maintains a head office and controls the business from Bethesda, Maryland.  Ex. 10 at 16, 19.  Indeed, the Alberta court recognized that neither PGC nor its affiliated entities are "incorporated or formed under the laws of Massachusetts and none of them has its principal or head offices in that State."  Ex. A hereto ¶ 22(j).  Further, approval of payments for the gas purchase was authorized from Stamford, Connecticut.  Ex. 10 at 50.

Moreover, the rights and obligations under the Gas Purchase Agreement are subject to Alberta law.   As the Alberta court acknowledged, the parties' dispute

> requires an interpretation of the Gas Purchase Agreement which the parties agreed would be governed by and construed in accordance with the laws of Alberta (Article 20.3).   It also may involve an interpretation of the *Partnership Act* (Alberta) since Devon, has, in its pleadings, raised the question of the legal effect on the Gas Purchase and Sale Agreement of an alleged change in the PGC partnership.   It is accepted law both in Canada and the United States that Canadian law is best left to Canadian courts and vice versa in the United States.

Ex. A hereto ¶ 22(c).   It would be more convenient and appropriate for the Alberta court to consider and apply its own regulatory and partnership laws.   See Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 953 (1st Cir. 1991) (stating that application of Canadian law is "most easily and appropriately handled by a Canadian court"); see also Ex. A hereto ¶ 22(c) ("It is accepted law both in Canada and the United States that Canadian law is best left to Canadian courts and vice versa in the United States.").

Finally, it is not unfair to require a U.S. party to defend and prosecute a case abroad if the party engaged in "purposeful activity" there.   Goldhammer, 59 F. Supp. 2d at 254.   Here, PGC has been conducting business in Alberta as a gas purchaser since at least the commencement of delivery of gas under the Gas Purchase Agreement.   Ex. 4 ¶ 12.   Indeed, the Alberta court considered the following activities by PGC relevant to its determination that Alberta was the most appropriate forum: the 1995 trip to Calgary by PGC's agent to negotiate the Gas Purchase Agreement; the finalization of signatures of the agreement in Calgary; the 1995 application by PGC's Calgary lawyers to the NEB for a long-term export license in connection with the agreement; and the fact that PGC has been buying gas and taking delivery of it in Alberta for 9 years.   See Ex. A hereto ¶ 22(a).   Moreover, PGC retained counsel in Calgary in connection with the formation of the Gas Purchase Agreement, and the regulatory proceedings related thereto. Ex. 1 ¶ 11.   Finally, PGC (then known as Altresco L.P.) was a defendant and a counterclaim

plaintiff in a dispute before the Alberta court with Canadian gas producers, involving the alleged unilateral termination of a gas purchase agreement related to the same Pittsfield, Massachusetts cogeneration facility involved in the present case. See Vector Energy Inc. v. Canadian Pioneer Energy Inc., A.J. No. 440, File No. 9301-19690 (Alberta Court of Queen's Bench, Judicial District of Calgary) (May 7, 1996) (Ex. 9); Statement of Defence and Counterclaim of Altresco Pittsfield L.P., Altresco, Inc. and Pittsfield Partners (June 2, 1995) (Ex. 8) ¶ 2(b). PGC has engaged in purposeful activity in Alberta and is familiar with the Alberta legal system. Therefore, it would not be unfair to require PGC to litigate this case in Alberta.

## V.    POSSIBILITY OF PREJUDICE TO ANY OF THE PARTIES

A plaintiff who engages in business in a foreign forum "cannot expect to evade its court's jurisdiction." Dragon Capital, 949 F. Supp. 1123, 1128 (S.D.N.Y. 1997). Indeed, this Court stated that "notions of international comity are at an apex when parties inject themselves into the economy of another nation for profit . . . and then try to extricate themselves from its jurisdiction." Goldhammer, 59 F. Supp. 2d at 255-56. Thus, courts find that a plaintiff would not be prejudiced by resolution of its disputes in a foreign country where it engaged in business. Dragon Capital, 949 F. Supp. at 1128 (finding that resolution of a case in Hong Kong would not prejudice either party where they both engaged in business in that forum).

