# EXHIBIT A

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 2/14
SEP.13.2004  5:25PM    CARSCALLEN LOCKWOOD                              NO.3660   P. 2/14

# Court of Queen's Bench of Alberta

Citation: Devon Canada Corporation v. Pe-Pittsfield, LLC, 2004 ABQB 666

Date: 20040913
Docket: 0401 10854
Registry: Calgary

Between:

Devon Canada Corporation

Plaintiff

- and -

Pe-Pittsfield, LLC and PurEnergy I, LLC, Both Carrying on Business Under the Firm Name and Style of Pittsfield Generating Company, LP and the Said Pittsfield Generating Company, LP, Altresco, Inc. (Sometimes Known As altresco Incorporated) Carrying on Business Under the Firm Name and Style of Pittsfield Generating Company, LP (Formerly Known As Altresco Pittsfield, LP) and the Said Pittsfield Generating Company, LP (Formerly Known As Altresco Pittsfield, LP)

Defendant

CLERK OF THE COURT
SEP 1 3 2004
CALGARY, ALBERTA

Reasons for Judgment
of the
Honourable Mr. Justice Bryan E. Mahoney

**THE NATURE OF THE APPLICATION**

[1]   The Defendants, Pittsfield Generating Company, LP ("PGC"), a limited partnership, and Altresco, Inc. ("Altresco") apply to set aside an Order for service *ex juris* obtained in this Court on July 12, 2004 by the Plaintiff, Devon Canada Corporation ("Devon"). The grounds the Applicants rely on are: (i) there is an identical action commenced in the State of Massachusetts; (ii) there is no real and substantial connection with Alberta; (iii) Massachusetts is the most convenient forum; and (iv) the Order Devon obtained does not comply with the law and was obtained *ex parte* without full disclosure to the Court.

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 3/14
SEP. 13. 2004  5:25PM    CARSCALLEN LOCKWOOD                           NO. 3660   P. 3/14

Page: 2

## FACTS

[2]     Devon is an Alberta corporation supplying natural gas to the Defendant buyer, PGC, pursuant to a Gas Purchase and Sale Agreement dated August 23, 1995. Devon and PGC are successors to the original contracting parties, Home Oil Company Limited and Altresco Pittsfield, L.P., respectively. Altresco is a limited partner of PGC, owning a 99% interest.

[3]     PGC operates an electrical generation facility located in Pittsfield, Massachusetts. This facility uses natural gas from Devon as its sole source of fuel to generate steam and electricity which it sells to a Massachusetts power purchaser now known as "Nstar" (previously, ComElec & Cambridge) pursuant to a Power Sale Agreement. The gas is transmitted by pipeline from Alberta to Massachusetts with the "delivery point" at a location near Empress, Alberta.

[4]     Three agreements are relevant to the business relationship between PGC and Devon. First, there is the Gas Purchase and Sale Agreement between Devon and PGC which is a long term contract, effective from 1995 to 2011. Second, Devon and PGC are also successor parties to the contemporaneous Renegotiation/Arbitration Agency Agreement ("Agency Agreement") dated August 23, 1995 and running for the same term. The purpose of the Agency Agreement, according to its preamble, is to clarify the negotiating process between the parties when calculating the gas price under section 8 of the Gas Purchase and Sale Agreement. Third, it is clear from these two agreements that the gas price is tied into a third contract, being the Power Sale Agreement between PGC and Nstar.

[5]     It appears that things progressed in a businesslike manner under these three agreements for nine years until two events occurred. First, in January 2004, the third party power purchaser, Nstar, moved to terminate its Power Sale Agreement with the consent of PGC. Second, PGC then sought to sell the Devon gas to other third parties since it would no longer be needed to generate the power once sold to Nstar. Fuelling, as it were, this growing dispute is the fact that the price of gas has risen dramatically.

[6]     Devon is hotly opposed to PGC's intention to resell the Devon gas to new third parties once the Power Sale Agreement between Nstar and PGC is terminated. Devon takes the position that the termination of the Power Sale Agreement between Nstar and PGC gives Devon the right to repudiate the Gas Purchase and Sale Agreement and, in turn, the Agency Agreement. The litigation drums are beating. Both Devon and PGC have started lawsuits, PGC in Massachusetts (the "Massachusetts Action") and Devon in Alberta ("the Alberta Action").

