UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PITTSFIELD GENERATING COMPANY, L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )     CIVIL ACTION )     NO.  04-30128-MAP |
| DEVON CANADA CORPORATION, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF PITTSFIELD GENERATING COMPANY, L.P.'S OPPOSITION TO DEFENDANT DEVON CANADA CORPORATION'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FORUM NON CONVENIENS AND MOTION TO STAY IN DEFERENCE TO A FOREIGN PROCEEDING**

In this action, Pittsfield Generating Company, L.P. ("PGC") seeks a declaration of its

rights and obligations under a Natural Gas Purchase and Sale Agreement dated August 23, 1995

("Gas Purchase Agreement") with Home Oil Company, Ltd., predecessor to Devon Canada

Corporation ("Devon").  PGC purchases, and Devon sells and delivers to PGC, up to nine

million cubic feet of natural gas daily.  PGC historically has used the natural gas supplied by

Devon to fuel a 160 MW gas-fired, combined-cycle cogeneration facility in Pittsfield,

Massachusetts (the "Facility").  The Facility produces electricity and steam, which PGC sells to

Massachusetts entities, including Cambridge Electric Light Company ("Cambridge Electric")

and Commonwealth Electric Company ("Commonwealth Electric") under certain Power Sale

Agreements entered into in 1992.

PGC has decided to re-sell the gas it buys from Devon, as opposed to using the gas to

fuel the Facility.  PGC has the right to do so under Article 4.8 of the Gas Purchase Agreement,

which states, "Nothing in this Agreement shall restrict Buyer from reselling any Gas purchased hereunder or from using any such Gas for purposes other than consumption by the Facility." Accordingly, on June 2, 2004, PGC agreed to terminate the Power Sale Agreements with Cambridge Electric and Commonwealth Electric, subject to state and federal regulatory notification and approval and certain other requirements.

Devon has refused to recognize PGC's contractual right to re-sell the gas. Devon argues that PGC must continue to use the gas to fuel the Facility in Pittsfield, Massachusetts, and to maintain in effect the Power Sale Agreements under which PGC sells electricity to Cambridge Electric and Commonwealth Electric. Because PGC has agreed to terminate its Power Sale Agreements, Devon has stated that it will cease to supply gas to PGC.

PGC seeks to continue to buy gas from Devon under the Gas Purchase Agreement in the contracted-for quantities and at the contracted-for price. Devon refuses to supply gas under the contract. Devon seeks to avoid its gas supply obligations to PGC in search of higher profits elsewhere. Devon has commenced parallel litigation involving the same claims in Calgary, Alberta (the "Alberta Action").

Summary of Argument

Devon has moved to dismiss or stay this action on two grounds. First, Devon argues that this Court lacks personal jurisdiction over Devon. This argument is meritless. Devon transacted business in the Commonwealth under the Gas Purchase Agreement. Devon engaged PGC to act as its agent in price renegotiation and arbitration proceedings in Massachusetts under the parties' Agency Agreement. Devon itself argues that the gas must be used to fuel the Facility in Pittsfield, Massachusetts, and that the Gas Purchase Agreement is inextricably tied to the

Massachusetts Power Sale Agreements.  Devon's substantial contacts with Massachusetts subject it to personal jurisdiction in this Court.

Second, Devon argues that the Court should dismiss or stay this action in favor of the later-filed Alberta Action on forum non conveniens grounds.  This argument is equally meritless. PGC is the injured party and true plaintiff in the parties' dispute.  PGC commenced its action first in Massachusetts.  This Court is a clearly appropriate forum.  Devon presents no compelling reason why this Court should defer in the exercise of its jurisdiction to the later-filed Alberta Action.  Principles of forum non conveniens provide no basis for this Court to deprive PGC of its right to be heard in its selected forum.  That is particularly so because Devon commenced the later-filed Alberta Action in a transparent forum-shopping attempt to achieve a perceived litigation advantage.

<u>Facts</u>

I.    <u>The Parties</u>

PGC is a Delaware limited partnership with a principal place of business at 235 Merrill Road, Pittsfield, Massachusetts.  Complaint, ¶ 1.  PGC operates the Facility in Pittsfield, Massachusetts.  The Facility generates steam and electricity, which it sells to third parties in Massachusetts.  <u>Id.</u>, ¶ 2.

Devon is a Canadian corporation with a principal place of business in Calgary, Alberta. Devon is in the business of selling natural gas to entities like PGC.  Devon is a successor in interest to Home Oil Company, Ltd.  <u>Id.</u>, ¶ 3.  Devon is a wholly-owned subsidiary of a U.S.

parent, Devon Energy Corporation, which is based in Oklahoma City, Oklahoma.  Brown

Affidavit ("BA"), Ex. 31, p.5. [1]

II.    The Contracts

A.    The Power Sale Agreements

On or about February 20, 1992, PGC (at that time known as Altresco Pittsfield, L.P.)

entered into Power Sale Agreements with Commonwealth Electric and Cambridge Electric

(collectively, the "Power Purchasers").  B.A. Ex. 4, 5, Article 1.  Under the Power Sale

Agreements, PGC agreed to sell, and the Power Purchasers agreed to buy, electric power

produced at the Facility.  Id.  The Power Sale Agreements are subject to both state and federal

regulation.  Id., Article 9.  Massachusetts law governs the interpretation and performance of

Power Sale Agreements.  Id., Article 11.

Article 5 and Appendix B of the Power Sale Agreements govern the price of electricity

sold to the Power Purchasers.  Id., Article 5 & App. B.  One component of the price is the

"Monthly Energy Charge," which is based on the amount of electricity delivered by PGC.  Id.,

App. B.  Once every five years, either PGC or the Power Purchasers may request a renegotiation

or arbitration of the Monthly Energy Charge (the "Price Renegotiation/Arbitration").  Id.  The

purpose of any such Price Renegotiation/Arbitration is to adjust the Monthly Energy Charge so

that it reflects a gas price comparable to the prices paid for gas in Connecticut, Massachusetts

and Rhode Island.  Id.

