# EXHIBIT C

# Carscallen Lockwood LLP
### Barristers & Solicitors

1500, 407 - 2nd Street S.W.
Calgary, Alberta T2P 2Y3
Telephone:  (403) 262-3775
Facsimile:  (403) 262-2952

Stanley Carscallen, Q.C.
Direct Line:  (403) 298-8451
carscallen@cllawyers.com

August 27, 2004

**URGENT!!**

File No. 16798

TELECOPY

May Jensen Shawa Solomon LLP
800, 304 - 8th Avenue, S.W.
Calgary, Alberta
T2P 1C2

Blake, Cassels & Graydon LLP
3500, 855 – 2nd Street, S.W.
Calgary, Alberta
T2P 4J8

Attention:  Carsten Jensen

Attention:  S.B. Gavin Matthews

Dear Sirs:

Re:   Devon Canada Corporation v. PE-Pittsfield, LLC et al.

By the Order of the Honourable Associate Chief Justice A.B. Sulatycky dated 25th August, 2004, Mr. Assen is required to respond in writing to certain questions and Devon is required to provide certain documents for inspection and inclusion in the record. Those steps are to be taken by noon today.

Accordingly, as contemplated in subparagraph 1(a) of the said Order, Mr. Assen's responses to the questions are as follows

**Question c):  Was the possibility of Pittsfield Generating Company, LP ("Pittsfield") terminating the Power Sales Agreements discussed at the without prejudice meeting between Pittsfield and Devon Canada Corporation ("Devon") on January 14, 2004?**

Prior to the January 14, 2004 discussions, a bankruptcy judge had set aside the U.S. Gen power sales agreement associated with the Pittsfield facility for which Talisman Energy was the natural gas supplier. At the January 14th without prejudice meeting, Pittsfield posed a hypothetical question asking if Devon found itself in Talisman's position how would it react? Devon responded that it considered the Pittsfield power sales agreements and the gas supply agreements linked and, as such, its obligation to deliver would cease. Even though the parties engaged in broad ranging discussions about the restructuring of the remaining contracts associated with the facility, at no time did Pittsfield state that it was planning to terminate the power sales agreements associated with Devon's gas supply contracts, nor did Devon believe that these contracts would be terminated. Devon first became aware, and indeed was surprised to learn on June 7, 2004, that Pittsfield had executed termination agreements with the power sales purchasers.

{00061993-1}

August 27, 2004
Page 2

**Question e): When was Mr. Carscallen retained by Devon with respect to the issues in this lawsuit?**

Answer: Devon understands that there are principally two issues in this lawsuit. They are the issue as to whether the termination of the PSAs constitutes a repudiation by Pittsfield of the GPA and whether Devon has the obligation to deliver gas to a different group of partners from those with whom it has contracted. The issue of repudiation stemming from the termination of the PSAs first came to light when Devon was, as a result of its receiving the June 7, 2004 letter from Pittsfield, advised for the first time that Devon contemplated, and indeed by that time had agreed, to the termination of the PSAs. Mr. Carscallen was consulted shortly after the receipt of that letter on that issue. With respect to the issue pertaining to the partnership, Mr. Carscallen was asked to provide legal advice to Devon on that matter shortly before January 16, 2004.

Devon is also required to produce for inspection certain documents as directed in the said Order. This is to advise that those documents have now been gathered together and reproduced in a binder which is now available for your inspection at our office. Could you kindly coordinate your access to them through my assistant, Melanie Ferster (298-9278).

Yours truly,

Stan Carscallen

/mf

{00061993-1}