UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PITTSFIELD GENERATING COMPANY, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEVON CANADA CORPORATION, )<br>)<br>Defendant. )<br>) | Civil Action No:<br>04-30128-MAP |

**DEFENDANT DEVON CANADA CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS**

Defendant Devon Canada Corporation ("Devon") hereby responds to arguments raised by Plaintiff Pittsfield Generating Company, L.P. ("PGC") in its multiple briefs in opposition to Devon's Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens ("Def. Mot. to Dismiss"). PGC previously filed its opposition to Devon's original motion to dismiss, ("Pl. Opp. I") which was mooted by PGC's filing its First Amended Complaint. PGC now files a second opposition ("Pl. Opp. II") which introduces new arguments and purports to rely on and incorporate the arguments set forth in the original opposition.[1]

Despite two attempts to brief the issues, however, the bulk of PGC's opposition briefs has little relevance to the contract at the core of the parties' dispute: the Gas Purchase Agreement. PGC's repeated references to the Power Sale Agreements ("PSAs") and the Renegotiation/Arbitration Agency Agreement ("Agency Agreement"), as well as its discussion of the merits of the case, are nothing but a smoke screen designed to divert this Court's attention

---

[1] By filing and relying on two opposition briefs without leave of court, PGC has exceeded the page limit allowable by Local Rule 7.1(b)(4).

30801063.5

- 1 -

from the relevant issues.  PGC cites little authority to support its arguments and, moreover, fails to distinguish or challenge the authority cited by Devon.  These concessions are telling and, as stated more fully below, reinforce Devon's argument that the Court does not have jurisdiction over Devon and, in any event, the dispute is most appropriately litigated in Alberta.

PGC also essentially ignores the September 13, 2004 decision of Justice Mahoney, in which the Alberta court determined that it has jurisdiction over PGC and that Alberta is the most convenient forum in which to litigate this dispute.  Reasons for Judgment of the Honourable Justice Bryan E. Mahoney ¶ 21(i) (Sept. 13, 2004) (as corrected Oct. 8, 2004) (Ex. 15 hereto).[2]  All of the arguments PGC presents here regarding jurisdiction and forum non conveniens were presented in Alberta and found wanting by the court.  PGC has filed a Civil Notice of Appeal of this decision and has described it as a "procedural" appeal.  Civil Notice of Appeal (Oct. 5, 2004) (Ex. B to Def. Mot. To Stay).  Under the Alberta Court of Appeal's Consolidated Practice Directions, procedural appeals of this type are now handled under the new rules calling for expedited treatment.  <u>See</u> Part J of the Alberta Court of Appeal Practice Notes. http://www.albertacourts.ab.ca/ca/practicenotes/j.htm.

I.  **<u>PGC MISSTATES KEY FACTS RELEVANT TO THE PARTIES' DISPUTE</u>**

Although Devon recognizes that the task of this Court at this time is not to interpret the underlying contractual provisions, PGC creates several misimpressions of fact in its opposition briefs which Devon is compelled to correct.  First, PGC asserts that Devon insists that PGC must maintain the PSAs in effect.  Pl. Opp. I at 2.  This assertion is incorrect and misses the point in

---

[2]   Exhibit 15 (attached hereto) is a corrected version of Justice Mahoney's Reasons For Judgment, which was attached to Devon's original Motion to Dismiss as Exhibit 14.  The corrected version contains typographical and non-substantive changes by the Alberta court.

30801063.5

any event. PGC's termination of the PSAs has repercussions: it shows PGC's intention to no longer be bound by the Gas Purchase Agreement, thereby legally entitling Devon, under Alberta law, to accept PGC's repudiation and to elect to terminate the Gas Purchase Agreement as of the effective date of the PSAs' terminations.

Second, PGC's continued effort to portray itself as the aggrieved party in this matter is disingenuous. PGC orchestrated the termination of the PSAs and the filing of this lawsuit in such a way as to keep Devon uninformed and unaware of the substance or particulars of the Termination Agreements – all in an apparent effort to win a race to the courthouse. Devon had performed its contractual obligations under the Gas Purchase Agreement for years and it is PGC which set into motion the chain of events that led to the termination of the PSAs and this dispute. In particular, Devon gave notice and thereafter ceased to supply gas to PGC only after PGC elected to repudiate the Gas Purchase Agreement by terminating the PSAs—far from the deliberate breach of its gas supply obligations portrayed by PGC. Pl. Opp. II at 4.