As stated above, PGC has been conducting business in Alberta as a gas purchaser and retained counsel in Calgary in connection with the Gas Purchase Agreement. Thus, prejudice would not befall PGC if the Alberta court resolved this dispute. On the other hand, should PGC prevail in the instant action, it faces the risk of an unenforceable declaratory judgment in Canada. Ex. A hereto ¶ 22(f) (Alberta court stating that a declaratory judgment from Massachusetts would be unenforceable in Canada); see Brinco Mining, 552 F. Supp. at 1242 (acknowledging

possible prejudice to a party due to an unenforceable judgment in Canada). Both parties likewise face the risk of inconsistent judgments if this action proceeds simultaneously with the Canadian case. Brinco Mining, 552 F. Supp. at 1242 (acknowledging possible prejudice to a party due to inconsistent judgments). In summary, staying this case would not result in prejudice to PGC whereas allowing the case to proceed risks prejudice to both parties.

Similarly, the Alberta court considered whether the United States procedural rules offer an advantage to PGC over the Alberta rules. The court found that there is no judicial advantage to the action proceeding in either jurisdiction, and that the Alberta rules will permit a fair hearing. Ex. A hereto ¶ 22(i). In any event, the Alberta court stated that if the Alberta rules prove "deficient or hamper a fair hearing," the court has the inherent authority to improvise so as to ensure a fair hearing. Id.

## VI.    TEMPORAL SEQUENCE OF THE FILING OF THE ACTIONS

Courts may give priority to the first-filed suit, but doing so is not mechanical and should not be done here. Nor should the fact that this action was filed *four days* before the Alberta action be determinative or entitled to great weight. First, "none of the cases regarding concurrent international jurisdiction give priority solely on the basis of the first-filing in a case where the suits were filed so closely together." Turner Entm't, 25 F.3d at 1522; accord Affinity Memory & Micro, Inc. v. K&Q Enters., Inc., 20 F. Supp. 2d 948, 955 (E.D. Va. 1998) ("[T]he first-filed rule in this case seems unwarranted where the second action was filed only two weeks after the first action and process in the second action was served long before that in the first action was served."). Likewise, the Alberta court firmly rejected application of the first-filed factor:

> Where the foreign lawsuit is started just a few days before the local one, and proceedings are in their infancy, the existence of a pending lawsuit is given little weight. Images of a foot race to the courthouse or adherence to slogans like "first come, first serve" or "the early bird gets the worm" are of little help in trying to do justice when deciding this issue.

Ex. A hereto ¶ 22(g). Here, PGC filed the Massachusetts case only four days earlier than Devon's Alberta action. The close proximity of the filings does not warrant a rigid application of the first-filed factor. In any event, Devon effected service first – PGC was served with a copy of the Canadian "Statement of Claim" on or about July 14, 2004, Ex. 3 ¶ 14, while Devon was not served with a copy of the Summons and Complaint until July 28, 2004, id. ¶ 4.

Second, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983) (analyzing priority in filing in deciding whether a federal court properly stayed an action pending resolution of a concurrent state court suit); cf. Columbia Ins., 1997 U.S. Dist. LEXIS 24120, at *17-18 (finding that judicial efficiency favored a Canadian forum where the Canadian proceeding was further advanced). Indeed, one court considered the first-filed factor in a forum non conveniens analysis and stated, "[B]ased upon the affidavits and depositions which have been conducted in the Canadian litigation and submitted here as part of the record, the status of the Canadian litigation may well be further advanced than in the instant case. . . . This factor weighs strongly in defendant's favor." C-Cure Chem. Co. v. Secure Adhesives Corp., 571 F. Supp. 808, 822 (W.D.N.Y. 1983). Likewise, the affidavits and cross-examinations (depositions) conducted in the Alberta case and submitted here as part of the record show that the Alberta litigation is further along than the instant case. Indeed, the Alberta court already conducted proceedings and determined that it had jurisdiction over this dispute. The Alberta case will likely continue to proceed faster than the Massachusetts action in light of the differences in docket congestion in the two courts. It appears

that the courts in Alberta are significantly less congested than the civil docket of this Court, and that a trial date in Alberta would be set more expeditiously.  Ex. 7 ¶¶ 15-21.