[7]     In the Massachusetts Action, filed on July 8, 2004, PGC seeks declaratory relief against Devon. For its part, Devon commenced the Alberta Action on July 12, 2004 for similar but not identical declaratory relief. On the same day that it filed the Alberta Action, Devon, *ex parte* in private chambers, obtained an Order for service *ex juris* permitting Devon to serve PGC and the rest of the Defendants outside Alberta. The Order for service *ex juris* was granted under Rules 30 and 31 of the *Alberta Rules of Court* based on the Affidavit evidence of Henry Assen, Vice-President, Marketing of Devon sworn on July 12, 2004.

Page: 3

[8]     On July 28, 2004, PGC, for all the Defendants except Altresco, filed a Notice of Motion seeking to overturn the Order for service *ex juris* or to stay the Alberta Action. Shortly thereafter, Altresco filed a similar motion. All Defendants want the matter heard in Massachusetts. Devon, of course, wants it heard in Alberta.

**ISSUES**

[9]     The issue is whether this Court has jurisdiction over the Alberta Action under Rule 30, and, if so, whether Alberta is the most convenient and appropriate place *(forum conveniens)* to adjudicate this case. There is also an issue as to whether Devon improperly obtained the Order for service *ex juris* by virtue of an alleged failure to disclose all relevant facts to the Justice who granted the Order.

**POSITION OF THE PARTIES**

[10]    Devon submits that it has met the requirements of Rule 30 and that Alberta is the most suitable forum to decide this matter. In support of this position, it argues the following:

- a)    The issues in the Massachusetts Action are substantially the same as the issues in the Alberta Action. However, the converse is not true because the Alberta Action involves issues (as well as parties) that are not before the Court in the Massachusetts Action.

- b)    Devon has met the requirements of Rule 30.

- c)    Devon, an Alberta natural gas producer, seeks a declaration of rights in relation to the sale of Alberta natural gas at a delivery point in Alberta under the Gas Purchase and Sale Agreement which was made in Alberta and which contains a clause (Article 20.3) expressly stating that the Agreement is governed by and construed in accordance with the laws of Alberta.

- d)    Devon is seeking a declaration of rights in relation to an issue involving partnership law, which will require consideration of the *Partnership Act*, R.S.A. 2000, c. P-3.

- e)    The issues to be decided in the Alberta Action involve the application and interpretation not only of Alberta law but also of Alberta and Canadian energy regulatory and public policy governing the export of natural gas.

- f)    If this Court finds that Alberta is the *forum conveniens*, a multiplicity of proceedings likely will be avoided since the Massachusetts Action does not address all the outstanding issues to be litigated between the parties and since PGC would not be able to enforce any declaratory remedy it obtained in the Massachusetts Action against Devon in Alberta.

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 5/14
SEP. 13. 2004  5:26PM    CARSCALLEN LOCKWOOD                                    NO. 3660    P. 5/14

Page: 4

[11]   PGC submits that this Court does not have jurisdiction to hear the Alberta Action, under Rule 30 or otherwise. Alternatively, PGC argues that Massachusetts, not Alberta, is the *forum conveniens*. It asks this Court to decline jurisdiction and to stay the Alberta Action on the basis of the following arguments:

a) There is no real and substantial connection between the dispute and Alberta, but there is with Massachusetts.

b) The Agency Agreement, not the Gas Purchase and Sale Agreement, governs this dispute and the parties agreed in paragraph 1.02 (g) of the Agency Agreement that the governing law was to be that of Massachusetts.

c) The location of the parties, related entities, witnesses and documents favours Massachusetts.

d) PGC and the other Defendants have a legitimate juridical advantage in Massachusetts.

e) Devon has created a multiplicity of proceedings.

f) Devon should be held accountable for material non-disclosure of evidence on its *ex parte* application.

g) Devon is forum shopping.

**LAW**

[12]   Given Alberta's global trading economy, it is not surprising that our courts routinely hear *ex parte* applications for orders for service *ex juris*. Unlike this case, most of the orders granted go uncontested, even after service on the defendants. Since this one is contested, a short review of Alberta law may be helpful.