Notice of any arbitration or price renegotiation is to be delivered to the Power Purchasers

in Massachusetts.  Id., Article 17.  Article 12.1 requires arbitration proceedings be conducted in

---

[1] Affidavit of David A. Brown in Support of Pittsfield Generating Company, L.P.'s Opposition to Devon's Motion to Dismiss for Lack of Jurisdiction and Forum Non Conveniens and Motion to Stay in Deference to a Foreign Proceeding.

Boston, Massachusetts: "Unless the parties otherwise agree, the place of any arbitration held pursuant to this Article 12 shall be in Boston, Massachusetts." Id., Article 12.1.

On June 2, 2004, PGC entered into Termination Agreements with Cambridge Electric and Commonwealth Electric to terminate the Power Sale Agreements (the "Termination Agreements"). B.A., Ex. 7, 8. The Termination Agreements, like the Power Sale Agreements, are governed by Massachusetts law. Id., Article 11.5. The Termination Agreements are subject to administrative review and approval by the Massachusetts Department of Telecommunications and Energy ("DTE"), and notice of termination must be provided to the Federal Energy Regulatory Commission ("FERC"). Id., Article 2.

### B.    The Gas Purchase Agreement

On or about August 24, 1995, PGC (at that time known as Altresco Pittsfield, L.P. ("Altresco")) entered into the Gas Purchase Agreement with Home Oil Company, Ltd. (predecessor in interest to Devon) ("Home"). B.A., Ex. 1. Altresco's offices were in Boston, Massachusetts. The final act in making the contract was execution of the Gas Purchase Agreement by Altresco in Boston. B.A., Ex. 21. Home delivered two executed originals to Altresco's counsel in Calgary, B.A., Ex. 20, who forwarded the execution originals to Altresco in Boston. B.A., Ex. 29. Altresco executed the Gas Purchase Agreement and returned the fully executed agreement to Home by mail or courier from Boston to Calgary. B.A., Ex. 21.

Under Article 4.1 of the Gas Purchase Agreement, Devon is required to sell and deliver to PGC the "Daily Nomination" of gas. B.A., Ex. 1. Devon warranted its supply and delivery of gas to PGC in Article 15.1(a) of the agreement. Id. "Daily Nomination" means the volume of gas, up to the Daily Contract Quantity, nominated for purchase by PGC. Id., Article 4.2. The

Daily Contract Quantity means a volume 333.1 $10^3M^3$ of gas, subject to certain reductions not applicable here.  Id., Article 1.1(i).

Under Article 8 of the Gas Purchase Agreement, the price that PGC pays for gas consists primarily of the price calculated in accordance with Schedule A.  Id., Article 8.  If there is a change in the price of electricity through renegotiation or arbitration under the Power Sale Agreements, then there is a corresponding adjustment in the price of the gas PGC buys from Devon.  Id., Article 8.4.  Absent such price renegotiation, the price of gas is calculated in accordance with Schedule A.

Under Article 19 of the Gas Purchase Agreement, notices were to be sent to Altresco in Boston, Massachusetts.  B.A., Ex. 1.  Amendment No. 1 to the Gas Purchase Agreement, effective as of July 1, 2002, provides that Devon shall send notices under the Gas Purchase Agreement to PGC at the Facility, care of General Manager, Pittsfield Generating Plant, 235 Merrill Road, Pittsfield, Massachusetts.  Id., Ex. 6.

The Gas Purchase Agreement contains an integration clause.  B.A., Ex. 1, Article 20.1.  No provision in the Gas Purchase Agreement obligates PGC to use the gas to operate the Facility.  Similarly, as Devon concedes, the Gas Purchase Agreement does not prohibit PGC from terminating the Power Sale Agreements.  (B.A., Ex. 32, p. 167:  "[N]owhere on the record has there ever been a suggestion that the gas purchase agreement or the agency agreement prohibits [sic] Pittsfield from terminating the PSAs. ").  To the contrary, Article 4.8 of the Gas Purchase Agreement states:

> **Resale Rights**.  Nothing in this Agreement shall restrict [PGC] from reselling any Gas purchased hereunder or from using any such Gas for purposes other than consumption by the Facility.

This parallels Paragraph 14 of the parties' May 15, 1995 letter agreement, which states,

"Altresco shall have the full right to resell any gas purchased from Home under the Contract."

B.A., Ex. 2.

Devon argues that PGC is obligated to use the gas to fuel the Facility and to maintain the

Power Sale Agreements ("PSAs") in effect.  As Devon's Vice President, Mr. Assen, stated in his

August 10, 2004, Affidavit submitted in the Alberta Action:

> "[I]t was a fundamental term of the GPA [Gas Purchase Agreement] that
> the subject natural gas was being sold primarily to serve the needs of the
> Plant which in turn was supplying electrical power to the power
> purchasers under the PSAs."  B.A, Ex. 12, at Ex. 4.  "[T]he sale [of gas]
> was specifically streamed to the Plant and to serve the PSAs."  Id., at Ex.
> 6.

See also B.A., Ex. 9, ¶¶ 11, 14, 16.  By letter dated September 15, 2004 (two days after the

Alberta Court's decision on jurisdiction), Devon gave notice that it intends to cease supplying

gas to PGC as of the effective date of the Termination Agreements.  B.A., Ex. 28.

## C.    The Agency Agreement

It was a condition subsequent to the Gas Purchase Agreement that Devon and PGC

execute the Renegotiation/Arbitration Agency Agreement (the "Agency Agreement").  B.A., Ex.

16.  The Agency Agreement amended the Gas Purchase Agreement.  B.A., Ex. 9, ¶ 7.  In

negotiating and executing the Agency Agreement, Devon's predecessors (Home and Anderson

Exploration) corresponded directly with Altresco at its offices in Boston, Massachusetts.  For

example, Home sent an August 24, 1995 Letter Agreement to Altresco, c/o J. Makowski

Company, Inc., One Bowdoin Square, Boston, Massachusetts, stating that the execution of the

Agency Agreement was a condition subsequent to the enforceability of the Gas Purchase

Agreement.  B.A., Ex. 16.  Altresco countersigned the letter in Boston, Massachusetts.  Id.