Third, the Gas Purchase Agreement was finalized in Alberta, not in Massachusetts as PGC contends. See Ex. 15 ¶ 22(a) (Alberta court determining that Gas Purchase Agreement was made in Alberta). PGC does not dispute the existence of the escrow arrangement or its terms. PGC's attempt to re-invent the facts surrounding the formation of the Gas Purchase Agreement should be disregarded. Here, the parties contemplated that the Gas Purchase Agreement would be subject to an escrow condition: Devon's predecessor, Home Oil Company Limited ("Home") duly executed the Gas Purchase Agreement in its Alberta office and delivered the executed agreement to Altresco's Calgary counsel's office at Bennett Jones Verchere in escrow, on the express condition that the agreement would not be released from escrow until a duly executed copy was delivered to Home in Alberta. Declaration of Henry Assen ¶¶ 7, 8 (Sept. 16, 2004)

(Ex. 1 to Def. Mot. to Dismiss). Thus, the escrow condition required actual delivery to Home, rather than delivery to a postmaster, courier, or other agent. Because of this escrow condition, the Gas Purchase Agreement was finalized in Alberta only when the executed copy was delivered to Home's office in Alberta.

Fourth, PGC's representation in its second opposition brief, and previously in its request for an expedited hearing on Devon's Motion to Stay, that PGC is incurring lost profits of approximately C$26,000 per day is disingenuous. Pl. Opp. II at 3, 4. Tellingly, PGC does not identify any supply obligation that PGC supposedly must cover. Thus, the $26,000 per day is merely the speculative profit that PGC hopes to receive if it were able to re-sell the gas on the spot market. It in no sense represents an out-of-pocket loss.

## II. THIS COURT SHOULD GRANT DEVON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

PGC fails to meet its burden of producing sufficient evidence to support an assertion of personal jurisdiction. Specifically, PGC fails to show that Devon transacted business or contracted to supply goods in Massachusetts within the meaning of the long-arm statute. Moreover, PGC fails to demonstrate that asserting jurisdiction over Devon would comport with due process requirements.

### A. PGC Fails to Show That Devon Transacted Business in Massachusetts

PGC does not demonstrate that Devon transacted business in Massachusetts within the meaning of the long-arm statute. PGC identifies certain contacts it claims Devon has with Massachusetts, but none of them is sufficient to support an assertion of personal jurisdiction.

#### 1. Devon's Purported Contacts in Relation to the Agency Agreement Do Not Bear Weight on the Jurisdictional Analysis

PGC cites several Devon contacts relating to the Agency Agreement. PGC, however, cites no authority—either in its first or second brief in opposition—to support the proposition

30801063.5

- 4 -

that such contacts, or PGC's alleged act of delivering, by mail or courier, the executed Agency Agreement to Home in Alberta, are a basis for jurisdiction. Pl. Opp. I at 15; Pl. Opp. II at 3-4. The jurisdictional analysis should focus on the Gas Purchase Agreement because the First Amended Complaint shows that PGC is seeking relief solely with respect to the Gas Purchase Agreement, not the Agency Agreement. See generally First Amended Complaint. In other words, even if the Agency Agreement appoints PGC to act as Devon's agent in price renegotiation/arbitration proceedings, the dispute does not arise from this contact. Specific jurisdiction requires that the claim arise from the contacts. Because PGC's claims do not "arise from" the purported contacts in relation to the Agency Agreement, such contacts are not relevant in analyzing jurisdiction. See Mass. Ann. Laws ch. 223A, § 3 (cause of action must "arise from" the transaction of business).

### 2. Devon Negotiated and Executed the Gas Purchase Agreement in Alberta

PGC claims that Devon negotiated the Gas Purchase Agreement in Massachusetts. Pl. Opp. I at 15. This is contrary to the record evidence. Indeed, PGC's representative traveled to Calgary, Alberta to negotiate the form of the Gas Purchase Agreement. Excerpts of Cross Examination of George A. Lehner at 11, 12 (Aug. 16, 2004) (Ex. 10 to Def. Mot. to Dismiss).