Third, convenience factors may override the first-filed factor.  See Wellons v. Numerica Savs. Bank, FSB, 749 F. Supp. 336, 337 (D. Mass. 1990) (disregarding first-filed factor because cause of action arose in the alternative forum and the laws of the alternative forum would "undoubtedly govern" the case).  Here, as described above, Alberta is a more convenient forum because the expert witnesses and the bulk of the documentary evidence are located there.  Moreover, the delivery of the gas occurs in Alberta, and the Gas Purchase Agreement calls for the application of Alberta law.

Fourth, courts will defer to a later-filed case if the alternative forum accords more complete relief to the parties.  See In re Int'l Admin. Servs., Inc., 211 B.R. 88, 96 n.5 (Bankr. M.D. Fla. 1997) (stating that the first-filed factor is not binding and will give way if the alternative forum will accord more complete relief).  Here, the Alberta action is more comprehensive than the Massachusetts action and, thus, will accord more complete relief to the parties.  Indeed, the Alberta court found that the Alberta action includes an additional issue not raised in the Massachusetts case, i.e., whether upon termination of the PSAs Devon must continue to deliver gas to a group of gas buyers different than the ones it originally contracted with.  Ex. A hereto ¶ 22(b).  In addition, the Alberta action contains Devon's request for damages in addition to declaratory relief, whereas the Massachusetts's action seeks only declaratory relief.  Compare Complaint with Ex. 6 (Statement of Claim).  The Alberta case also has other PGC-related parties that are not parties here.

Finally, a party's lack of good faith in filing suit justifies departure from the first-filed factor.  Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (stating

that bad faith is a circumstance in which the first-filed factor will not be applied).  For example, courts allow later-filed cases to proceed where the facts suggest that the plaintiffs in the first-filed action filed suit upon receipt of indications that a suit by the defendant may be imminent.  See Hanson PLC v. Metro-Goldwyn-Mayer, Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996) ("[W]here the first-filed case is a declaratory judgment action precipitated by a demand letter and filed in anticipation of the later action, the second-filed action will be permitted to go forward . . . ."); Lewis v. Nat'l Football League, 813 F. Supp. 1 (D.D.C. 1992) (stating that a "preemptive strike" in the form of anticipatory declaratory judgment action "should be disregarded in selecting the proper forum if equitable concerns so merit").

The record here suggests that PGC did not proceed in good faith, and that the instant case is a preemptive strike to deprive Devon of its choice of forum.  PGC entered into the Termination Agreements on June 2, 2004, but did not disclose that fact to Devon until June 7, 2004, by letter to Devon dated five days *after* execution of those agreements.  Ex. 1 ¶ 12.  Devon requested copies of the Termination Agreements, but did not receive them from PGC until July 12, 2004, *after* PGC filed the July 8 action in Massachusetts.  Moreover, PGC did not file an action until two days *after* it received Devon's July 6 letter, in which Devon reiterated its view that the Termination Agreements would constitute the repudiation of the Gas Purchase Agreement.  Under these circumstances, PGC cannot claim any priority for the instant case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Devon Canada Corporation respectfully requests that this Court grant a stay of the proceedings pending the ultimate resolution of the parallel action in Calgary, Alberta, Canada.

Dated: September 17, 2004.                Respectfully submitted,

                                          /s/ Anita B. Bapooji
                                          William L. Prickett (BBO #555341)
                                          Anita B. Bapooji (BBO #644657)
                                          Testa, Hurwitz & Thibeault, LLP
                                          125 High Street
                                          Boston, MA 02110
                                          Telephone: 617-248-7000
                                          Facsimile: 617-248-7100

                                          Counsel for Defendant
                                          Devon Canada Corporation

                                          John M. Simpson
                                          Michelle C. Pardo
                                          Fulbright & Jaworski, LLP
                                          801 Pennsylvania Avenue, N.W.
                                          Washington, D.C. 20004
                                          Telephone: 202-662-0200
                                          Facsimile: 202-662-4643

                                          Of Counsel
                                          Devon Canada Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendant Devon Canada

Corporation's Memorandum in Support of Its Motion to Stay in Deference to a Pending Foreign

Proceeding was served, via hand delivery on the 17th day of September, 2004 on the following:

> Robert J. Muldoon
> David A. Brown
> Sherin and Lodgen LLP
> 101 Federal Street
> Boston, MA 021100

> /s/ Anita B. Bapooji
> Anita B. Bapooji