[13]   It is clear from the jurisprudence that, for an order for service *ex juris* to be granted, there must be strict compliance with the requirements of Rules 30 and 31 of the *Alberta Rules of Court*, a copy of which is attached as Schedule "A" to these Reasons: *Klondike Helicopters v. Fairchild Republic Co.* (1979), 16 A.R. 613 (T.D.). Rule 30 provides, in certain circumstances, for the service outside of Alberta of any document by which any proceeding is commenced, or any notice of such document. Thus, it must first be established that the action falls within one of the categories set forth in Rule 30.

[14]   Further, Rule 31, which sets out the evidence that must be provided to the Court in support of the application for service *ex juris*, must also be complied with. The Courts in Alberta have interpreted this as requiring the applicant for such an order to show that it has a "good arguable case". While the applicant is not required to prove its case as it would at trial, it must provide the Court with sufficient evidence to show that the case is a proper one to be heard by

Case 3:04-cv-30128-MAP   Document 11-2   Filed 09/17/2004   Page 6 of 14

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 6/14
SEP. 13. 2004  5:26PM    CARSCALLEN LOCKWOOD                                NO. 3660   P. 6/14

Page: 5

the Court. This requirement is satisfied "... where the material filed supports the causes of action pleaded, where all the Defendants are or may be involved in any of the cause of actions and where the facts alleged establish that the Defendants exhibit a definite connection to the case": *WIC Premium Television Ltd. v. General Instrument Corp.* (1999), 73 Alta. L.R. (3d) 365 at 375 (Q.B.), additional reasons at (1999) 243 A.R. 329, 1999 ABQB 460, affirmed (2000) 266 A.R. 142, 2000 ABCA 233. See also *Nova, An Alberta Corp. v. Grove Estate and Guelph Engineering Co. et al.*, (1982) 39 A.R. 409 (C.A.) and *Suncor Inc. v. Canada Wire & Cable Ltd.* (1991), 114 A.R. 341 (Q.B.). Neither PGC or Altresco have argued that Devon lacks an arguable case.

[15]   Rule 30 applies where the Court does not have jurisdiction over a foreign defendant as of right. However, even if the technical requirements of the Rule are satisfied, the Court must go on to consider the question of *forum conveniens*: *Daniels v. Kwok*, [1998] 231 A.R. 95, 1998 ABQB 833 at paragraphs 8-10. It must be remembered that an order for service *ex juris* is discretionary and the doctrine of *forum conveniens* is a "dominant factor in determining whether the discretion to make an order for service *ex juris* should be exercised". The court will consider which forum is more suitable for the ends of justice: *Talbot v. Pan Ocean Oil Corp.* (1977) 5 A.R. 361 at 374 (C.A.), adopting *Antares Shipping Corp v. "Capricorn" (The)* [1977] 2 S.C.R. 422.

[16]   The provincial rules for service *ex juris* cannot be used to assert jurisdiction over a foreign defendant where there is no real and substantial connection with the transaction or the parties. In *Morguard Investments Ltd. v. De Savoye* [1990] 3 S.C.R. 1077 at 1108, La Forest, J. for the Supreme Court of Canada stated that:

> It seems to me that the approach of permitting suit where there is a real and substantial connection with the action provides a reasonable balance between the rights of the parties. It affords some protection against being pursued in jurisdictions having little or no connection with the transaction or the parties.

[17]   Further, even if the court is satisfied on the *forum conveniens* test that there is a real and substantial connection with the local jurisdiction, the Supreme Court of Canada has stated that a court may still decline jurisdiction if there is a more appropriate forum elsewhere: *Tolofson v. Jensen* [1994] 3 S.C.R. 1022 at 1049.

[18]   One of the leading cases in Alberta with respect to *forum conveniens* is the judgment of the Court of Appeal in *United Oilseed Products Ltd. v. Royal Bank of Canada* (1988), 87 A.R. 337, wherein Stevenson J.A. said at 344:

> I would not accord any special status to the plaintiff's choice of forum, unless that forum has jurisdiction as of right. Even where that jurisdiction exists as of right we should recognize that there may be a superior forum, having regard to the interests of both parties. Where that superior forum can readily be identified litigation should be pursued there.