On September 13, 1995, Altresco sent from its Boston, Massachusetts office to Devon's predecessor, Anderson Exploration, a Letter Agreement extending the time to execute the Agency Agreement.  B.A., Ex. 17.  Anderson Exploration/Home[2] countersigned this letter agreement and returned the executed letter agreement to Altresco at its Boston offices.  Id.

On September 26, 1995, Home delivered to Altresco's counsel in Massachusetts two Agency Agreements executed by Home for Altresco's signature.  B.A., Ex. 22.  Altresco signed the Agency Agreements in Boston, and on September 29, 1995, Altresco sent by mail or courier from its Boston office to Anderson Exploration one fully executed Agency Agreement.  B.A., Ex. 23.[3]  The Agency Agreement, like the Gas Purchase Agreement, was made in Massachusetts.

In the Agency Agreement, PGC agreed to act as Devon's agent for the purpose of any price renegotiation or arbitration in Massachusetts under the Power Sale Agreements.  The Agency Agreement, Article 3.01, provides:

> Altresco [now PGC] will act as agent for and on behalf of and in the interests of Home [now Devon] in respect of each Renegotiation/Arbitration Proceeding.  Subject to the receipt of timely directions and instructions from Home [Devon] and the payment of its reasonable costs and expenses by Home [Devon], Altresco [PGC] covenants and agrees that it will use all reasonable commercial efforts in acting in that capacity.  In particular and without limiting the generality of the foregoing, Altresco will follow Home's instructions with respect to . . . any arbitration. . . .  (emphasis added).

The Agency Agreement amended Article 8 of the Gas Purchase Agreement.  In the event of a conflict between the Agency Agreement and Article 8 of the Gas Purchase Agreement, the terms of the Agency Agreement control.  B.A., Ex. 3, Article 1.02(j).  Notices under the Agency

---

[2] Anderson Exploration acquired Home.  Altresco sent the letter agreement to Anderson Exploration.  Anderson Exploration signed the letter agreement and forwarded it on Home's letterhead to Altresco's Boston office.

[3] In the cover letter enclosing the Agency Agreement, Altresco asked Anderson Exploration to countersign the letter indicating its acknowledgement and acceptance of the satisfaction of the condition subsequent to the Gas Purchase Agreement.  Id.  Home countersigned the letter and returned it to Altresco at its Boston, Massachusetts office.  B.A., Ex. 19.

Agreement were to be sent to Altresco in Boston, Massachusetts <u>Id.</u>, Article 6.01. The Agency

Agreement, like the Power Sale Agreements and Termination Agreements, is governed by

Massachusetts law. <u>Id.</u>, Article 1.01(g).

On November 25, 2003, Devon requested PGC, as its agent under the Agency

Agreement, to commence Price Renegotiation/Arbitration Proceedings against the Power

Purchasers. B.A., Ex. 24, 25. Devon sent its request to PGC at the Facility in Pittsfield,

Massachusetts. <u>Id.</u> On December 19, 2003, Devon communicated to PGC, as Devon's agent

under the Agency Agreement, its position with respect to the requested price renegotiation.

Devon sent this letter to PGC at the Pittsfield, Massachusetts Facility. B.A., Ex. 26. On

December 22, 2003, in accordance with Devon's instruction, PGC "as agent for Devon Canada

Corporation . . . under the Renegotiation/ Arbitration Agency Agreement" served notice on

Commonwealth Electric and Cambridge Electric to initiate price renegotiation/ arbitration

proceedings. B.A., Ex. 27. PGC sent the notices from the Massachusetts Facility to NSTAR's

offices in Westwood, Massachusetts. <u>Id.</u>

III.    <u>The Dispute</u>

On or about January 14, 2004, PGC informed Devon that PGC was considering

terminating the Power Sale Agreements and that if it did so, it would likely seek to assign the

Gas Purchase Agreement or to resell the gas to a third party. Complaint, ¶ 24. Devon responded

that if PGC terminated the Power Sale Agreements, then Devon would no longer be obligated to

deliver natural gas under the Gas Purchase Agreement. <u>Id</u>

Approximately one month later, in a February 27, 2004 letter to PGC, Devon stated that it

had a "clear understanding" that the Gas Purchase Agreement did not contemplate severance of

the gas from the Facility, and that if PGC were to sell gas obtained from Devon to third parties,

then "Devon would consider that to be a breach of the Agreement of such a fundamental nature as would relieve Devon of its obligation to continue to deliver the gas." Complaint, ¶ 30. Devon stated that it would not consent to any assignment of the Gas Purchase Agreement to a third party that did not intend to use the gas to serve the Facility. Id., Ex. 31. Devon threatened that if PGC resold the gas for any use other than to fuel the Facility, then Devon would not deliver natural gas under the Gas Purchase Agreement. Id., ¶ 32. In a letter dated March 18, 2004, Devon reaffirmed its February 27th threat that it would stop delivering natural gas to PGC if PGC terminated the Power Sale Agreements and resold the gas to third parties. Id., ¶ 33.

On June 2, 2004, PGC executed the Termination Agreements with the Power Purchasers, subject to regulatory approval and certain other conditions. Complaint, ¶ 36. PGC provided timely notice to Devon of the Termination Agreements by letter dated June 7, 2004. B.A., Ex. 11, ¶ 8.