PGC further asserts that PGC's predecessor, Altresco Pittsfield L.P. ("Altresco"), executed the Gas Purchase Agreement in Boston, Massachusetts and returned it to Anderson Exploration (Devon's predecessor) by mail or courier from Boston. Pl. Opp. I at 15. To support this assertion, PGC cites Exhibit 21, a letter from Altresco to Home. The reference to Exhibit 21, however, is misleading as the letter does not reflect whether it was sent directly by mail, or whether it was hand-delivered through Bennett Jones Verchere pursuant to the parties' escrow arrangement. See Ex. 1 ¶¶ 7, 8 to Def. Mot. to Dismiss.

30801063.5

In any event, under Alberta law, delivery of a contract to the post office or to a courier would be effective delivery to the addressee if, and only if, that form of delivery was contemplated by the parties. See G.H.L. Fridman, The Law of Contract in Canada at 70-73 (4th ed.) (1999) (Ex. 16 hereto). Here, the parties contemplated that the Gas Purchase Agreement would be subject to an escrow condition: the agreement would not be released from escrow until a duly executed copy was delivered to Home's office in Alberta. Ex. 1 ¶¶ 7, 8. Because the parties contemplated formation of the Gas Purchase Agreement by physical delivery of the document to Home in Alberta, the contract was formed in Alberta.

### B. PGC Fails to Show that Devon Contracted to Supply Services or Things in Massachusetts

PGC asserts that Devon contracted to supply natural gas in Massachusetts within the meaning of the long-arm statute. Pl. Opp. I at 17-18. PGC, however, fails to refute Devon's argument that the "contracting to supply services or things" prong of the long-arm statute does not apply to a foreign seller whose only obligation is to deliver goods to a common carrier outside the forum for transport to the forum. See Intech, Inc. v. Triple "CO" Marine Salvage, Inc., 2003 Mass. App. Div. 13, 14 (Mass. Dist. Ct. 2003). Indeed, the lone case that PGC cites, Droukas v. Divers Training Academy, Inc., 376 N.E.2d 548 (Mass. 1978), directly supports Devon's position. In Droukas, the court held that no jurisdiction existed under the "contracting to supply services or things" prong because the contract at issue provided for shipment of the engines to the plaintiff by means of an independent carrier, and physical delivery of the engines to the carrier occurred outside Massachusetts. Id. at 553. Here, Devon contracted to deliver gas to PGC, with the delivery of the gas occurring at Empress, Alberta. Affidavit of Henry Assen ¶ 15 (July 12, 2004) (Ex. 2 to Def. Mot. to Dismiss). Although the gas served a facility in Massachusetts, the point of delivery in Alberta – as designated in the Gas Purchase Agreement –

is the factor that is relevant in analyzing jurisdiction under the long-arm statute, as both Intech and Droukas make clear.

### C. PGC Fails to Show that the Assertion of Jurisdiction Over Devon Would Comport with Due Process Requirements

PGC offers three arguments as to why the exercise of jurisdiction over Devon comports with due process. First, PGC argues that all of PGC's claims arise under the Gas Purchase Agreement, as amended by the Agency Agreement, and are directly and substantially connected to Massachusetts. Pl. Opp. I at 18. As stated above, however, any purported contacts with Massachusetts due to the Agency Agreement bear no weight on the jurisdictional analysis because PGC's claims are solely with respect to the Gas Purchase Agreement.

Second, PGC argues that Devon's contacts with Massachusetts constitute a purposeful availment of the privilege of conducting activities in Massachusetts. Pl. Opp. I at 18-19. PGC, however, does not dispute the fact that Devon performed all of its contract obligations in Alberta and, therefore, did not avail itself of the privilege of conducting business in Massachusetts. PGC's repeated attempts to focus on the Agency Agreement – and away from the contract in dispute – are misguided.

Moreover, PGC fails to contravene the "contracts plus" part of the due process analysis. As Devon asserted, a Massachusetts choice of law provision may be considered a plus factor in favor of asserting jurisdiction. Here, no such choice of law provision exists in the contract at issue. Moreover, PGC does not dispute that Alberta law – not Massachusetts law – governs the Gas Purchase Agreement. Therefore, this factor weighs against asserting jurisdiction.