Case 3:04-cv-30128-MAP   Document 11-2   Filed 09/17/2004   Page 7 of 14

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067 Printed 09/13/2004 19:36 * Pg 7/14
SEP. 13. 2004  5:27PM    CARSCALLEN LOCKWOOD                    NO. 3660    P. 7/14

Page: 6

I conclude, then,

1. The test to be applied in all cases where there is an issue of determining the appropriate forum, is that forum conveniens, the forum which is more suitable for the ends of justice.
2. Where a forum possesses jurisdiction over a defendant, as of right, the defendant must show that there is another available forum which is clearly or distinctly more suitable.
3. Where the jurisdiction does not exist as of right, the same burden rests on the party seeking to establish jurisdiction (typically service *ex juris*).
4. While the overall burden is as stated, the party alleging an advantage or disadvantage must establish it.

[19] I also have the benefit of several precedent cases that have set out lists of factors to consider when assessing the appropriate forum. Recently in *Nova Chemicals Corp v. Ace Ina Insurance*, [2004] I.L.R. I-4315, 2004 ABQB 318, this Court adopted the list of factors set forth by the Ontario Court of Appeal in *Muscutt v. Courcelles* (2002), 60 O.R. (3d) 20 at 34. The Quebec Court of Appeal in *Lexus Maritime v. Oppenheim Forfait GmBH* [1998] Q.J. No. 2059 also provided a useful list. In determining which of two competing forums is more appropriate the factors to be considered include, but are not limited to, the following:

a) the location of the majority of the parties, witnesses and experts;

b) the location of material evidence;

c) contractual provisions that specify application law or accord jurisdiction;

d) the avoidance of multiplicity of proceedings;

e) the applicable law and its weight in comparison to the factual questions to be decided;

f) geographical factors suggesting the natural forum;

g) whether declining jurisdiction would deprive a party of a legitimate juridical advantage available in the domestic court;

h) the place where the contract was negotiated, executed and performed.

[20] If the Court determinates that Alberta is not the *forum conveniens*, the action should be stayed rather than struck out unless it is vexatious: *Yasuda Fire & Marine Insurance Co. v. "Nosira Lin" (The)* (1984), 52 N.R. 303 at 304 (Fed.C.A.). This approach was approved by this Court in *Ferdais v. Vermeer Manufacturing Co.* (1995), 167 A.R. 380 (Mstr.).

Case 3:04-cv-30128-MAP   Document 11-2   Filed 09/17/2004   Page 8 of 14

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 8/14
SEP. 13. 2004  5:27PM    CARSCALLEN LOCKWOOD                           NO. 3660   P. 8/14

Page: 7

## DECISION

[21]  I realize that a particular forum may give one party a substantive law or procedural or juridical advantage resulting in a disadvantage to the opposing party. As the House of Lords stated in *Spiliada Maritime Corporation v. Cansulex Ltd.*, [1986] 3 All E.R. 843 at 846:

> Any dispute over the appropriate forum is complicated by the fact that each party is seeking an advantage and maybe influenced by considerations which are not apparent to the judge or considerations which are not relevant for his purpose.

Thus, careful application of the law as set out above is called for.

[22]  In making my decision, I first questioned whether Devon fits within the parameters of Rules 30 and 31. I then considered the doctrine of *forum conveniens* having regard to the real and substantive connection test. Finally, I examined the issue of whether Massachusetts is the more appropriate forum. Having thus analysed the matter, I have concluded that Devon has complied with Rules 30 and 31 and that Alberta is the most convenient forum to meet the ends of justice when adjudicating this dispute. Consequently, for the following reasons, the Defendants' application fails:

a) The supporting material before this Court, including the 1995 attendance in Calgary by Mr. Duncan of PGC to negotiate the Gas Purchase and Sale Agreement; the "in escrow" conditions placed on PGC's Calgary lawyers to finalize signatures of that Agreement in Calgary; the 1995 application by PGC Calgary lawyers to the Canadian National Energy Board for a long-term export license; and the fact that PGC has been buying gas and taking over delivery of it in Alberta for 9 years; indicates on balance that the Gas Purchase and Sale Agreement was made in Calgary. Therefore, the condition in Rule 30(f)(i), namely that the action is one to enforce a contract made within Alberta, is met. I think it unnecessary to determine where the Agency Agreement was made because it is inextricably linked to the Gas Purchase and Sale Agreement. It would be impossible to adjudicate the allegations in the Devon Statement of Claim or interpret the Agency Agreement without reference to the Gas Purchase and Sale Agreement.

b) Devon, in its Statement of Claim in the Alberta Action, raises two issues, namely:
(i) whether the termination of the Power Sale Agreement by PGC amounts to a repudiation of the Gas Purchase and Sale Agreement with Devon;
(ii) whether Devon has any obligation to continue to deliver gas under the Gas Purchase and Sale Agreement to a different group of gas buyers than those that it contracted to serve under that agreement.