IV.    The First-Filed Massachusetts Action

It was apparent in June 2004 that an actual, material dispute had arisen between the parties concerning Devon's willingness to continue to meet its contractual obligations to supply gas under the Gas Purchase Agreement. PGC commenced this action on July 8, 2004, seeking a declaration of its rights under the Gas Purchase Agreement, including:

> B.    [A declaration] that neither the Gas Purchase Agreement nor the Agency Agreement prohibits PGC from negotiating agreements to resell, or from reselling, to third parties natural gas purchased from Devon under the Gas Purchase Agreement, regardless of whether or not the Power Sale Agreements remain in effect;

> C.    [A declaration] that Devon would be in breach of the Gas Purchase Agreement if it were to terminate its performance under that agreement based solely on PGC's termination of the Power Sale Agreements and/or PGC's resale to third parties of natural gas purchased pursuant to the Gas Purchase Agreement;

On July 13, 2004, PGC sent the complaint to the Central Authority for the Province of Alberta to be served on Devon in accordance with the Hague Convention. On July 14, 2004, PGC sent to Devon, via overnight mail, a copy of the complaint and a Request for Waiver of Service under Fed. R. Civ. P. 4(d). Devon did not waive formal service. On July 28, 2004, the Central Authority's designated agent served Devon in accordance with the Hague Convention.

V.    The Later-Filed Alberta Action

Devon learned of the Massachusetts action on Thursday, July 8, 2004, the same day PGC filed the Complaint. B.A., Ex. 31, p.32. Devon responded by filing a complaint in the Court of Queen's Bench in Alberta on Monday, July 12, 2004. Id., pp. 33-34. In its Statement of Claim, Devon alleges that the gas supply is tied to both the Facility and the Power Sale Agreements ("PSAs"), as follows:

> "11.    The natural gas purchased in Alberta from Devon under the terms of the GPA by the Gas Buyers is to serve a gas-fired, combined-cycle cogeneration facility for the production of electricity and steam, which is located near Pittsfield in the State of Massachusetts, U.S.A. (the "Plant"). . . .
>
> "14.    The provisions of the GPA and the gas supply to be provided by Devon thereunder are inextricably tied to the Plant and to the PSAs. . . .
>
> "16.    . . . [T]he gas supply being sold by the Plaintiff thereunder is to serve the natural gas needs of the Plant. . . ."

B.A., Ex. 9.

The relief Devon seeks in the Alberta Action mirrors the relief PGC has requested from this Court. See Devon Br. in Support of Motion to Stay, p. 8 ("the Alberta and Massachusetts Actions essentially mirror each other"). It is evident that Devon commenced the Alberta Action to obtain the perceived advantages of a local forum. To that end, Devon has sought to expedite the Alberta Action, and to delay the Massachusetts Action, in order to obtain a jurisdictional

ruling first from the Alberta Court. As Mr. Assen stated in his August 3, 2004, Affidavit, at ¶ 7, in opposing the extension of time for PGC to respond in Alberta:

> Devon is concerned that the Court in Massachusetts not be called upon to decide its jurisdiction in this matter (which must be brought before that Court by August 17, 2004 . . .) without that Court's being informed that the Alberta Court has taken jurisdiction over the matter. <u>The Defendants' request for an extension of time to file a Statement of Defense in this action, would cause prejudice to Devon by changing the order in which the jurisdiction issue will be decided by the two courts</u>.

B.A., Ex. 11 (emphasis added).

Devon moved for, and this Court granted, an extension of time until September 17, 2004 to file a responsive pleading in this Action. Devon obtained a ruling on jurisdiction from the Alberta Court on September 13, 2004. The Alberta Court's Order entered on September 27, 2004, and PGC is now pursuing its right to take an interlocutory appeal from that Order.

<u>ARGUMENT</u>

**I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEVON**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the Court that jurisdiction exists. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). The most conventional method for determining whether a plaintiff has met its burden is the "*prima facie*" method, which "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller, Inc. v. Babcock and Wilcox Canada, 46 F. 3d 138, 145 (1ˢᵗ Cir. 1995),* quoting *Bolt v. Gar-Tec Prods., Inc.*, 967 F. 2d 671, 675 (1ˢᵗ Cir. 1992). This Court should "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the

plaintiff's jurisdictional claim." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F. 3d 26, 34 (1st Cir. 1998).

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Mass. Sch. of Law*, 142 F. 3d at 34. A court sitting in diversity looks to the governing state law to determine whether jurisdiction may be exercised over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 209 F. 3d 42, 51 (1st Cir. 2002). Thus, the question whether this Court has personal jurisdiction over Devon may be answered by reference to the Massachusetts long-arm statute, Mass. Gen. L. ch. 223A, §3.

### A.     The Court Has Jurisdiction Over Devon Under The Massachusetts Long-Arm Statute

This Court has jurisdiction over Devon for two reasons. First, PGC's claims arise out of Devon's transaction of business in the Commonwealth in negotiating, entering into and performing the Gas Purchase Agreement and the Agency Agreement. Indeed, Devon retained PGC as its agent in price renegotiations and arbitration in Massachusetts, and in November 2003, by notices delivered to the Facility in Massachusetts, Devon directed PGC, as its agent, to commence Price Renegotiation/Arbitration proceedings in Massachusetts against Cambridge Electric and Commonwealth Electric. B.A., Ex. 24, 25. Second, this Court separately has jurisdiction because Devon contends that it agreed to supply natural gas for use at the Facility in Massachusetts for the purpose of producing electricity to sell to Massachusetts utilities under the Power Sale Agreements. These activities amply satisfy the Massachusetts long-arm statute. See Mass. Gen. L. ch. 223A, § 3(a) and (b).

1.    PGC's Claims Arise Out Of Devon's Transacting Business In
      Massachusetts.

This Court may exercise jurisdiction over a person as to a cause of action arising from the

person's "transacting any business in this commonwealth."  Mass. Gen. L. ch. 223A, § 3(a).  The

"transacting business" test "is designed to identify deliberate, as distinguished from fortuitous,

contacts with the forum by the nonresident party . . . with a view to determining whether 'the

possible need to invoke the benefits and protections of the forum's laws was reasonably

foreseeable....'"  *Lyle Richards Int'l, Ltd. v. Ashworth*, 132 F. 3d 111, 112-13 (1st Cir. 1997)

(citation omitted), quoting *Prod. Promotions, Inc. v. Cousteau*, 495 F. 2d 483, 496 (5th Cir.

1974).

Courts have interpreted the phrase "transacting business" quite broadly.  *LTX Corp. v.