Finally, PGC argues that the exercise of jurisdiction would not be unreasonable in light of certain "gestalt" factors. Pl. Opp. I at 19. Specifically, PGC asserts that the exercise of jurisdiction would be reasonable because Devon is a wholly-owned subsidiary of Devon Energy

30801063.5

Corporation, "one of the largest independent processors of natural gas and natural gas liquids in North America." Pl. Opp. I at 19. The location of Devon's parent company in Oklahoma, however, is of no moment. Aside from the fact that the statements about Devon Energy are not supported anywhere in the record, PGC must do more than assert general contacts with "North America." PGC does not allege that Devon Energy has any contacts with Massachusetts and, in any event, a parent's contacts are irrelevant in determining jurisdiction over a subsidiary. See Farkas v. Tex. Instruments, Inc., 429 F.2d 849, 850 (1st Cir. 1970) (affirming dismissal because subsidiary's contacts with the forum could not be imputed to the defendant parent corporation's contacts, and the plaintiff failed to show that the subsidiary and the parent were the same corporation).

### III. THIS COURT SHOULD GRANT DEVON'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

PGC's summary of the forum non conveniens analysis suggests that a plaintiff's choice of forum is an insurmountable barrier to dismissal. The case law, however, makes clear that deference to a plaintiff's choice of forum is not absolute, and that the forum non conveniens doctrine is intended to be a "flexible, practical doctrine" that is not subject to a "ritualistic application." See, e.g., Thomson Information Services, Inc. v. British Telecommunications, 940 F. Supp. 20, 24 (D. Mass 1996); Mercier v. Sheraton Int'l, 981 F.2d 1345, 1349 (1st Cir. 1992). Indeed, the Thomson court, applying the Koster standard—the very standard enunciated by PGC—found dismissal to be appropriate. 940 F. Supp. at 21 n.6.

#### A. PGC Does Not Dispute the Availability of an Adequate Alternative Forum

Should this court find that it has personal jurisdiction over Devon, which Devon denies, it still may determine that Massachusetts is not the appropriate forum in which to litigate this dispute. PGC's argument against dismissing this action based on forum non conveniens is scant

at best. While Devon has the burden of demonstrating that an alternative forum exists and that relevant private and public interest factors weigh in favor of dismissal, Devon has met any such burden. Devon has cited multiple decisions in which courts have determined that a foreign jurisdiction is the most appropriate forum, even in situations where the court did not have the assurance – as it does here – that the foreign forum will find jurisdiction over the defendant and approve service of process. Ex. 15 ¶ 23. PGC fails to refute a single case cited by Devon on the forum non conveniens issues.

PGC does not dispute that the first prong of the forum non conveniens analysis – the availability of an adequate alternative forum – has been satisfied. Indeed, the Alberta court already has determined that it has jurisdiction over PGC, that PGC is amenable to service of process in Alberta, and that the type of legal claims alleged by PGC in this action are the types of claims cognizable in the Alberta court. Ex. 15 ¶¶ 22(b), 23. PGC does not refute the Alberta court's decision, nor does it allege that it was denied any due process of law in connection with the Alberta proceedings. Because it is clear that Alberta is an adequate alternative forum, the analysis should then focus on how best to serve the convenience of the parties and the ends of justice.

### B. The Convenience of the Parties and Ends of Justice Compel Dismissal

#### 1. The First-To-File Presumption Is Rebuttable

PGC bases much of its opposition on what it calls the first-to-file presumption. In doing so, PGC greatly overstates this factor and fails to address relevant case law that disregards its applicability to the forum non conveniens analysis. See Guidi v. Intercontinental Hotels Corp., 224 F.3d 142, 148 (2d Cir. 2000). PGC offers no authority supporting its position that, in circumstances such as these, any such presumption would not be rebuttable. Here, the parallel lawsuits were filed within days of each other, and Devon filed only after the contents of the

30801063.5

- 9 -

Termination Agreements were revealed by PGC – conveniently <u>after</u> PGC first had raced to the courthouse. PGC carefully orchestrated the commencement of the Massachusetts action before Devon had the opportunity to review the Termination Agreements, understand the contents therein, and assess the legal implications.[3] Such disingenuous actions on the part of PGC do not give the Massachusetts case any priority simply because it was filed four days before the Alberta case.