Page: 8

The Massachusetts Action deals with item "i" above but not with item "ii," and therefore create the unwanted effect of multiple proceedings.

c) A determination of the claims made by Devon in its pleadings with respect to repudiation and change of partnership requires an interpretation of the Gas Purchase and Sale Agreement which the parties agreed would be governed by and construed in accordance with the laws of Alberta (Article 20.3). It also may involve an interpretation of the *Partnership Act* (Alberta) since Devon has, in its pleadings, raised the question of the legal effect on the Gas Purchase and Sale Agreement of an alleged change in the PGC partnership. It is accepted law both in Canada and the United States that Canadian law is best left to Canadian courts and vice versa in the United States: *Shell Canada Ltd. v. CIBC Melon Trust Co.*, (2003), 24 Alta. L.R. (4th) 259, 2003 ABQB 1058 at paras. 21-22.

d) I find that the Gas Purchase and Sale Agreement was structured to comply with the public and regulatory policies of Canada and Alberta. The federal and provincial regulatory boards gave approval for the delivery of exported gas based on a public hearing into the export of gas under the terms of the Gas Purchase and Sale Agreement. That agreement makes it clear that the gas that was being exported was streamed specifically to PGC's power generation facility to serve that facility and the recipients under the Power Sale Agreement. Now that PGC has agreed to terminate the Power Sale Agreement, any regulatory issues that arise will have to be dealt with in Alberta.

e) I accept that the outcome of the Alberta Action will determine whether Devon will continue to be obligated to supply gas to the Defendants or to a different group of buyers once the Power Sale Agreement has been terminated. Devon controls the flow of gas in Alberta. According to Article 1.1 (m) of the Gas Purchase and Sale Agreement, the "delivery point" of the gas from Devon to PGC is at a location near Empress, Alberta. This Court has exclusive jurisdiction over the actions of the parties in Alberta and it is this Court that can require Devon to continue to deliver the gas to its gas buyers or permit it to "turn the tap off" as counsel for Devon put it.

f) For a Massachusetts judgment or court order to be enforceable by Canadian courts, it must be for a definite sum of money: J.-G. Castel and J. Walker, *Canadian Conflict of Laws*, 5th ed. (Markham, Ont.: Butterworths, 2004) at 14-20. A declaratory judgment from Massachusetts court would be unenforceable in Canada. The parties would be required to re-litigate such an order in Alberta to obtain an enforceable judgment, thereby creating multiple proceedings and risking inconsistent results.

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 10/14
SEP. 13. 2004 5:28PM    CARSCALLEN LOCKWOOD                    NO. 3660    P. 10/14

Page: 9

g)  The fact that the Massachusetts Action was commenced four days before the Alberta Action is not significant to this application. As stated in *Shell v. CIBC, supra*, at paragraph 32, the weight to be given to earlier proceedings commenced elsewhere depends on the circumstances surrounding them. Where the foreign lawsuit is started just a few days before the local one, and proceedings are in their infancy, the existence of a pending lawsuit is given little weight. Images of a foot race to the courthouse or adherence to slogans like "first come, first serve" or "the early bird gets the worm" are of little help in trying to do justice when deciding this issue.

h)  PGC argued that Devon failed to disclose material evidence in its *ex parte* application for the Order for service *ex juris*. The application was made in private chambers with no recording or transcript kept. PGC says that Devon deliberately gave "unbalanced evidence" in the July 12, 2004 Affidavit of Henry Assen and that the Justice granting the Order was unaware of the Massachusetts Action and unaware that Article 1.02 (g) of the Agency Agreement defined Massachusetts as the governing jurisdiction. Devon says that Mr. Assen's Affidavit attaches the Agency Agreement and has an arrow pointing to Article 1.02 (g). Counsel for Devon says that he appeared on the *ex parte* application and advised the Justice that PGC had commenced the Massachusetts Action.