Daewoo Corp.*, 979 F. Supp. 51, 55 (D. Mass. 1997), aff'd, 141 F.3d 1149 (1st Cir. 1998).  A

defendant need not be physically present in Massachusetts to "transact business" in

Massachusetts.  *Energy Capital and Serv. LP, II v. Hill Refrigeration, Inc.*, 989 F. Supp. 353,

355 (D. Mass. 1997).  "[E]ven an isolated 'one shot' transaction with little impact on the

commerce of the Commonwealth may constitute transacting business" under section 3(a).  *A-

Connoisseur Transp. Corp. v. Celebrity Coach, Inc.*, 742 F. Supp. 39, 42 (D. Mass. 1990).

Where a contract between the parties is associated with other forum-related activities, a

defendant's relatively minor contacts with a Massachusetts plaintiff have been held sufficient to

satisfy the transacting business requirement of section 3(a).  *Digital Equip. Corp. v. Altavista

Tech., Inc.*, 960 F. Supp. 456, 465 (D. Mass. 1997); see also *Tatro v. Manor Care, Inc.*, 416

Mass. 763, 768 (1994).

"When a claim arises from a breach of contract, a finding of jurisdiction under this

provision requires an 'evaluation of the relations between the parties, their respective activities

under the contract, and the linkages, if any, between the defendant's participation in the transaction and [the] Commonwealth of Massachusetts." *Ganis Corp. of Cal. v. Jackson*, 822 F. 2d 194, 197-98 (1st Cir. 1987). The Court should "look at all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." Id.

A claim "arises from" a nonresident transacting business in Massachusetts if the claim was made possible by, or lies in the wake of, the nonresident transacting business in Massachusetts. *LTX*, 979 F. Supp. at 55. To determine whether a claim "arises from" a nonresident transacting business in Massachusetts, courts have applied a but-for causation test, which asks whether the defendant's contacts with Massachusetts constitute the first step in the train of events that resulted in the plaintiff's injury. *Lyle Richards,* 132 F. 3d at 114.

Devon's negotiation, execution and performance of the Gas Purchase Agreement and Agency Agreement are linked to Massachusetts in numerous and substantial ways that amply satisfy the jurisdictional requirements of the Massachusetts long-arm statute. Devon's contacts include the following:

- Home/Anderson negotiated the Gas Purchase Agreement with Altresco by correspondence to Altresco's office located at One Bowdoin Square, Boston, Massachusetts.

- Altresco executed the Gas Purchase Agreement in Boston and returned it to Anderson Exploration, Devon's predecessor, by mail or courier from Boston. B.A., Ex. 21.

- Devon negotiated the Agency Agreement with Altresco by correspondence to Altresco's Boston office.

- Altresco executed the Agency Agreement in Boston and returned the executed original by mail or courier to Anderson Exploration in Alberta. B.A., Ex. 23.

- Devon retained PGC to act as its agent in any price renegotiation or arbitration proceeding with the Massachusetts Power Purchasers.  Any such renegotiation or arbitration was to be held in Massachusetts.  B.A., Ex. 3.

- Notice under the Gas Purchase Agreement and Agency Agreement is to be Id., provided to PGC at its offices in Massachusetts.  B.A., Ex. 1, Article 17; Ex. 3, Article 6; Ex. 6.

- In November 2003, Devon instructed PGC to commence price renegotiation/arbitration in Massachusetts against the Massachusetts Power Purchasers.  Devon sent the notice to PGC at the Facility in Pittsfield, Massachusetts.  B.A., Ex. 24, 25.

- Devon sent further instructions to PGC at the Pittsfield Facility with respect to the Massachusetts price renegotiation/arbitration on December 19, 2003.  B.A., Ex. 26.

- On December 22, 2003, Devon, acting as PGC's agent, commenced price renegotiation/arbitration with the Massachusetts utilities under the Massachusetts Power Sale Agreements by sending notice from PGC's Pittsfield office to NSTAR's offices in Westwood, Massachusetts.  B.A., Ex. 27.  For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal. *Daynard*, 290 F. 3d at 56.

- The Agency Agreement is governed by Massachusetts law.  B.A., Ex. 3, Article 1.01(g).  To the extent there is a conflict between the Agency Agreement and the Gas Purchase Agreement, the Agency Agreement controls.

- The Power Sale Agreements are governed by Massachusetts law and subject to regulation by the Massachusetts DTE.  B.A., Ex. 4, 5, Article 11.

Moreover, Devon alleges in the Alberta Action, and presumably will allege in this action, that the Gas Purchase Agreement is inextricably tied to the Power Sale Agreements pursuant to which PGC sold electricity to Commonwealth Electric and Cambridge Electric.  B.A., Ex. 9, ¶¶ 14-16.

As the foregoing amply demonstrates, Devon, both directly and through its agent, PGC, transacted business in Massachusetts.  There can be no question that the parties' respective claims arise from Devon's contacts with the Commonwealth.  Accordingly, Devon is subject to the jurisdiction of this Court.

2.        Devon Contracted To Supply Gas In Massachusetts.

This Court also has jurisdiction because, according to Devon's theory of the case, Devon contracted to supply gas to the Facility in Massachusetts. The phrase "in this commonwealth" has been construed as referring to the place where the things are to be supplied, rather than the place of contracting. *Droukas v. Divers Training Acad., Inc.*, 375 Mass. 149, 157 (1978), citing *Sarno v. Florida E. Coast Ry.*, 327 F. Supp. 506 (D. Mass. 1971).

Devon argues that it did not "contract to supply services or things" in Massachusetts because delivery of the gas occurs in Alberta. Devon disregards its own allegations in the Alberta Complaint, the Assen Affidavits, and the arguments presented by its counsel in Alberta, that Devon's supply of gas is inextricably intertwined with the operation of the Facility in Massachusetts. B.A., Ex. 9, ¶¶ 11, 14, 16. Indeed, Devon's counsel made the following statements to the Alberta Court:

> "[T]his gas purchase contract is inextricably tied to these PSAs [Power Sale Agreements]. . . ."