PGC accuses Devon of "forum shopping" by filing an action against PGC in Alberta. However, in determining that Alberta is the forum conveniens for this litigation, the Alberta court disregarded any theory of strategic maneuvering of either party with regard to the timing of the commencement of the actions, and instead recognized that the contract in question is centered in Alberta. See Ex. 15 ¶ 22(g).

### 2. **PGC Cannot Deny the Applicability of Alberta Law to This Dispute**

While no single factor in the forum non conveniens analysis is determinative, the application of foreign law weighs heavily in favor of dismissal. The most compelling factor in favor of dismissing this case on the basis of forum non conveniens is the fact that this Court, in assessing the respective rights and obligations of each party under the Gas Purchase Agreement, will have to face the practical problems of researching and applying Alberta law. PGC minimizes this factor in both of its briefs in opposition, and instead, attempts to divert the

---

[3] PGC suggests that notice of the existence of the Termination Agreements was more important than the knowledge of their contents. Pl. Opp. I at 27. What PGC fails to explain is that the mere fact of a Termination Agreement would not necessarily put Devon on notice that the Power Sale Agreements were terminated in their entirety. The Termination Agreements might have terminated only certain portions of the PSAs so as to leave those parts intact to allow the Gas Purchase Agreement to continue to be operative, or may have terminated deliveries but not the PSAs themselves. In the alternative, the termination may have involved a termination of deliveries to NSTAR but a continuation of possible deliveries to another party. Without the opportunity to review the Termination Agreements, Devon could not have understood the nature and extent of the termination. Therefore, Devon could not – as PGC states – have known a material dispute had arisen before July 2004.

Court's attention to the Agency Agreement, and inexplicably, the PSAs, none of which are the bases for PGC's requests for relief. As both parties have stated, the Agency Agreement provides for a mechanism for price renegotiation. Def. Mem. In Support of Mot. to Dismiss at 2 n.3; First Amended Complaint ¶ 20. There is no dispute about price renegotiation, and therefore, no need to apply Massachusetts law as to the claims in the First Amended Complaint. The fact that the PSAs – contracts that Devon is not even a party to – may contain Massachusetts choice of law provisions also is of no consequence. The PSAs are not the subject of this dispute, and PGC's attempt to imply otherwise is a red herring. However, both Devon and PGC are in agreement: the dispute evolving from the Gas Purchase Agreement is governed by Alberta law. Pl. Opp. I at 23; Pl. Opp. II at 10. PGC does not challenge the validity or applicability of the Gas Purchase Agreement's choice of law provision.

PGC relies on Nowak v. Tak How Investments, Ltd., 94 F.3d 708 (1st Cir. 1996), to support its position that dismissal on the basis of forum non conveniens is unwarranted. Nowak, however, bears little resemblance to this case. Nowak involved a wrongful death claim, arising from an accident in Hong Kong, and the court determined that the most appropriate forum was Massachusetts. Id. What PGC fails to mention, however, is that in making its determination, the Nowak court relied on the fact that "as a practical matter and due to additional burdens under Hong Kong laws, it would be very difficult for the [plaintiffs] to bring suit there." Id. at 720. The court's decision also was motivated by prohibitions against contingency fee cases and political instability in the region. Id.

Neither Nowak, nor any other case cited by PGC, deals with the specific situation at issue in which two parallel lawsuits are pending and a foreign court already has determined that it has jurisdiction over the parties and that the foreign court is the most appropriate forum. Indeed,

30801063.5

PGC makes no attempt to refute or distinguish any of the cases cited by Devon that view foreign choice of law issues as a determinative factor in the forum non conveniens analysis. This omission is telling.