It is troublesome that Devon did not bring its application in regular chambers in a public courtroom where recording equipment is operating. I acknowledge that sometimes matters are sufficiently urgent that the time taken to provide notice or to wait for regular chambers will place the party's remedy in jeopardy or permit an opposing party to defeat the remedy altogether. In such exceptional circumstances, a party and counsel making representations to the Court must disclose all facts at the outset to enable the Court to rule on the propriety of the application proceeding in the absence of the other side. The fundamental even-handedness of the adversary system is undermined and unjust results may occur if such material and submissions lack candour.

However, in rejecting PGC's argument on this point, I note that the Agency Agreement was before the Justice hearing the application for service *ex juris*. As to what counsel said to the Justice, I have no evidence either way and, in the absence of evidence, I am not prepared to conclude that a senior member of the Alberta bar and an officer of the Court did not respect his responsibilities when making this application.

i)  With respect to the question of juridical advantage, I have considered the materials and argument of PGC that the United States procedural rules offer an advantage to PGC over the Alberta rules. I disagree that there is any significant juridical advantage to the action proceeding in either jurisdiction. Procedure is the servant not the master of substantive law:

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 11/14
SEP. 13. 2004  5:28PM    CARSCALLEN LOCKWOOD                              NO. 3660   P. 11/14

Page: 10

*Services de Santé v. Quebec (City)* [1992] 1 S.C.R. 426. Where rules are deficient or hamper a fair hearing, our courts have inherent power to make practice directions and wide powers under the *Court of Queen's Bench Act*, R.S.A. 2000, c. C-31 and the *Judicature Act*, R.S.A. 2000, c. J-2 to improvise where there are no rules governing the process. The evidence before me is not convincing that given the nature of the issues at stake in Alberta Action that our *Rules of Court* will not prove adequate to permit a fair hearing.

j) The Defendants suggest that Alberta is not the *forum conveniens* because most of the witnesses and evidence are not in Alberta. The witnesses seem to be located in Alberta, in Massachusetts and in several other states in the eastern United States. The same is true of the documents. Most of the entities are incorporated (or formed, in the case of the limited partnership, PGC) and located in various states within the United States. None of the Defendants is incorporated or registered to carry on business in Alberta. None of the Defendants is incorporated or formed under the laws of Massachusetts and none of them has its principal or head offices in that State. In any case, the Alberta Action involves a declaration of the rights arising from the interpretation of a contract or contracts. It is trite to point out that the parol evidence rule applies to the interpretation of a contract. Normally, what the witnesses have to say about a contract does not assist the court interpreting it. There may be a need to have witnesses put matters into a context of the commercial and regulatory past, present and future. However, the material before me indicates that those witnesses will be as much from Alberta as from outside of Alberta. Therefore, I reject the Defendants' argument on this point.

## CONCLUSION

[23]   This is not a case where the Defendants ought to be protected against being pursued by the Plaintiff in a jurisdiction having little or no connection with the transaction or the parties. There is a nexus or a real and substantial connection between the subject matter of the Alberta Action and the province of Alberta. Devon, an Alberta corporation, seeks an interpretation and a declaration of its rights under the main contract, the Gas Purchase and Sale Agreement, which contract was made and largely performed in Alberta. The parties agreed that the governing law of that contract would be that of Alberta. Further, considerations of Canada and Alberta energy export regulations and policy as well as Alberta partnership law make this jurisdiction the one with the appropriate authority to decide all matters in one proceeding.

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 12/14
SEP. 13. 2004  5:28PM    CARSCALLEN LOCKWOOD                         NO. 3660   P. 12/14

Page: 11

The application is denied and costs can be spoken to within 30 days.

Heard on the 1st and 2nd days of September, 2004.
**Dated** at the City of Calgary, Alberta this 13th day of September, 2004.

_Bryan E. Mahoney_
Bryan E. Mahoney
J.C.Q.B.A.