B.A., Ex. 32, p. 116.

> "[T]his agreement was, as Mr. Assen says, to serve the facility and the PSAs . . ."

Id., p. 137.

> "I mean although [the gas] was being sold at Empress, it was being directed to a specific plant and specific power sales agreements."

Id., p. 170.

> "The question will be springing from our pleadings, sir, is this contract intricately connected, inextricably connected to the plant and the PSAs?

Id., p. 173.

Devon's entire theory of the case is that it contracted to supply fuel for use by the Facility in Massachusetts for the production and sale of electricity to Massachusetts utilities, and that the

gas may not be used otherwise.  Thus, Devon itself alleges that it contracted to supply goods in

Massachusetts, which subjects Devon to the jurisdiction of this Court.

### B.    Exercising Jurisdiction Over Devon Comports With Due Process

To establish that this Court's exercise of jurisdiction over Devon comports with due

process, PGC must show that Devon purposefully established contacts in Massachusetts such

that it reasonably should have anticipated being haled into court here.  *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475-76 (1985).  The First Circuit has established a three-part test for

determining whether the exercise of personal jurisdiction comports with due process.  *Daynard*,

290 F. 3d at 60.

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities.  Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt factors, be
> reasonable.

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F. 3d 138, 144 (1st Cir. 1995) (emphasis

added).

PGC meets all three elements of this test.  First, to determine if a claim arises out of or is

related to the defendant's conduct, the Court must determine if there is a nexus between the

defendant's contacts with Massachusetts and the plaintiff's causes of action.  *Levin v. Harned*,

304 F. Supp. 2d 136, 167 (D. Mass. 2003).  That requirement is easily met here.  All of PGC's

claims arise under the Gas Purchase Agreement, as amended by the Agency Agreement, which

are directly and substantially connected to the Commonwealth.

Second, Devon's contacts with Massachusetts constitute a purposeful availment of the

privilege of conducting activities in Massachusetts, thereby rendering Devon's presence before

this Court reasonably foreseeable.  Home and Anderson corresponded with Altresco, and

Altresco executed the Gas Purchase Agreement and Agency Agreement, in Boston,

Massachusetts.  B.A., Ex. 21, 23.  Devon retained PGC to act as its agent in price renegotiation

and arbitration proceedings under the Power Sale Agreements with Massachusetts utilities.  B.A.,

Ex. 3.  Devon sent direction to PGC in Massachusetts to commence price renegotiation and

arbitration.  B.A., Ex. 24, 25.  PGC, acting as Devon's agent, commenced the price

renegotiation/arbitration with the Power Purchasers in Massachusetts.  It cannot seriously be

disputed that Devon has purposefully availed itself of the privilege of conducting business

activities in the Commonwealth.

Third, the exercise of jurisdiction must not be unreasonable.  Under this element, Courts

in the First Circuit consider the following "gestalt" factors to determine whether the assertion of

jurisdiction would be reasonable and comport with fair play and substantial justice: 1) the

defendant's burden of appearing; 2) the forum state's interest in adjudicating the dispute; 3) the

plaintiff's interest in obtaining convenient and effective relief; 4) the judicial system's interest in

obtaining the most effective resolution of the controversy; and 5) the common interest of all

sovereigns in promoting substantive social policies.  *Milford Power Ltd. P'ship v. New England*

*Power Co.*, 918 F. Supp. 471, 481 (D. Mass. 1996).

Requiring Devon to appear in Massachusetts to defend this action is not any way

unreasonable.  Devon is a large producer and seller of natural gas.  It is a wholly-owned

subsidiary of Devon Energy Corporation, the largest U.S.-based independent oil and gas

producer and one of the largest independent processors of natural gas and natural gas liquids in

North America.  As discussed, Devon's contacts with Massachusetts are substantial and

numerous.  For many years, Devon sold gas to PGC which PGC used to fuel a large power plant

in Pittsfield, Massachusetts. PGC and its general and limited partners are all located on the East

Coast of the United States, including in Massachusetts. B.A., Ex. 13, 14. In these

circumstances, it is not unreasonable to expect Devon to appear in this jurisdiction to defend

claims arising under the Gas Purchase Agreement, as amended by the Agency Agreement.

In summary, this Court has personal jurisdiction over Devon, and the exercise of

jurisdiction over Devon comports with the due process requirements of the United States

Constitution. For these reasons, Devon's motion to dismiss for lack of personal jurisdiction

should be denied.

## II.    THIS CASE SHOULD NOT BE DISMISSED OR STAYED ON THE BASIS OF FORUM NON CONVENIENS

### A.    Devon's Motion To Dismiss On Forum Non Conveniens Grounds Should Be Denied.

A district court may, in the exercise of discretion, dismiss a case "when an alternative

forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish

oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience,' or

when the 'chosen forum [is] inappropriate because of considerations affecting the court's own

administrative and legal problems.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). In

deciding whether to dismiss a case for forum non conveniens, "the ultimate inquiry is where trial

will best serve the convenience of the parties and the ends of justice." *Koster v. (American)*

*Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

Under the forum non conveniens doctrine, a presumption exists that the plaintiff's choice

of forum should be respected. See *Koster*, 330 U.S. at 524; *Piper*, 454 U.S. at 255; *Nowak v.*

*Tak How Inv., Ltd.*, 94 F. 3d 708, 720-21 (1st Cir. 1996). Absent a clear showing that the

plaintiff's chosen forum is either disproportionately inconvenient or otherwise inappropriate, a

motion to dismiss based on forum non conveniens should be denied. *Nowak*, 94 F. 3d at 720.

As the United States Supreme Court has stated:

> [w]here there are only two parties to a dispute, there is good reason why it
> should be tried in the plaintiff's home forum if that has been his choice.
> He should not be deprived of the presumed advantages of his home
> jurisdiction except upon a clear showing of facts which either (1) establish
> such oppressiveness and vexation to a defendant as to be out of all
> proportion to plaintiff's convenience, which may be shown to be slight or
> nonexistent, or (2) make trial in the chosen forum inappropriate because of
> considerations affecting the court's own administrative and legal
> problems. In any balancing of conveniences, a real showing of
> convenience by a plaintiff who has sued in his home forum will normally
> outweigh the inconvenience the defendant may have shown.