PGC also accuses Devon of attempting to "transform" the choice-of-law provision in the Gas Purchase Agreement into a forum selection clause. Pl. Opp. II at 9. PGC's reasoning is confounded. PGC states that the parties "chose" not to include a forum selection clause in the Gas Purchase Agreement, then reasons that Devon "should be bound by that choice." Id. How Devon can be "bound" by a choice that was never made is unclear. Devon has never suggested that a forum selection clause exists or is at issue, or that the Court—as PGC suggests—should "add" one. Pl. Opp. II at 9. In support of this argument, PGC quotes from Mathewson Corp. v. Allied Marine Indus., 827 F.2d 2d 850, 856 (1st Cir. 1987). Mathewson, however, contains no discussion of forum selection clauses, and instead, addresses the appropriateness of a court implying a time limitation to foreclose acceptance of a settlement offer. Id. PGC does not dispute that Alberta law applies to this dispute, nor can PGC challenge any case cited by Devon that highlights the application of foreign law as a significant factor in the forum non conveniens analysis.

Nor does PGC cite a single case requiring some showing of a "particular area of concern" or conflict in the competing jurisdictions in determining that a foreign jurisdiction is best-suited to interpret and apply its own law, thereby warranting dismissal. Pl. Opp. II at 10. To the contrary, in none of the cases cited by Devon—in which the need to apply foreign law was a factor to the forum non conveniens analysis—did the court engage in a side-by-side analysis of the intricacies of United States versus foreign law. See e.g., LTX Corp. v. Daewoo Corp., 979 F. Supp. 51, 60 (D. Mass 1997) (breach of contract action in which Korean law would apply,

motion to dismiss on forum non conveniens ground granted); <u>Nowsco Well Service, Ltd. v. The Home Insurance Co.</u>, 799 F. Supp. 602 (D. W. Va. 1991) (breach of insurance contract in which Canadian law would apply; motion to dismiss on forum non conveniens grounds granted). Courts have recognized the inherent difficulties in interpreting foreign law:

> Try as we might to apply foreign law as it comes to us through the lips of experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

<u>Schertenlieb v. Traum</u>, 589 F.2d 1156, 1163 n.14 (2d Cir. 1978) (internal citation omitted) (determining that difficulties in interpreting and applying Swiss law was a significant factor in the forum non conveniens analysis).

PGC baldly asserts that "Alberta law creates no difficulties for this court in adjudicating this dispute" and that "this case involves the interpretation of an unambiguous contract provision." Pl. Opp. II at 10. However, the substance of the dispute in the two actions and the complexity of Alberta law are far from being ripe for analysis by this court. PGC has no basis for asserting that the Gas Purchase Agreement is unambiguous. Evidently, PGC has no appreciation of the real issues raised in these actions, nor their complexity. PGC continually fails to recognize that this case is not about Section 4.8 of the Gas Purchase Agreement. This case concerns the question as to whether the termination of the PSAs by PGC amounts to a repudiation of the Gas Purchase Agreement. This necessarily involves an application of the principles of repudiation of contract under Alberta law, in addition to various other legal principles which will arise in applying Alberta law to the Gas Purchase Agreement. Moreover,

the Alberta action involves other issues of importance. As was stated by Justice Mahoney of the Alberta Court of Queen's Bench in his Reasons for Judgment on September 13, 2004:

> A determination of the claims made by Devon in its pleadings with respect to repudiation and change of partnership requires an interpretation of the Gas Purchase and Sale Agreement which the parties agreed would be governed by and construed in accordance with the laws of Alberta (Article 20.3). It also may involve an interpretation of the Partnership Act (Alberta) since Devon has, in its pleadings, raised the question of the legal effect on the Gas Purchase and Sale Agreement of an alleged change in the PGC partnership. It is accepted law both in Canada and the United States that Canadian law is best left to Canadian courts and vice versa in the United States: Shell Canada Ltd. v. CIBC Melon Trust Co., (2003), 24 Alta. L.R. (4th) 259, 2003 ABQB 1058 at paras. 21-22.

Ex. 15 ¶ 22(c). See also Shell Canada Ltd. v. CIBC Melon Trust Co., (2003), 24 Alta. L.R. (4th) 259, [2003] A.J. 1618 (Alta. Q.B.) at ¶ 21-22 (Ex. 17 hereto); Gulf Oil Corporation v. Gilbert, 330 U.S. 501 (1947) (referenced therein).