**Appearances:**

Stanley Carscallen, Q.C. / Catherine A. Crang of Carscallen Lockwood LLP
    for the Plaintiff

Bryan C. Duguid of Blake Cassels & Graydon LLP
    for the Defendant

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 13/14
SEP. 13. 2004  5:29PM   CARSCALLEN LOCKWOOD                              NO. 3660   P. 13/14

Page: 12

## PART 4

## SERVICE OUTSIDE OF ALBERTA

**By order**

30. Service outside of Alberta of any document by which any proceeding is commenced, or of notice thereof, may be allowed by the Court whenever:
   (a) the whole subject matter is land situated within Alberta (with or without rents or profits) or the perpetuation of testimony relating to lands so situated;
   (b) any act, deed, will, contract, obligation or liability affecting land situated within Alberta is sought to be construed, rectified, set aside or enforced;
   (c) relief is sought against a person domiciled or ordinarily resident within Alberta;
   (d) the proceeding is for the administration of the estate of a person who died domiciled within Alberta, or for any relief or remedy which might be obtained in any such proceeding;
   (e) the proceeding is for the execution as to property situated within Alberta of the trusts of a written instrument that ought to be executed according to Alberta law, and of which the person to be served is a trustee, or the proceeding is for any relief or remedy which might be obtained in any such proceeding;
   (f) the proceeding is to enforce, rescind, resolve, annul or otherwise affect a contract or to recover damages or obtain any other relief in respect of the breach of a contract, being (in any case) a contract
      (i) made within Alberta, or
      (ii) made by or through an agent trading or residing within Alberta on behalf of a principal trading or residing out of Alberta, or
      (iii) which is by its terms, or by implication governed by Alberta law, or
      (iv) in which the parties thereto agree that the courts of Alberta shall have jurisdiction to entertain any action in respect of the contract;
   (g) the action is in respect of a breach committed within Alberta of a contract made within or out of Alberta, and irrespective of the fact, if that is the case, that the breach was preceded or accompanied by a breach committed out of Alberta that rendered impossible the performance of so much of the contract as ought to have been performed within Alberta;
   (h) the action is founded on a tort committed within Alberta;
   (i) in the action an injunction is sought ordering a defendant to do or refrain from doing anything within Alberta (whether or not damages are also claimed in respect of a failure to do or the doing of that thing);
   (j) a person out of Alberta is a necessary or proper party to an action properly brought against another person served within Alberta;
   (k) the action is by a mortgagee of property (other than land) situated within Alberta and seeks the sale of the property, the foreclosure of the mortgage or delivery by the mortgagor of possession of the property (but not an order for the payment of any monies due under the mortgage);

Received 09/13/2004 19:29 in 04:56 on line [3] for MP09067Printed09/13/2004 19:36 * Pg 14/14
SEP. 13. 2004  5:29PM    CARSCALLEN LOCKWOOD                          NO. 3660   P. 14/14

Page: 13

(l) the action is brought by a mortgagor of property (other than land) situated within Alberta and seeks redemption of the mortgage, reconveyance of the property or delivery by the mortgagee of possession of the property (but not a personal judgment);
(m) the proceeding is founded upon a judgment of any court of Alberta;
(n) the proceeding is a matrimonial cause or an action by a person against his or her adult interdependent partner or former adult interdependent partner;
(o) the proceeding is an action brought under the Carriage by Air Act (Canada);
(p) it appears that the person initiating the proceeding has a good cause of action upon a judgment or for alimony or maintenance, and the person against whom the proceeding is initiated has assets in Alberta of the value of at least $500 which may be rendered liable for the satisfaction of any judgment or order pronounced in the proceeding; but in that case, if no defence is filed, no judgment shall be entered except by leave of the Court and upon such conditions as it considers proper;
(q) the proceeding relates to the breach of an equitable duty within Alberta.

AR 390/68 s30;306/71;52/2001;200/2003

**Affidavit**

31. Every application for leave to serve any document, or to give notice thereof, out of Alberta shall be supported by affidavit or other evidence,

(a) stating that in the belief of the deponent the applicant has a reasonable cause of action,
(b) showing in what place or country the person to be served is, or probably may be found, and
(c) giving the grounds upon which the application is made;

and every order allowing such service shall limit the time within which the proceedings may be answered or opposed, and in limiting the time regard shall be had to the place where service is to be effected.

AR 390/68 s31;306/71