*Koster*, 330 U.S. at 524 (emphasis added).

A defendant bears the burden of persuasion as to all elements of the forum non

conveniens analysis. *Mercier v. Sheraton Int'l, Inc.*, 935 F. 2d 419, 423-24 (1st Cir. 1991). A

defendant moving to dismiss for forum non conveniens must show that an adequate alternative

forum exists and that the private and the public interests strongly favor litigating the claim in the

alternative forum. Id.

By terminating the supply of gas, Devon has converted this dispute from a declaratory

judgment action to a claim for damages in which PGC, as the financially injured party, is the

plaintiff and Devon, as the non-performing party, is the defendant. PGC's choice of forum

should be respected. Devon has not established, and cannot establish, that Massachusetts is an

inappropriate forum. Neither the public nor the private interests compellingly favor adjudication

of PGC's claims in Alberta. PGC filed first in Massachusetts, and there is no substantial reason

why the litigation should not proceed in Massachusetts.

Devon argues that Massachusetts is not an appropriate forum because Devon will have to

bear the expense of transporting witnesses to the United States; it may need experts in Alberta

energy policies; and a Canadian court may not enforce this Court's declaratory judgment (although there is no dispute that a Canadian Court would enforce a money judgment). These arguments do not constitute the type of oppressiveness or vexation disproportionate to the plaintiffs' inconvenience of proceeding in Canada to support dismissal under the forum non conveniens doctrine. See *Nowak*, 94 F. 3d at 720; see also *Traver v. Officine Meccaniche Toshci Spa*, 233 F. Supp. 2d 404, 416 (N.D.N.Y. 2002) (court denied the defendant's forum non conveniens motion because defendant did not meet its burden to demonstrate that the private or public factors weighed heavily in favor of dismissing the case in favor of an action in Italy).

Devon has failed to show that the private or public interests strongly favor dismissal. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). Considerations relevant to the private interests include the comparative convenience of the parties' access to sources of proof; the availability of compulsory process and the cost of securing the attendance of witnesses; and an evaluation of all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. at 508; see also *Iragorri v. Int'l Elevator, Inc.*, 203 F. 3d 8 (1st Cir. 2000). These factors favor litigating in Massachusetts. The Facility is in Massachusetts. All of PGC's documents related to this action are located in either Massachusetts or in the Eastern United States. B.A. Ex. 13, 14. Numerous persons with knowledge are located in Massachusetts and the Eastern United States. Id. All of the other defendants named in the Alberta Action, which presumably Devon will name as third-party defendants in this action, are located in Massachusetts or within the United States, not Alberta. The availability of compulsory process throughout the United States under Fed. R. Civ. P. 45, and the cost of securing the attendance of witnesses, strongly favor litigating PGC's claims in Massachusetts. Indeed, discovery under the

Federal Rules of Civil Procedure is more expansive and far less cumbersome than discovery under the Alberta Rules of Court. See Declaration of Eric Groody, submitted herewith.

Devon also has the burden to show that the public interests implicated by the case strongly favor dismissal. *Gulf Oil*, 330 U.S. at 508-509. Public interest factors include the administrative difficulties of court congestion in the plaintiff's chosen forum; the interest in having localized controversies decided at home; the interest of having the trial of a case conducted in a forum that is at home with the governing law; and the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. Id.

The relevant public interests favor Massachusetts, not Alberta. This case arose as the result of the termination of Power Sale Agreements executed with Massachusetts utility companies for power produced by a Massachusetts power plant. There are no inherent difficulties posed by congestion in this Court. Nor does the interpretation of a contract pose unusual difficulties for this Court. Although the Gas Purchase Agreement provides for Alberta law, that factor alone is not sufficient, particularly where the Agency Agreement provides for Massachusetts law. See *Mercier* 935 F. 2d at 428 (stating that application of foreign law not dispositive on determination of dismissal); see also *Nowak* 94 F. 3d at 720-21 (finding application of Hong Kong substantive law insufficient to overcome presumption in favor of plaintiff's chosen forum).

The decision in *Nowak v. Tak How Investments, Ltd.*, supra, is instructive. In that case, the plaintiffs brought a wrongful death action against the defendant corporation, which owned a hotel in Hong Kong where the decedent drowned. 94 F. 3d at 711. The defendant moved to dismiss on forum non conveniens grounds, and the Court denied the motion. The Court recognized that the defendant bore a heavy burden to justify dismissal because the plaintiffs

brought suit in their home forum. Id. at 719. Similar to the arguments Devon presents in this case, the defendant argued that it would bear the expense of transporting witnesses to the United States, that it might face difficulty in joining third-party defendants, and that a Hong Kong court might not enforce the judgment of a Massachusetts court. The Court found these factors did not constitute the type of oppressiveness or vexation required by *Koster*. Id. Nor did the Court find application of Hong Kong law sufficient to overcome the presumption in favor of plaintiffs' chosen forum. Id. at 720-21. The same analysis applies to Devon's arguments here, which should be rejected for the same reasons.

Devon also argues that the Alberta regulatory agencies might be relevant to this case. This argument is meritless. The Gas Purchase Agreement was subject to oversight by the state and federal regulators in the United States as well as Canada, so this fact favors neither jurisdiction. The Massachusetts DTE and Federal Energy Regulatory Commission have files just as the Canadian agencies have files on this contract. Any regulatory issue may be resolved before the regulatory agencies. It is unclear what "expert testimony" Devon is seeking, but as Devon argued in its Brief to the Alberta Court, the parol evidence rule is likely to bar consideration of evidence extrinsic to the four corners of the contract.