PGC's statement that Devon has not identified any differences in the laws of Alberta and Massachusetts misstates the record. Pl. Opp. II at 10. Both the Affidavit of Henry Assen, Ex. 4 ¶ 12 to Def. Mot. to Dismiss, and the Alberta court's Reasons for Judgment, Ex. 15 ¶ 22(c), highlight Alberta's *Partnership Act* as relevant to the parties' dispute.

### 3. No Other Private or Public Interest Factors Cited by PGC Weigh in Favor of Massachusetts

PGC cites to no other private or public interest factors that weigh in favor of litigating this case in Massachusetts. By offering no response, PGC effectively concedes that it is no stranger to litigation in Alberta and has familiarity with the Alberta court system and the English language. See Vector Energy Inc. v. Canadian Pioneer Energy, Inc., [1996] A.J. No. 440 (Q.B.) (Ex. 9 to Def. Mot. to Dismiss). Unlike the countries involved in the cases cited by PGC, Canada is not a country which suffers from political unrest, or poses any risk or danger to PGC witnesses traveling to Alberta to participate in this litigation.

With respect to the location of witnesses and documents, PGC clearly tries to finesse this factor, broadly equating Massachusetts with "the Eastern United States." Pl. Opp. I at 22, Pl. Opp. II at 8. Rather than explain why numerous witnesses or documents would be relevant to PGC's self-described "unambiguous contract" dispute, Pl. Opp. II at 10, PGC's second opposition instead regurgitates names of witnesses and locations of documents from previously-filed affidavits. The Alberta court, having had the opportunity to examine PGC's lists of witnesses and locations of documents, determined that the witnesses "will be as much from Alberta as from outside of Alberta." Ex. 15 ¶ 22(j). Nor does PGC explain why a laundry list of corporate entities (Cogentrix, Goldman Sachs, General Electric Capital Corporation, Commonwealth Electric, Cambridge Electric), Pl. Opp. II at 6, which have nothing to do with this dispute, have any bearing on the forum non conveniens analysis. PGC's repetition of the same in multiple briefings does not make it otherwise. The fact remains that parties and witnesses scattered within the United States—particularly those with no role or relationship to this dispute—afford no weight in favor of Massachusetts, and at best are a neutral factor in the analysis. PGC also represents that the location of PGC's cogeneration facility favors adjudication of this dispute in Massachusetts. Pl. Opp. II at 5. Neither the facility, nor the customers it served, is at issue in this dispute. PGC has not presented any evidence that the facility is even in operation; therefore, its location is immaterial.

PGC argues that the Federal Rules of Civil Procedure afford the parties greater discovery than the Alberta rules. Pl. Opp. I at 22-23; Pl. Opp. II at 8. PGC cites to a declaration that purports to summarize various aspects of available discovery in Alberta, including the generalized statement that Alberta discovery has been "very much restricted." Groody Decl. ¶

11.[4]  While providing no authority for such a statement, and no clarification as to the practical application of that phrase (and admitting that the precise scope of this declaration "has not been definitively determined"), id., Groody's declaration describes Alberta discovery procedures that are not vastly different than those provided for in the Federal Rules of Civil Procedure. However, even if Alberta's discovery procedures are more restrictive, which Devon disputes, courts have determined that different or "less generous" discovery rights do not make a foreign court system inadequate.  LTX, 979 F. Supp. at 59.

Moreover, Groody's declaration does not appear to provide a complete recitation of discovery procedures available under Alberta law.  For example, Groody states that the Alberta rules do not permit "an examination for discovery of a non-party."  Groody Decl. ¶ 16.  Apart from the fact that PGC has not even identified the need to examine a non-party witness, the Alberta courts do have a mechanism, commonly referred to as the Norwich Order, by which an examination of a non-party witness could be achieved prior to trial.  See Alberta Treasury Branches v. Leahy, [2000] A.J. No. 993 ¶¶ 91, 105-06 (Q.B.) (Ex. 18 hereto); Canadian Derivatives Clearing Corp. v. EFA Software Servs. Ltd., [2001] A.J. No. 653 ¶¶ 35-37 (Q.B) (extending principles of Norwich relief beyond the identity of a wrongdoer) (Ex. 19 hereto).  In sum, it appears that practical differences in the Alberta discovery provisions will have little, if any, impact on this case.