**B.      Devon's Motion To Stay This Action Should Be Denied**

Federal courts have the inherent power to stay an action based upon the pendency of a related proceeding in a foreign jurisdiction. *Goldhammer v. Dunkin' Donuts, Inc.,* 59 F. Supp. 2d 248, 251 (D. Mass. 1999), citing *Boushel v. Toro Co.*, 985 F. 2d 406, 409-10 (8th Cir. 1993). That power, however, must be balanced against the federal courts' strict duty to exercise the jurisdiction that Congress confers upon them. Id., quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996). Courts have been hesitant to abrogate this jurisdictional duty in the

international context and have held that parallel proceedings on the same claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one that can be pled as res judicata in the other. *Goldhammer*, 59 F. Supp. 2d at 251, quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F. 2d 909, 926-27 (D.C. Cir. 1984).

In some private international disputes, courts have recognized that the prudent and just action may be to abstain from the exercise of jurisdiction. *Goldhammer*, 59 F. Supp. 2d at 251, quoting *Turner Entm't Co. v. Degeto Film GmbH*, 25 F. 3d 1512, 1518 (11th Cir. 1994). The mere fact that parallel proceedings are pending in a foreign jurisdiction will not constitute an exceptional circumstance justifying the abdication of federal jurisdiction, however. Id., citing *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F. 2d 1193, 1194-95 (9th Cir. 1991). That is particularly so here, where the foreign action was commenced subsequent to the action in this Court and appears to have been filed in a deliberate attempt to deprive PGC, the plaintiff, of its chosen forum.

In determining whether to grant a stay, courts consider a number of factors, including similarity of the parties and issues involved; promotion of judicial efficiency; adequacy of relief available in the alternative forum; issues of fairness to and convenience of the parties, counsel, and witnesses; possible prejudice to any of the parties; and the temporal sequence of the filing of the actions. *Goldhammer,* 59 F. Supp. 2d at 252-253. Just as these factors compel denial of Devon's motion to dismiss on forum non conveniens grounds, they also compel denial Devon's motion to stay.

The majority of the witnesses and documents are within the subpoena power of Fed. R. Civ. P.45, but outside the jurisdiction of the Canadian courts. B.A. Ex. 13, 14. The Federal Rules of Civil Procedure provides discovery advantages over the Alberta Rules of Court. See

Groody Affidavit.  The burden on Devon in appearing in Massachusetts is less than the burden on PGC and the other entities involved in traveling to Alberta.  The fact that PGC filed suit first, and is the true plaintiff in a damages action now that Devon has ceased to supply gas, is a substantial factor that cannot be overlooked.  The presumption in favor of plaintiff's choice of forum in the first-filed action should not be overturned absent compelling circumstances in favor of the foreign forum.  There are no such compelling circumstances here.  Certainly, the facts do not so strongly favor Alberta that this Court should defer to the later-filed action and deny the plaintiff its choice of forum.

Devon's arguments to the contrary are unpersuasive.  Devon's additional claims in Alberta may be asserted as compulsory counterclaims in this action, and thus the Alberta Action does not provide more comprehensive relief.  Devon's argument about the enforceability of this Court's judgment in Canada has no merit, because foreign judgments for money damages are fully enforceable in Alberta.  Devon's argument about duplicative litigation, where Devon's own tactical choices created the potential for duplicative litigation, should not be countenanced.  Finally, Devon's allegations of bad faith are demonstrably unfounded for three reasons: (1) the parties' dispute commenced in January 2004 and was well known to Devon in June 2004; (2) PGC provided Devon with notice of the Termination Agreements promptly after they were signed; and (3) Devon's claims are based on the fact of the Termination Agreements, and not on their contents, and consequently the date Devon received copies of the Termination Agreements is immaterial.

There are three additional reasons why, in the exercise of its discretion, the Court should not stay this action in favor of the later-filed Alberta proceeding.  First, the Federal Rules of Civil Procedure provide an expeditious and efficient means to resolve this matter.  The parties

appear to agree that the Gas Purchase Agreement, as amended by the Agency Agreement, is unambiguous, such that the Court need not consider parol evidence in interpreting its terms.  See B.A., Ex. 30, ¶ 97 ("No doubt the Court will apply the parole evidence rule and will substantially restrict its view of the intention of the parties to the words of the contract").  Accordingly, an expedited briefing and argument schedule under Fed. R. Civ. P. 56 is the quickest and most efficient means to resolve this dispute.

Second, it is not certain that Alberta will continue to provide an alternative forum.  PGC has the right to appeal the Alberta Court's ruling on jurisdiction as of right.  The Court's order is dated September 27, 2004; PGC's notice of appeal is due to be filed twenty (20) days thereafter.  It is likely that the litigation will be stayed pending appeal; the Alberta Court has not previously ruled on, and the parties expressly excluded from the Court's previous consideration, any application to stay the Alberta Action.  B.A., Ex. 32, p. 4.

Third, the equities strongly counsel against staying this action and rewarding Devon for creating the jurisdictional conflict about which it now purports to express concern.  The parties' disagreement has been pending since January 2004.  Devon knew in early June that PGC had agreed to terminate the Power Sale Agreements.  Devon chose not to act until after PGC had filed suit a full month after signing the Termination Agreements.  Then, instead of meeting PGC's claims on the merits, Devon responded by suing in Alberta.  Devon's suit in Alberta is clearly a tactical effort to deprive PGC of its chosen – and the most appropriate – forum.  PGC should not be disenfranchised from its access to the Courts of the United States by Devon's litigation tactics in these circumstances.

<u>Conclusion</u>

For these reasons, plaintiff Pittsfield Generating Company, L.P. requests the Court to <u>deny</u> defendant Devon Canada Corporation's Motion To Dismiss For Lack Of Personal Jurisdiction and Forum Non-Conveniens and to <u>deny</u> Defendant Devon Canada Corporation's Motion To Stay In Deference To A Pending Foreign Proceeding.

PITTSFIELD GENERATING COMPANY, L.P.

By its attorneys,

_____/s/ David A. Brown_____
Robert J. Muldoon, BBO# 359480
David A. Brown, BBO# 556161
Jill M. Brannelly, BBO# 655474
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

Dated: October 1, 2004