PGC also argues that a "disadvantage" to proceeding in Alberta is the existence of the "English Rule" regarding the recovery of attorney's fees by a prevailing party.  Pl. Opp. II at 9. PGC, however, fails to cite any authority which either refers to this "English Rule" or supports

---

[4]     PGC fails to demonstrate how so-called expansive American discovery rules – which tend to give rise to "fishing expeditions" and often result in costly and drawn out litigation – are effective in facilitating an expeditious and efficient resolution for either party.

30801063.5

such a conclusion. According to the law in Alberta, however, the general rule is that the successful party is awarded "party and party costs" from the unsuccessful party. Steeves v. English, [2004] A.J. No. 632 (Alta. C.A.) at ¶ 23 (Ex. 20 hereto); Eggerton v. Alberta Teacher's Assn., [2003] A.J. No. 384 (Alta. C.A.) at ¶ 2 (Ex. 21 hereto). Party and party costs are, unless otherwise ordered by the court, limited by the schedule or scale set out in the Alberta *Rules of Court*. Eggerton at ¶¶ 11-14. Party and party costs do not indemnify the successful party for attorney's fees nor do they equate to attorneys' fees (commonly referred to in Alberta as "solicitor-client costs" or "solicitor and own client costs"). In Alberta, an award of costs on an indemnity or "solicitor-client" basis is exceptional and only ordered by the court in unusual circumstances, such as where there is positive misconduct in the course of the litigation, fraudulent conduct, attempts to deceive the court and defeat justice, etc. Steeves at ¶ 21; Eggerton at ¶ 9. Moreover, Alberta's law regarding an award of costs could hardly be a "disadvantage" to PGC – unless it has no confidence in its legal position.

Finally, PGC asserts that documentary evidence from the Canadian regulatory agencies (obviously located in Canada) would have no more relevance to this case than the documents held by the Massachusetts DTE and the FERC. Pl. Opp. I at 24; Pl. Opp. at 10-11. What PGC fails to appreciate is that unlike the DTE and the FERC, the Canadian regulators had a role in determining whether the Gas Purchase Agreement would be approved. PGC's assertion that the American regulatory agencies "have files on this contract," Pl. Opp. I at 24, misses the point – particularly if Devon can show that PGC's own interpretation of the contractual provisions contradicts the regulatory agency's requirements for approval of the Gas Purchase Agreement. PGC asserts that Devon has made no proffer on this subject; however, the role of the Canadian regulatory authorities with respect to this dispute is detailed in a previously-filed affidavit.

Affidavit of Henry Assen (Aug. 10, 2004) (Ex. 4 ¶¶ 4-11 to Def. Mot. to Dismiss.) Moreover, the Alberta court, when presented with this very issue, recognized the relationship between public and regulatory policies of Canada and Alberta, and the terms and conditions in the Gas Purchase Agreement. Ex. 15 ¶ 22(d) to Def. Mot. to Dismiss. PGC's assertion that this point has not been addressed is simply unfounded.

Weighing all private and public interest factors, it is clear that, on balance, more factors weigh in favor of litigating this case in Alberta. This, coupled with the Alberta court's acceptance of jurisdiction over PGC, and confirmation that service *ex juris* upon PGC was proper, points to Alberta as the most appropriate forum. Accordingly, this Court should grant Devon's motion to dismiss on the basis of forum non conveniens.

Dated: November 12, 2004

Respectfully submitted,

/s/ Anita B. Bapooji
William L. Prickett (BBO #555341)
Anita B. Bapooji (BBO #644657)
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: 617-248-7000
Facsimile: 617-248-7100

Counsel for Defendant
Devon Canada Corporation

John M. Simpson
Michelle C. Pardo
Fulbright & Jaworski, LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-662-0200
Facsimile: 202-662-4643

Of Counsel
Devon Canada Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Devon Canada Corporation's Reply In Support of Its Motion To Dismiss For Lack Of Personal Jurisdiction and Forum Non Conveniens was served on the 12th day of November, 2004, via first class mail, postage prepaid, on the following:

>Robert J. Muldoon
>David A. Brown
>Sherin and Lodgen LLP
>101 Federal Street
>Boston, MA 02110

>/s/ Anita B. Bapooji
>Anita B. Bapooji